UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNATHAN L. BURKS,

      Plaintiff,                 Case No. 2:19-cv-10027
                                            District Judge Gershwin A. Drain

v.                                  Magistrate Judge Anthony P. Patti

BENNY N. NAPOLEON, *et al.*,

      Defendants.

_____/

**<u>REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S SEPTEMBER 27, 2021 RENEWED MOTION FOR DEFAULT JUDGMENT (ECF No. 123) WITHOUT A FINDING OF CONTEMPT</u>**

**I.**    **RECOMMENDATION:** The Court should **GRANT IN PART** Plaintiff's September 27, 2021 renewed motion for default judgment (ECF No. 123), limiting the trial to causation and damages only.  Additionally, while the Court should not hold Defendant Wayne County in contempt with respect to the show cause orders (ECF Nos. 124, 129), its former counsel, Attorney Paul T. O'Neill, will be reported to Michigan's Attorney Grievance Commission (AGC).

**II.**    **REPORT:**

    **A.**    **Operative Pleading**

    Plaintiff initiated this lawsuit *in pro per* in January 2019.  Several months later, counsel entered an appearance on Plaintiff's behalf and Plaintiff filed an amended complaint, in which he claims: "In 2016, Wayne County Jail officials

incarcerated a known violent sexual predator in the protective custody unit in which Plaintiff had been held alone, because of his association with the high-profile death of a young child." (ECF No. 19; PageID.72 ¶ 4.) According to Plaintiff, "[w]ithin hours, the predator forcibly raped Plaintiff, saying it was 'punishment' for the child's death." (*Id*., PageID.73 ¶ 6.)

Defendants are the County of Wayne, as well as Benny Napoleon,[1] Keith Williams, Judy Bell, Paul Seals and Damone Lee, who are sued in their official and individual capacities. (ECF No. 19, PageID.71.) Plaintiff's causes of action include:

1. failure to protect and render aid in violation of the Eighth Amendment's cruel and unusual punishment clause (*against all Defendants*);

2. failure to train and supervise in violation of the Eighth Amendment (*against Defendants County of Wayne and Napoleon*);

3. shocks the conscience deprivation of substantive rights in violation of the Fourteenth Amendment (*against all Defendants*); and,

---

[1] Former Wayne County Sheriff Benny N. Napoleon passed away in December 2020. In January 2021, Raphael Washington became the Wayne County Sheriff. According to the Court's May 17, 2021 text-only order, the parties were to submit a stipulation to substitute current Sheriff Raphael Washington for Defendant Benny N. Napoleon. It seems this did not occur. Therefore, the Clerk of the Court is DIRECTED to substitute Washington in place of Napoleon, pursuant to Fed. R. Civ. P 25(d).

4.    gross negligence in violation of the Fourteenth Amendment
(*against all Defendants other than County of Wayne*).

(*Id*., PageID.83-89 ¶¶ 80-118.)

## B.    Discovery and Motion Practice

Judge Drain has referred this case for pretrial matters, first to Judge

Hluchaniuk and then to me.  Although the Court has entered numerous stipulated

orders over the course of this lawsuit (*see*, *e.g*., ECF Nos. 17, 18, 32, 48, 56, 66,

67, 70, 85, 86, 90, 92, 95, 97, 101, 106, 107, 109, 110, 112, 114, 115, 122, 126),

and although at least one motion has been withdrawn (ECF Nos. 74, 108), the

Court is far too familiar with the exchange of discovery in this case.

### 1.    Plaintiff's January 2020 motion to compel discovery
### responses (ECF No. 33)

In the beginning of this case, Defendants were represented by Margaret M.

Flanagan of Wayne County Corporation Counsel.  (ECF No. 16, 27-28.)  On

October 29, 2019, Plaintiff served his first set of interrogatories (Nos. 1-8) and first

set of requests for production of documents (Nos. 1-49) on Defendants.  (ECF No.

33-2.)  Notably, "document" was defined to include "any written, printed, graphic

or recorded matter of any kind, wherever located . . . ."  (ECF No. 33-2,

PageID.171 ¶ 2.)  On December 20, 2019, Judge Drain entered a stipulation and

order for substitution of counsel, at which point Attorney Flanagan was terminated

as counsel of record and Paul T. O'Neill became defense counsel.  (ECF No. 32.)

3

In January 2020, Plaintiff filed a motion to compel, which, *inter alia*, claimed that Defendants had not yet responded to the discovery requests.  (ECF No. 33, PageID.159 ¶ 4.)  Judge Hluchaniuk entered an order, which provided a schedule for the disposition of Plaintiff's motion to compel and procedures to be followed and contained warnings about the possibility of sanctions for failure to comply.  (ECF No. 36, PageID.208 ¶ A, 209-210 ¶ 8).  (*See also* ECF No. 132.)  On March 3, 2020, Judge Hluchaniuk granted the motion to compel and awarded sanctions in the amount of $250.  (ECF No. 37.)  On August 14, 2020, Judge Drain found Defendant County's objection to be moot.  (ECF Nos. 40, 61).

### 2. Plaintiff's March 2020 motion to compel discovery and for imposition of sanctions (ECF No. 38)

The first set of discovery requests was also at issue in Plaintiff's March 20, 2020 second motion to compel discovery and for imposition of sanctions, wherein Plaintiff stated he "ha[d] still not received the requested discovery . . . ."  (ECF No. 38, PageID.217.)  Judge Hluchaniuk entered an order that granted Plaintiff's motion to compel and Defendants' motion to stay the Court's prior order (ECF No. 41).  (ECF No. 47.)  Judge Hluchaniuk explained that "[t]he request for sanctions [wa]s currently denied without prejudice subject to defendants' compliance with the terms of this order[,]" and that "[t]he prior award of sanctions remain[ed] in

effect and defendants [we]re ordered to comply with the terms of that prior order."
(ECF No. 47, PageID.333.)

### 3. Plaintiff's June 2020 renewed motion to compel discovery and for sanctions (ECF No. 50)

The first set of discovery requests were also at issue in Plaintiff's June 26, 2020 renewed motion to compel discovery and motion for sanctions. (ECF Nos. 50, 50-1). My August 13, 2020 order required Defendant to pay the previously ordered $250 but denied additional requested sanctions based on "honest debate about Defendants' discovery due date." (ECF No. 60, PageID.463-465.) This ambiguity was due to the Covid-19 shutdown and its effect upon certain deadlines. Further, noting that defense "counsel has had access to his office for two months[,]" the order expressly required Defendants to serve answers to the interrogatories and responses to the requests for production – each without objection – no later than August 21, 2020. (ECF No. 60, PageID.463-464.)

### 4. Plaintiff's September 4, 2020 motion for further sanctions (ECF No. 62)

On August 21, 2020, Defendants served responses to the first set of interrogatories and first set of requests to produce. (ECF No. 62-2.) To put this into perspective, this was 297 days (*i.e.*, nearly 10 months) after the related requests were served. At some point, Plaintiff served his second set of discovery requests.

5

Plaintiff's September 4, 2020 motion for sanctions (ECF No. 62) concerned Defendants' response to Plaintiff's first set of interrogatories and first request for production (ECF No. 62-2).  On September 11, 2020, Defendant Wayne County served its response to Plaintiff's second set of requests for production of documents (Nos. 1-33).  (ECF No. 70, PageID.558 ¶ 2; ECF No. 123-3.)

The October 19, 2020 stipulated order required certain matters to be performed by October 23, 2020, including some related to the first set of requests for production of documents.  (ECF No. 67, PageID.541 ¶ 3.)  The October 30, 2020 stipulated order resolved the motion for sanctions (ECF No. 62), but the language of the stipulated order required production with respect to various of the second set of requests to produce by November 13, 2020.  (ECF No. 70, PageID.558.)  It seems that, on or about that date, Defendant Wayne County served a supplemental response.  (ECF No. 123-5.)

### 5.   Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83)

Plaintiff served a third set of discovery requests (Nos. 1-24) on September 1, 2020 (ECF No. 83-3), to which no response was served *until sometime in February 2021*, *i.e.*, Defendant(s) served a response after the "missing" answers were brought to this Court's attention in Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83, PageID.742), which concerned:  (1) the first set of RFPs

6

(ECF No. 83-1); (2) Defendant's September 11, 2020 and November 13, 2020 responses to Plaintiff's second set of RFPs (ECF No. 83-2, 83-5); and, (3) Plaintiff's September 1, 2020 third set of RFPs (ECF No. 83-3).  Defendants did not file a response.  Thus, the motion was unopposed.  E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available.").

Following a March 12, 2021 hearing, at which Attorney Sarah Prescott appeared on Plaintiff's behalf and Attorney Paul T. O'Neill appeared on behalf of the Defendants, the Court entered an order granting in part and denying in part Plaintiff's renewed motion for sanctions.  (ECF No. 96.)  Importantly, pursuant to Fed. R. Civ. P. 37(b), the order listed several "<u>matters to be taken as established for purposes of the action, and prohibitions from introducing designated matters in evidence</u> . . . ."  (ECF No. 96, PageID.946-947 (emphasis in original).)  Also, and again pursuant to provisions of Fed. R. Civ. P. 37, the Court directed:

> . . . no later than **Friday, April 2, 2021**, Defendant Wayne County **SHALL** reimburse Plaintiff's law firm in the amount of $4,830 and file proof of service of the payment upon Salvatore Prescott & Porter (105 E. Main Street, Northville, MI 48167). If this is not accomplished, then the Undersigned will issue a show cause order for Wayne County's Chief Financial Officer to appear and explain why the County should not be held in contempt.

7

(*Id.*, PageID.947-948 (emphases in original).)[2]

Defendants filed an objection; but, it was comprised of a one-page motion (ECF No. 102), a one-page index of exhibits (ECF No. 102-1), and title pages for Exhibits A-E without any content whatsoever (ECF Nos. 102-2, 102-3, 102-4, 102-5 & 102-6).  Plaintiff filed a response to Defendants' purported "objection."  (ECF No. 103.)  On July 13, 2021, Judge Drain overruled Defendants' objection, noting that it "includes one conclusory sentence . . . [,]" but also explaining why, "even if Plaintiff presented a substantive argument . . . [,]" the Court "will still overrule the objection."  (ECF No. 113, PageID.1130-1131.)  Then, the County did nothing with respect to paying the monetary sanctions.

### C. Plaintiff's September 27, 2021 Renewed Motion for Default Judgment (ECF No. 123)

Currently before the Court is Plaintiff's September 27, 2021 renewed motion for default judgment.  (ECF No. 123.)  Plaintiff alleges that Defendants have "flouted" six Court orders, namely:

- Judge Hluchaniuk's January 27, 2020 scheduling order and order requiring compliance with E.D. Mich. LRs 7.1 and 37.1 (ECF No. 36);

---

[2] On March 22, 2021, Defendant Wayne County filed in this matter a copy of its *supplemental* response (ECF No. 100) to Plaintiff's third set of requests for production of documents.

- Judge Hluchaniuk's March 3, 2020 order (ECF No. 37) granting motion to compel and awarding sanctions (ECF No. 33);

- My August 13, 2020 opinion and order (ECF No. 60) granting in part and denying in part Plaintiff's renewed motion to compel discovery and motion for sanctions (ECF No. 50);

- The October 19, 2020 stipulated order (ECF No. 67), which required certain matters to be performed by October 23, 2020;

- The October 30, 2020 stipulated order (ECF No. 70), which resolved the September 4, 2020 motion for sanctions (ECF No. 62);

- My March 16, 2021 opinion and order (ECF No. 96) granting in part and denying in part Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83).

(ECF No. 123, PageID.1163, 1168-1177.)  Plaintiff contended, *inter alia*, that Defendants had not paid the sanction award and, again, moves this Court to "report on and recommend default judgment in this case" and for "costs and fees."  (*Id*., PageID.1162-1163.)  Any response by Defendants was due on either October 11 or October 18, 2021.  E.D. Mich. LR 7.1(e).

### 1.    The November 5, 2021 show cause hearing

On October 1, 2021, shortly after Plaintiff filed the instant motion, and consistent with its prior promise to do so if the sanctions were not promptly paid (ECF No. 96, PageID.948), the Court issued an order requiring Defendants to show cause, which provided:

9

> In accordance with the Court's prior order (ECF No. 96, PageID.948), unless the payment shall have by then been tendered to Plaintiff's counsel, **Wayne County's Chief Financial Officer**, Hughey Newsome, **SHALL** appear in person in my courtroom at the **Theodore Levin United States Courthouse** (231 W. Lafayette, Courtroom 672, Detroit, MI 48226) on **Friday November 5, 2021** at **10 a.m.** and explain why the County should not be held in contempt. *Notwithstanding whether any payment has been made by November 5th*, the Court will also hold a hearing at that same time and date, <u>at which Attorney Paul T. O'Neill must appear</u>, to address the renewed motion for default and to consider whether sanctions should be awarded against Defendants or their counsel under Fed. R. Civ. P. 37(b) or pursuant to this Court's inherent authority.

(ECF No. 124, PageID.1254 (emphases in original).)  At the November 5, 2021 hearing, Attorney Sarah Prescott appeared for Plaintiff, and Attorney Paul T. O'Neill appeared for the defense; Mr. Newsome was not in attendance, although when the Court asked defense counsel if he "ma[d]e anyone aware at Wayne County that [the Court] had issued a show cause order to the Wayne County chief financial officer," defense counsel responded, "No."  (ECF No. 131, PageID.1291.)  When asked if monetary sanctions that the County had been ordered to pay had been tendered, O'Neill instead responded by presenting a *personal*, post-dated check, indicating that it did not yet have funds to back it.  (*Id.*, PageID.1271-1272.)

## 2.    The December 13, 2021 show cause hearing

On November 8, 2021, I entered a second order requiring Wayne County to show cause and setting a show cause hearing for December 13, 2021.  (ECF No. 129.)  In mid-November 2021, Attorneys T. Joseph Seward, Kali M.L. Henderson,

and Souriana T. Hammoud appeared for the defense.  (ECF No. 133, 134, 135.)

By its November 18, 2021 motion for reconsideration, Defendant Wayne County

sought to excuse Mr. Newsome's attendance at the forthcoming show cause

hearing.  (ECF No. 135, PageID.1369.)  On November 19, 2021, the Court

conditionally granted this motion and excused Mr. Newsome from appearing on

December 13, 2021 and having to show cause, upon the condition that Defendant

Wayne County reimburse Plaintiff's law firm in the amount of $4,830 prior to that

date and so certify to the Court in writing; in all other respects, the show cause

order of November 8, 2021 (ECF No. 129) remained fully in effect.  Wayne

County certified that payment was mailed on November 19, 2021.  (ECF No. 137.)

In November 2021, based on an issue raised by Plaintiff's counsel at the

November 5th hearing and consistent with my invitation to the parties (ECF No.

131, PageID.1332, 1334), Plaintiff and Defendants filed their supplemental briefs

and/or exhibits concerning "the late, July 2021 disclosure of the recordings

associated with the internal affairs (IA) file on the events of this case[,]" (ECF No.

129, PageID.1265).  (ECF Nos. 136, 140; *see also* ECF No. 138 [Decl. Crystal

Harrison], ECF No. 141 [IA File].)  Among the attachments to Defendants'

supplemental brief is the November 29, 2021 declaration of Sue Hammoud, Wayne

County Deputy Corporation Counsel, wherein she attests, *inter alia*:

- [She] was made aware of the Court's [March 16, 2021] Order for Sanctions (ECF No. 96) but Mr. O'Neill said that he had a basis to object to the order and was going to do so.

- That not until November 9, 2021, when [she] reviewed the Court's Second Show Cause Order (ECF No. 129), was [she] made aware of the sanctions having been imposed by the Court.

(ECF No. 140-4, PageID.1497 ¶¶ 5, 6.)  It is noteworthy that although Judge Drain overruled Defendants' objection and affirmed my order March 2021 order for sanctions on July 13, 2021 (ECF No. 113), and, although the County may have been considering a motion for reconsideration thereafter (ECF No. 123-2, PageID.1186), no such motion ever came to be, and at no time was my sanction order stayed; nor did anyone request a stay.

On December 13, 2021, attorneys Sarah Prescott, Kali M.L. Henderson, T. Joseph Seward, James W. Heath, Souriana T. Hammoud, and David Melton appeared in person for a show cause hearing and to further discuss Plaintiffs pending motion for default judgment, and Attorney Paul O'Neill appeared for part of the hearing by phone.  My corresponding text-only order stated:

> Since the previous hearing, Plaintiff has filed supplemental materials (ECF No. 136, 138, 141) and Defendants have filed a supplemental brief (ECF No. 140), per the Court's prior direction.  Upon further consideration, Plaintiff's renewed motion for default judgment (ECF No. 123) remains **UNDER ADVISEMENT**, as does the question of whether Defendant Wayne County should be held in contempt. Defendants' oral motion to finally file a response brief regarding Plaintiff's September 27, 2021 motion is **DENIED**.  Consistent with representations made by the defense, Defendants shall file a

12

> substitution or withdrawal of counsel for attorney Paul O'Neill in the
> very near future.  Further, Defendant Wayne County shall forthwith
> file the emails referred to by David Melton during the hearing as a
> supplemental exhibit.  No later than **January 15, 2022**, Plaintiff and
> Defendants shall file additional supplemental briefs, not to exceed 6
> pages in length, which are <u>limited to discussing if application of the
> sanction of default judgment under Fed. R. Civ. P. 37(b)(2)(A)(vi)
> depends on whether:  (1) the client or the counsel is disobedient; and,
> (2) the counsel is in[-]house or outside</u>. Moreover, no later than
> **January 31, 2022**, Plaintiff shall submit a sworn bill of costs,
> expenses, and attorney fees associated with his attempts to achieve
> Defendants' compliance with Judge Drain's July 13, 2021 order (ECF
> No. 113) overruling Defendants' objection (ECF No. 102) to my
> March 16, 2021 opinion and order (ECF No. 96).  Defendants shall
> have up to and including **February 15, 2022** by which to file any
> related objection.  Finally, the parties are to undergo outside
> mediation no later than **February 15, 2022**.  It is **SO ORDERED**.

(Text-Only Order [Dec. 15, 2021] (bold in original, underlining added).)  On

December 15, 2021, by way of a stipulated order substituting lead counsel,

Attorney O'Neill was terminated as defense counsel of record.  (ECF No. 143.)

Defendants promptly filed 215 pages of David Melton's emails.  (ECF No.

144.)  On January 14, 2022, Plaintiff and Defendants filed their second set of

supplemental briefs.  (ECF Nos. 146, 145.)  On February 24, 2022, Plaintiff

informed the Court that the case underwent outside mediation on February 17,

2022, but "settlement was not reached between the Parties."  (ECF No. 151.)

Thus, this matter is now ready for decision.

13

### D.      Fed. R. Civ. P. 37(b) ("Failure to comply with a court order")

Fed. R. Civ. P. 37(b) provides several potential actions when "a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)," such as issuing "further just orders[,]" including:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)   striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)     dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  Most of these options are also available for "not producing a person for examination[,]" Fed. R. Civ. P. 37(b)(2)(B), or "failure to disclose, to supplement an earlier response, or to admit[,]" Fed. R. Civ. P. 37(c)(1)(C), or a "party's failure to attend its own deposition, serve answers to interrogatories, or respond to a request for inspection[,]" Fed. R. Civ. P. 37(d)(3).

14

The Sixth Circuit reviews "a district court's decision to invoke discovery sanctions for an abuse of discretion." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997) (citing *Regional Refuse Sys., Inc. v. Inland Reclamation Co.,* 842 F.2d 150, 154 (6th Cir.1988)). "In assessing a district court's decision to dismiss a complaint, we consider four factors in particular:

(1)   whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault;

(2)   "whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery";

(3)   "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and

(4)   "whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Harmon*, 110 F.3d at 366–367 (quoting *Regional Refuse Sys., Inc.*, 842 F.2d at 153-155).

### E.   Discussion

Preliminarily, to the extent Plaintiff moves for "costs and fees," (*Id*., PageID.1162-1163), the issue of costs and fees has already been addressed by the Court's recent opinion and order granting in part and denying in part Plaintiff's January 31, 2022 motion for attorney fees (ECF No. 149).  (*See* ECF No. 152.) Indeed, Defendant Wayne County has already tendered a check in the amount of $8.925.00 (ECF No. 153) and did not file any objection to my order.

15

1.   **Entry of default judgment as a sanction for failure to obey a discovery order (Fed. R. Civ. P. 37(b)(2)(A)(vi))**

To be clear, Plaintiff's motion expressly requests entry of *default judgment*, presumably under Rule 37(b)(2)(A)(vi) (*see* ECF No. 123, PageID.1178), but it also advocates that "[d]efault as to liability is appropriate."  (*Id.*, PageID.1178, 1180.)  And Plaintiff's counsel clarified during the November 5, 2021 hearing that Plaintiff is "not asking for entry of a judgment[;]" rather, he is "asking for *default as to liability*[,]" which counsel described as "less than a sanction, because it just takes me to the next stage of the case, which is 'I'd still have to prove damages.'" (*Id.*, PageID.1314-1315 (emphasis added).)   Accordingly, this report addresses whether the *Harmon* factors weigh in favor of Plaintiff's request for entry of default as to liability.  Since the motion itself appears to seek a default judgment as to liability, *causation and damages*, the report recommends granting the motion only in part and as clarified at oral argument, *i.e.*, as to liability only.

a.   **FACTOR ONE:  Willfulness, bad faith, or fault**

Plaintiff claims that "Defendants have ignored this Court six times . . . ." (ECF No. 123, PageID.1179 (emphasis omitted).)  *Hogan v. Discover Bank*, No. 1:19-CV-298, 2020 WL 4208235, at *2 (E.D. Tenn. July 22, 2020) (although ultimately determining that the factors weighed against dismissal with prejudice, finding "willfulness, bad faith, or fault" considering "Plaintiff's seven months of

16

failure to prosecute this action. . . [,]" "her violation of two of the Court's Orders," and the absence of "any explanation from Plaintiff in response to the Show Cause Order[.]")

Of course, "[t]he burden is on the noncomplying party to show that the failure was due to inability and not to willfulness, bad faith, or fault." *Intercept Sec. Corp. v. Code-Alarm, Inc.*, 169 F.R.D. 318, 322 (E.D. Mich. 1996) (citing *Regional Refuse Systems*, 842 F.2d at 154). Yet, Defendants failed to file a response, and, as noted above, on December 15, 2021, the Court denied Defendants' oral motion to finally file a response brief regarding Plaintiff's instant, September 27, 2021 motion; therefore, the instant motion is unopposed. *See* E.D. Mich. LR 7.1(c)(1). However, in reality, Defendants have been given multiple, unearned opportunities to be heard, by way of show cause orders, in various hearings, and through two rounds of supplemental briefing. (*See, e.g.*, ECF Nos. 124, 129, 140, 145.) In any case, Defendants have failed to satisfy their burden on this first factor. That said, the parties' supplemental briefs warrant discussion of three matters related to "willfulness, bad faith, or fault."

### i. Late, July 2021 disclosure of the recordings

First, the supplemental briefs address "the late, July 2021 disclosure of the recordings associated with the internal affairs (IA) file on the events of this case." (ECF No. 129, PageID.1265.) Defendants represent that, from the County's

17

perspective, "[t]he recordings were made during the criminal leg of the

investigation but . . . were not part of the *final* IA file."  (ECF No. 140,

PageID.1483 (emphasis added).)  They rely upon the July 15, 2021 deposition of

Captain Reid Chakrabarty, who testified that "[t]he tape is kept and it is transcribed

by the officer that created the recording, but not transcribed word for word or

verbatim[,]" and who agreed that "the transcribing . . . is . . . partly in order to just

put it into the report[,]" (ECF No. 140-2, PageID.1490), and the deposition of

Commander Alan Bulifant, who brought "a copy of the criminal internal affairs

case . . . [,]" (ECF No. 140-3, PageID.1495).  (ECF No. 140, PageID.1483-1484.)

Having already provided "context to the court for how *these mistakes* arose[,]"

they contend, "it is less clear that this disclosure failure dates back to a violation of

[the July 25, 2019 stipulation and order] ECF No. 17 because the underlying [May

16, 2019 motion for discovery], ECF No. 8, appears to have been seeking

*documents*."  (ECF No. 140, PageID.1484 (emphases added).)  Moreover, they

claim that ECF No. 17 "is a prime example of the good faith under which prior

counsel have operated[,] as it was a voluntary stipulation prior to the start of

discovery that was intended to allow Plaintiff to identify the individual

defendants."  (*Id*.)  Additionally, at the November 5, 2021 hearing, Attorney

O'Neill characterized defense counsels' actions as "cooperation," "good faith,"

"substantial compliance," and "good cause."  (ECF No. 131, PageID.1287-1288, 1291-1292, 1293-1295).  (ECF No. 140, PageID.1484-1485.)

Nonetheless, any "willingness, bad faith, or fault" associated with the late disclosure of the recordings is only one piece of this factor's puzzle, because there are multiple examples of the efforts Plaintiff underwent to secure answers to his first set of discovery requests.  Moreover, Plaintiff convincingly claims that "[t]he failure and refusal to produce the documents at issue cannot be laid only at Paul O'Neill's feet and excused as an individual failure."  (ECF No. 136, PageID.1383-1384.)

## ii.    Disobedience of client or counsel

Second, the Court's December 15, 2021 order allowed supplemental briefs regarding application of the sanction of default judgment under Fed. R. Civ. P. 37(b)(2)(A)(vi) where the counsel is disobedient.  The Supreme Court has stated:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.

*Link v. Wabash R. Co.*, 370 U.S. 626, 633–634 (1962) (quotations and citations omitted).  Still, "[d]espite the Supreme Court's unequivocal language [in *Link v.*

*Wabash Railroad Co.*, 370 U.S. 626 (1962)]," the Sixth Circuit, "like many others, has been extremely reluctant to uphold the dismissal of a case or the entering of a default judgment merely to discipline an errant attorney because such a sanction deprives the client of his day in court." *Buck v. U.S. Dep't of Agric., Farmers Home Admin.*, 960 F.2d 603, 608 (6th Cir. 1992) (citing *Shepard Claims Service v. William Darrah & Associates,* 796 F.2d 190, 195 (6th Cir.1986)). "Dismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980) (per curiam).

Defendants note that the *Regional Refuse* factors "have been applied more stringently in cases where the *plaintiff's attorney's* conduct is responsible for the dismissal." *Harmon v. CSX Transp., Inc.*, 110 F.3d at 367. (ECF No. 145, PageID.2039 (emphasis added).) Nonetheless, Plaintiff convincingly argues that "client fault is unquestionably not a required factor for default/sanctions." (ECF No. 146, PageID.2065.)

### iii.    In-house or outside counsel

Third, the Court's December 15, 2021 order allowed supplemental briefs concerning application of the sanction of default judgment under Fed. R. Civ. P. 37(b)(2)(A)(vi) where the counsel is in-house compared to outside. Plaintiff did not locate related precedent. (ECF No. 146, PageID.2070.) Defendants argue that counsel's employment (in-house or outside) status "should have little impact on the

Court's application of Rule 37."  (ECF No. 145, PageID.2042.)  While Defendants

contend that the law on this issue is "sparse," they point to a report and

recommendation for guidance, namely:

> What applies to private parties to litigation must also apply to the City
> of Detroit in its litigation.  The City of Detroit 'freely selected' Mr.
> Schwarzberg from among its city attorneys.  His performance –
> whether caused by over-commitment, by insufficient City of Detroit
> support and cooperation, or by choice constitutes substantial, repeated
> failings and acts in disregard of his duties and responsibilities on
> behalf of his client, the City of Detroit.

*Stone v. City of Detroit*, No. 05-74236, 2009 WL 10715838, at *11 (E.D. Mich.

Feb. 6, 2009) (Pepe, M.J.) (report and recommendation of default judgment against

Defendant City of Detroit).  Though cited by Defendants, *Stone* supports the

conclusion that counsel's employment status has little effect upon the Court's Rule

37(b)(2)(A)(vi) analysis.  In fact, *Stone* dealt with a remarkably similar situation to

the one at bar.  There, as may well have been the case here, the attorney (O'Neill,

and perhaps Flanagan) may have been "over committed in his job assignments in

the [Wayne County] Law Department," yet:

> . . . every reasonable indulgence has been extended to him.  The
> repeated failures to produce what was ordered by this Court must have
> consequences for the effective administration of justice in this and
> future cases.  While monetary sanctions were earlier ordered, and
> further monetary sanctions and imposed trial findings of fact against
> the [governmental actor] on certain material issues were considered as
> an appropriate sanction for the repeated violations, this Report and
> Recommendation recommends that for the repeated violations of its
> discovery orders the Court under Fed. R. Civ. P. 37(b)(2)(A)(vi) enter

21

> a default judgment of liability against the [governmental actor] on
> Plaintiff's claims and this matter against [the governmental actor]
> proceed to trial solely on the issue of damages.

*Stone,* 2009 WL 10715838, at *1.  I must observe, however, that even if counsel's status as in-house or outside counsel is not the lynchpin of this analysis, an in-house attorney who works directly for the Office of the Wayne County Corporation Counsel, as did O'Neill and Flanagan, is even more directly a representative or agent of the County than would otherwise be the case with private counsel.

Moreover, this Court has much more recently reached the same conclusion as to sanctions in another case involving Wayne County and Attorney Paul O'Neill, namely *Stanley v Wayne County, et al.*, No. 18-12185-LVP-APP, 2021 WL 2660103  (E.D. Mich. May 6, 2021).  In *Stanley*, as here, Wayne County's in-house counsel failed to obey multiple discovery orders and also failed to file an answer to the amended complaint on behalf of the individual defendants.  On May 6, 2021, I recommended entry of a default judgment on the bases of Fed. Rules Civ. P. 37 and 55 (ECF No. 59 therein), and Judge Parker adopted my recommendation on June 28, 2021 (ECF No. 61), despite clear indication of attorney fault.[3]

---

[3] The case settled prior to the Court making any substantive ruling on Defendants' motion to set aside the Clerk's entry of default (ECF No. 58), which argued that

### iv.   Municipal v. individual Defendants

Finally, as to "willingness, bad faith, or fault," I note the mixture of municipal and individual Defendants in this case.  Here, Judge Pepe's recommendation in *Stone* as to the individual defendant officers provides guidance:

> While Mr. Schwarzberg is counsel for several other Defendants in this case employed by the City of Detroit, these individual Detroit Defendants have now substantially complied with their discovery obligations.  Nor is there any showing that any of these individual Defendants were directly or indirectly responsible for the major discovery failings of the City of Detroit.  Thus, no sanctions against them is recommend[ed].  The statements presented at the numerous hearings, status conferences and in the parties' briefs suggest that the lion['s] share of the discovery sought by Plaintiff is in the possession and control of the City of Detroit and/or the Detroit Police Department.  Accordingly, it would not be fair to hold the individual Defendants liable for materials they ar[e] unable to produce and questions they are unable to fully answer.

*Stone*, 2009 WL 10715838, at *13.

Defendants believe the same can be said "for all individual defendants in this matter[,]" (ECF No. 145, PageID.2042).  They do so by likening *Attorney* O'Neill (former counsel in this lawsuit) to *defendant* City of Detroit (a party in *Stone*), because:

---

"Attorney Paul O'Neill wholly abandoned the Defendants in the litigation[,]" (ECF No. 79, PageID.1246, therein), with that motion being denied as moot (2/16/22 Text-Only Order therein).

> . . . [Attorney O'Neill] was the individual with the information (the
> County has already demonstrated it was all made available to him), he
> was the individual that knew what was going on and had a part in it,
> [and] he was the individual that kept everyone in the dark.

(*Id.*, PageID.2042-2043.)  Yet, the source of that demonstration is unclear.  If

Defendants intended to rely upon representations made at the December 13, 2021

hearing, they have not attached a transcript.  If they intended to rely upon the 215

pages of emails, they have not provided a citation.  Moreover, the emails from

David Melton – which span the period from July 10, 2019 to October 4, 2021 –

reveal, for example:

- On June 3, 2020, Attorney O'Neill informed David Melton that O'Neill had "been trying to convince the magistrate judge to adjourn the response deadline for Plaintiff's first set of discovery in this case.  I have been largely successful."  (ECF No. 144-1, PageID.1856, 1866, 1867.)

- On June 12, 2020, Melton emailed several individuals regarding multiple discovery requests.  (ECF No. 144-1, PageID.1882-1883.)

- On October 9, 2020, O'Neill informed Melton that Judge Patti held a status conference and "wants us to produce by Friday, October 15, 2020[.]"  (*Id.*, PageID.1911, 1912, 1913.)

- On January 28, 2021, O'Neill emailed Melton, noting that Plaintiff's counsel "filed a motion for sanctions against me . . . [,]" and Melton responded, *inter alia*, "It's absolutely ridiculous that the attorney would file a motion for sanctions."  (*Id.*, PageID.1982, 1987-1989.)

- On May 25, 2021, O'Neill informed Melton that "[t]he Magistrate Judge has ruled against us upon every turn.  While

24

his decisions may be appealed to Judge Drain, Judge Drain has not yet reversed any of Judge Patti's decisions." (*Id*., PageID.2010.)

- October 1, 2021, O'Neill emailed Melton about "Burks expenses," including "$4830 for discovery sanctions." (*Id*., PageID.2029, 2031-2034.)

Thus, whatever missteps Attorney O'Neill may have made, Plaintiff correctly characterizes the emails as "refut[ing] the notion that O'Neill acted negligently while everyone else was in the blind." (ECF No. 146, PageID.2070.) Additionally, not only was the County "in the loop," but throwing Attorney O'Neill under the proverbial bus will not suffice for a second reason: he was not the only in-house attorney to shirk disclosure obligations. Attorney Flanagan had done so before him. (*See* ECF No. 33-2 [10/29/2019 Requests to Produce]; ECF No. 32 (12/20/2019 substitution of counsel).) Finally, the failings of Wayne County Corporation Counsel negatively affected Plaintiff's ability to prove his whole case, without distinction to particular defendants, all of whom are represented by the same attorneys; Defendants do not show otherwise. Indeed, in the amended complaint, only Count II (for failure to train and supervise, against County and the sheriff only) and Count IV (for gross negligence in violation of the 14th Amendment) are pleaded against any individual defendants. Even if the specificity as to claims against particular defendants is in question, the type of evidence withheld – including crucial portions of the internal affairs file – goes so

25

much to the heart of the case that it cannot be parsed into a separate box that bears upon the County's liability alone.  As discussed immediately below, Plaintiff is roundly prejudiced in his prosecution of all claims against all defendants.

   **b. FACTOR TWO:  Prejudice**

   In addition to the above-detailed delays in securing responses to Plaintiff's first set of discovery requests, perhaps the best example of the prejudice to Plaintiff's case is associated with "the late, July 2021 disclosure of the recordings associated with the internal affairs (IA) file on the events of this case[,]" (ECF No. 129, PageID.1265).  In support of Plaintiff's contention that he was "fed false and materially incomplete information for two years[,]" Plaintiff refers to:

- The July 25, 2019 stipulation and order (ECF No. 17), which addressed Plaintiff's May 16, 2019 *pro se* motion for discovery (ECF No. 8);

- The August 2019 production of Bates WC 1-435 (*see* ECF No. 141 [313 pages]);

- Defense counsel Flanagan's August 2, 2019 letter (ECF No. 136-2), which purportedly accompanied the related documents;

- Plaintiff's October 29, 2019 first set of discovery requests (ECF No. 136-3), namely RTPs 1, 2, 3, 9, 18, 31, 34;

- The Court's March 3, 2020 order (ECF No. 37) granting Plaintiff's motion to compel discovery responses (ECF No. 33);

- Defendants' July 13, 2020 response (ECF No. 54) to Plaintiff's renewed motion to compel discovery and for sanctions (ECF No. 50); and,

26

- The Court's August 13, 2020 order (ECF No. 60) granting in part and denying in part Plaintiff's renewed motion to compel discovery and for sanctions (ECF No. 50).

(ECF No. 136, PageID.1380-1381.)  Plaintiff claims that Defendants' August 21, 2020 responses to the first set of discovery requests were "materially false," because "the answers stated that the responsive materials requested in each of [Request to Produce Nos. 1-3, 9, 18, 31 and 34] were contained in the IA file," *i.e.*, "the one produced in August 2019 . . . ."  (ECF No. 136, PageID.1381-1382; *see also* ECF No. 136-4.)  Plaintiff also contends that Defendants amended the responses to the first set of discovery "without ever producing or identifying further items at issue here[,]" (ECF No. 136, PageID.1382), for example Defendant Wayne County's February 25, 2021 fourth supplemental response to Plaintiff's first set of discovery (ECF No. 136-5).  Additionally, Plaintiff claims that *duces tecum* deposition notices – *e.g.*, Plaintiff's notice of taking Defendant Officer Keith Williams's deposition on March 9, 2021, which also required witnesses "to bring any item responsive to written discovery in their custody or control not previously produced in this matter[,]" (ECF No. 136-9, PageID.1454) – were not fruitful. (ECF No. 136, PageID.1382.)

Specifically, Plaintiff claims that Defendants failed to produce the following

items, each of which he contends were "responsive to one or more of the Requests

to Produce . . . [:]"

- (3) electronic aural recordings of the Plaintiff giving his witness statement to the IA investigator;

- (4) electronic aural recordings of the Assailant giving his witness statement;

- (1) electronic aural recording of a third-party witness (who is dead—hence, this is the only evidence that remains);

- Dozens of paper criminal investigatory documents regarding real evidence, including DNA testing of the assailant;

- (1) Paper chain of custody list; and[,]

- (12) electronic aural recordings of the only two witnesses Defendants deposed in this case, other than Plaintiff, namely Plaintiff's parents.  They were deposed without access to these recordings.

(*Id*., PageID.1382-1383.)  It seems these were received on or about July 20, 2021

(ECF No. 138), by which point Plaintiff explains that his "two experts had already

written their reports and they were being finalized (due within days) of first

receiving the above materials."  (*Id*., PageID.1383.)  As Plaintiff's counsel

explained:

> On 7/21/21, I received for the first time in this case, in I think the second to last fact deposition I did, if it wasn't the last, it was one of the last two, three, I don't know, but it was after my client had been deposed, after the experts, after years of

litigation, I learned that the internal affairs file for this case
about wrong -- wrongful conduct by the department, including
recordings, two or three recordings of my client by the
investigating officer of the rape that's at the heart of this,
existed.  That's when I learned, I think it was in a deposition
on a couple of days before then, and the recordings were first
produced on or about 7/21/21 to me.  I have no idea why that
is, but it wasn't just the IA file, the core of what this
county did about this rape.  It was also recordings of my
client and the, the assailant, who was convicted later in Wayne
County, many, many recordings of them on the phone.  Clearly, I
didn't have the chance to prepare my client.  Clearly, I didn't
have the chance to question dozen, you know, probably a dozen
witnesses by then.  You know, my strategy in the case, et
cetera, I mean, this is not, like, an 80-year-old document that
I'm asking for a random esoteric policy.  This was the core
investigatory file.

(ECF No. 131, PageID1304-1305.)  In fact, at this point, <u>discovery had officially
closed</u>.  (ECF No. 112.)

Defendants' counsel attempted to put a different spin on why the IA

materials were produced when nearly all of the fact witness depositions had been

completed and the discovery deadline had actually passed; he told the Court that

the material was produced, not because of any prior order or discovery request, but

merely "[b]ecause as soon as the deponent indicated he had them, I produced them.

*I felt it was fair*."  (*Id*., PageID.1324 (emphasis added).)  But this explanation,

which characterizes the production as a gratuity, was misleading.  In fact O'Neill

had previously affirmed to Judge Hluchaniuk at the January 2020 scheduling

conference that "investigative reports, internal affairs reports or anything of that

29

nature" are all "preserved and available…if not already provided to plaintiff[.]" (ECF No. 132, PageID.1351-1352.)  And, on November 5, 2021, O'Neill acknowledged to me that he did "represent [to Judge Hluchaniuk] that we did produce the IA file that I had, for sure."  (ECF No. 131, PageID.1323.)  In fact, Defendants' predecessor counsel, Margaret Flanagan, had stipulated on July 25, 2019 and been ordered to produce "[a] true and correct copy of the full internal affairs investigation relative to Plaintiff with all attachments" on or before August 2, 2019.  (ECF No. 17, PageID.66-67.)  On August 2, 2019, Ms. Flanagan allegedly turned over the entire internal affairs file, representing that the only things missing from it were some medical information regarding another inmate that had been redacted, and "the Lieutenant's report from the afternoon shift of August 23, 2016[,]" further representing that a paralegal "will be on this file for the duration and is copied herein." (ECF  No. 136-2.)  As we now know, other significant and material portions of the file – namely recordings associated with the IA file – were missing.  Thus, I agree with Plaintiff's characterization that "[t]he failure and refusal to produce the documents at issue cannot be laid only at Paul O'Neill's feet and excused as an individual failure.  Margaret Flanagan is the one who violated Docket No. 17, not Mr. O'Neill.  He was not yet part of the case." (ECF No. 136, PageID.1383.)  Furthermore, even if these items were being withheld for some period because of an ongoing criminal investigation, as

30

Defendants may claim, they failed to make that revelation to Plaintiff, who could have sought a stay on discovery until it was available.

For good measure, the discovery at issue was also ordered on March 3, 2020 (ECF No. 37) and again on August 13, 2020 (ECF No. 60, PageID.464).  All of this went back to Plaintiff's initial discovery requests of October 29, 2019, which were served upon Ms. Flanagan nearly three months after she allegedly produced the IA file.  These broadly defined the term "document" to include "any written, printed, graphic or recorded matter of any kind . . . graphic or aural records or representations of any kind, and electronic or mechanical records or representations of any kind . . . ."  (ECF 33-2, PageID.171 ¶ 2.)  Those document requests required production of, *inter alia*:

- (No. 1) "[a]ll files . . . *regarding* the events described in the Complaint and/or the Plaintiff,"

- (No. 2) "all *documents* and *communications* . . . *regarding* the events described in the Complaint, the Plaintiff, Martin Solomon (his rapist), and/or this lawsuit[,]"

- (No. 3), "all witness statements . . . *regarding* the events described in the Complaint, the Plaintiff, the investigation of the sexual assault of Plaintiff, or this lawsuit[,]"

- (No. 18) "all . . . **recordings** or other tangible evidence . . . *regarding* the events described in the Complaint, the Plaintiff, the investigation into the sexual assault of Plaintiff, or this lawsuit[,]"

- (No. 31) "all **internal affairs** *documents . . .* [,]" and

31

- (No. 34) "all *documents* . . . *regarding* the criminal investigation and/or prosecution of Martin Solomon for sexual assault and kidnapping of Plaintiff."

(*Id.*, PageID.178-179, 183,187-188; *see also* ECF No. 136-3 (defined terms emphasized in original, bold type added by the Court).)  One wonders how many ways this evidence could possibly have been requested or how many times it could possibly have been ordered before it sank in that the County had to produce it.

Paul O'Neill appeared as counsel on December 20, 2019.  (ECF No. 32.)  At that point, responses to these requests to produce were *overdue* by twenty-two days.  Plaintiff's counsel brought them to O'Neill's attention in early January 2020, and he acknowledged in a January 10, 2020 email having received the requests, promised to begin working on them, and also assured "rolling document production *as I receive the documents from my clients*."  (ECF No. 33-3, PageID.197-198 (emphasis added).)  When Defendants finally got around to formally responding to the discovery requests on August 21, 2020, they repeatedly directed Plaintiff to ranges of Bates-numbered documents "previously produced," and the response was signed by O'Neill over his name and that of the Wayne County Corporation Counsel, James W. Heath.  (ECF No. 136-4, PageID.1428-1429, and as highlighted in the record.)[4]  Yet, at the November 5, 2021 show cause

---

[4] Plaintiff points out that the accompanying interrogatory answers were signed by

32

hearing, O'Neill had to concede that while "numerous documents were turned over

and included an IA report," the production "*exclud[ed] the recordings*, of course."

(ECF No. 131, PageID.1331 (emphasis added).)

More astonishingly, at the December 13, 2021 show cause hearing, the

Court learned that O'Neill had the aural recordings back *on June 19, 2020* (nine

months after the request),  – *i.e.*, *thirteen months before* he turned them over.  This

can hardly be characterized as something he produced because he "felt it was

fair[;]" rather, it is more squarely emblematic of sandbagging, not just by O'Neill,

but by Flanagan and perhaps Heath and the paralegal who was "on this file for the

duration . . . ."  And these were recordings not only of Plaintiff himself but also of

his assailant – undoubtedly the best evidence of what was being reported or

described about this event at the time of the recording.  *See* Fed. R. Evid. 1002

("Requirement of the Original," *a.k.a.*, the Best Evidence Rule).  They also

undoubtedly preserved evidence at a point much closer in time to the alleged

sexual assault, when memories of the event were especially fresh.  *See* Fed. R.

Evid. 803(1-3) ("Present Sense Impression," "Excited Utterance," "Then-Existing

Mental, Emotional or Physical Condition.").  As Plaintiff's counsel stated, "I have

---

David Melton, Jr. (ECF Nos. 136, PageID.1383); however, only the answer to
Interrogatory No. 8 is appended (*see* ECF No. 136-4, PageID.1421 [Int. No. 8]).
Thus, the Court is unable to determine whether the interrogatory answers address
the completeness of the IA file production or the existence of recordings.

a hard time understanding how his client could be producing policies from 11 years ago and other much more esoteric, let's call it esoteria, and yet somehow, the IA file with the recordings of the investigating officer and my client about the rape weren't produced."  (ECF No. 131, PageID.1318.)  I share her confoundment.

But if this egregious withholding of evidence were not enough, the list of unproduced items, as listed above, contained not just a *single* recording of the Plaintiff and his assailant, but *twenty* aural recordings – including recordings of Plaintiff's parents and of a deceased non-party witness – as well as "[d]ozens of paper criminal investigatory documents regarding real evidence, including DNA testing of the assailant" and a "[p]aper chain of custody list[.]"  (ECF No. 136, PageID.1382-1383.)  This last item would have at least hinted to Plaintiff that something was being withheld.  And, as Plaintiff points out, the fault for failing to produce these various items, including the full IA file, cannot be placed entirely at the feet of the County's in-house legal staff, as numerous County witnesses either failed to comply with their *duces tecum* deposition notices or failed to adequately search for the records sought.  (ECF Nos. 136, PageID.1382-1384, 136-6 & 138 [Harrison Affid.], 136-7 [Davis Dep. Tr.] & 136-9 [Duces Tecum Dep. Notices].) *If that weren't enough*, Defendants also failed to comply with the March 2021 order for monetary sanctions (ECF No. 96) until November 2021 (ECF No. 137), after two show cause orders (ECF Nos. 124, 129), despite representations by

O'Neill and a paper trail, depending on which paints a more accurate picture, of the County's awareness of the sanctions order as far back as March, possibly in July or August, and certainly no later than October 2021.  (ECF No. 131, PageID.1277-1290, 1329-1331; ECF No. 144-1, PageID.2029, 2031-2034.)

Defendants' responsive argument that "[t]he prejudice to Plaintiff, outside of the expense, is not severe enough to justify a sanction of liability[,]" (*id*., PageID.1485-1486), is unavailing.  First, setting aside Defendants' assertions that case delays were common amidst the COVID-19 pandemic and that Plaintiff's imprisonment means "he is not facing any impending life events with this matter hanging over him[,]" it is not Defendants' place to speculate that Plaintiff "will likely not see much, if any, recovery in this matter because it will be collected by the Michigan Department of Corrections."  (*Id*.)  This is a glib answer that fails to take seriously the damages sustained when one is raped.

Second, to the extent Defendants contend that "Plaintiff has failed to point to actual prejudice by receiving the recordings late, *e.g.*, what new information the recordings contain such that he is actually prejudiced by the late disclosure[,]" (*id*.), Captain Reid Chakrabarty testified that "[t]he tape *is kept* and it is transcribed by the officer that created the recording, *but not transcribed word for word or verbatim*."  (ECF No. 140-2, PageID.1490 (emphases added)).  Certainly, Plaintiff was entitled to the actual recordings <u>and</u> any related transcription, but did not, prior

35

to the July 15, 2021 Chakrabarty deposition (ECF No. 140-2).  More to the point,

Plaintiff's assertion that the late disclosure occurred as his two expert's reports

were being finalized, and all but one or two depositions were completed,

sufficiently illustrates prejudice.  Albeit in the context of excluding evidence as a

sanction, I am persuaded by the guidance that, "while 'prejudice' . . . does not

mean 'irremediable harm,' the burden imposed by impeding a party's ability to

prepare effectively a full and complete trial strategy is sufficiently prejudicial."

*Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).  As Plaintiff

characterized it when he filed the instant motion in September 2021, prejudice "has

occurred here in spades[.]"  (ECF No. 123, PageID.1179.)  His attorney had every

right to know what these key witnesses said, including her own client, *before*

determining her litigation strategy, deciding the order in which she wanted to

depose witnesses, actually questioning any witnesses, and defending her client's

deposition.  *See* Fed. R. Civ. P. 26(d)(3)(A) (a party's own discretion as to

sequence of discovery).  Moreover, foreknowledge of these recordings (including

possible transcription of them into a verbatim transcript) − and the unproduced

written documents (namely, the paper chain of custody list and paper criminal

investigatory documents (ECF No. 136, PageID.1382-1383)) − may have permitted

Plaintiff's counsel to refresh the recollections of various witnesses and prepare her

own client for impeachment before deposition.  Fed. R. Evid. 612(a) (adverse

party's use of a writing to refresh recollection); *United States v. Rappy*, 157 F.2d

964, 967 (2d Cir. 1946) ("Anything may in fact revive a memory: a song, a scent, a

photograph, [an] allusion, even a past statement known to be false."). 

Additionally, pursuant to Fed. R. Evid. 612(c), "If a writing is not produced or is

not delivered as ordered, the court may issue an appropriate order."  A judge "has

considerable discretion in ordering appropriate sanctions" under this rule.  4

*Weinstein's Federal Evidence*, § 612.09[1] (2021).

### c.   FACTOR THREE:  Warning

There are multiple examples of warnings, such as:  (i) Judge Hluchaniuk's

January 2020 order, containing warnings about the possibility of sanctions for

failure to comply (ECF No. 36, PageID.208 ¶ A, 209-210 ¶ 8; *see also* ECF No.

132 [Trans. of Sch. Conf.]); (ii) the Court's August 2020 order, providing that

"[f]ailure to abide by this order puts Defendants and their counsel at serious risk of

future sanctions, including all sanctions referenced in Rule 37(b)(2)[,]" (ECF No.

60, PageID.465); and, (iii) the Court's October 2021 order, stating that the

November 5, 2021 hearing would "address the renewed motion for default and …

consider whether sanctions should be awarded against Defendants or their counsel

under Fed. R. Civ. P. 37(b) or pursuant to this Court's inherent authority[,]" (ECF

No. 124, PageID.1254).  In Plaintiff's words, "Defendants have been frequently

and clearly warned that more serious sanctions would follow future

noncompliance[,]" and "Defendants have ignored this Court six times, despite serious warnings . . . ."  (ECF No. 123, PageID.1177, 1179 (emphasis omitted).)

### d.      FACTOR FOUR:  Less drastic sanctions

I agree with Plaintiff that the above-discussed history of this case "makes very clear" that sanctions other than default "will not suffice[.]"  (ECF No. 123, PageID.1179-1180.)  As Plaintiff points out, the Court's two monetary sanctions – $250 in March 2020 (ECF No. 37) and $4,830 in March 2021 (ECF No. 96) – and the establishment of facts sanction (ECF No. 96, PageID.945-948) – "did nothing to improve the situation . . . ."  (ECF No. 123, PageID.1177.)  Indeed, even when monetary sanctions were ordered, they were ignored until Defendants were ordered to show cause – twice.  Plaintiff is correct that "[n]othing this Court has tried short [of default] has sunk in, and Defendants should be defaulted."  (*Id*.)  The Court has repeatedly ordered discovery, well before the July 15, 2021 discovery cutoff (ECF No. 112), and its orders were flouted, with more than one defense attorney making inaccurate communications to Plaintiff's counsel and the Court about what production would be or had been made.  Penalties short of default were tried and failed.  Key evidence was withheld until the County was good and ready to produce it, and by then, Plaintiff had been forced to fly blindly through discovery to his prejudice.  Enough is enough.

Moreover, Plaintiff correctly notes that "default as to liability here entitles the Plaintiff to nothing in and of itself[,]" "[i]t does not prevent the Defendants from disputing damages[,]" and he "still bears a burden of proof on that issue[,]" (ECF No. 123, PageID.1180), as well as causation.  In other words, "this is not a case where default closes the courthouse doors to a litigant." (*Id*.)

### e.    Summation

"Discovery abusers must be sanctioned, because '[w]ithout adequate sanctions, the procedures for discovery would be ineffectual.'" *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 378 (6th Cir. 2008) (affirming default judgment) (quoting 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2281 (2d ed. 1994)).  Having considered the *Harmon* factors, each of which weighs against Defendants, the Court should enter a default judgment as to liability, albeit not a monetary default judgment.  The case should proceed to trial on causation and damages only.

### 2.    Contempt

As of November 4, 2021, Plaintiff's counsel's firm's had yet to receive the $4,830 payment.  (ECF No. 127 [Harrison Affid.].)  Thus, based on the Court's October 1, 2021 order, the Court expected Newsome, the County's Chief Financial Officer, to appear on November 5, 2021 "and explain why the County should not be held in contempt" for failure to make the payment.  (ECF No. 124,

PageID.1253-1254.)  He did not.  Instead, only Attorney O'Neill appeared.  (ECF No. 129, PageID.1264.)  Accordingly, the issue of whether Wayne County should be held in contempt was discussed at the November 5, 2021 hearing.  (*See, e.g.*, ECF No. 131, PageID.1271, 1272, 1288.)  Following the hearing, the motion for default judgment (ECF No. 123) remained under advisement.

On November 8, 2021, I issued a second order, which required Wayne County to show cause "as to why Defendant Wayne County should not be held in contempt of Court for failure to either make the payment called for by my March 16, 2021 order (ECF No. 96) in a timely manner or have Mr. Newsome appear on November 5, 2021[,]" and which also noticed a second show cause hearing for December 13, 2021.  (ECF No. 129, PageID.1265.)  While the order required four individuals – O'Neill, Melton, Heath, and Newsome – to appear in person on December 13, 2021 (ECF No. 129, PageID.1265), I subsequently conditionally granted Defendant Wayne County's motion for reconsideration (ECF No. 135) and provided that "Hughey Newsome will be excused from appearing on December 13, 2021 and having to show cause upon condition that Defendant Wayne County has reimbursed Plaintiff's law firm in the amount of $4,830 prior to that date and has so certified to the Court in writing."  (Nov. 19, 2021 Text-Only Order.)  Wayne County certified that payment was mailed on November 19, 2021.  (ECF No. 137.)

Thus, Mr. Newsome was relieved of his obligation to appear in person on December 13, 2021.

More importantly to the issue of contempt, when attorneys Sarah Prescott, Kali M.L. Henderson, T. Joseph Seward, James W. Heath, Souriana T. Hammoud, and David Melton appeared in person for the December 13, 2021 show cause hearing, with Attorney O'Neill appearing via telephone for a portion of the hearing, the muddled communications between Attorney O'Neill and his client became readily apparent. As noted above, the aforementioned emails from David Melton span the period from July 10, 2019 to October 4, 2021. (ECF No. 144.) As best as the Court can tell from the emails that have been filed in the record, the County was aware of Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83) the day after it was filed (ECF No. 144-1, PageID.1982, 1987-1989) and the $4,830 for discovery sanctions was discussed on October 1, 2021 and October 4, 2021 (ECF No. 144-1, PageID.2029, 2031-2034). This *suggests* that Melton was not aware of the $4,830 sanction assessed in March 2021 until the Court entered its October 1, 2021 show cause order (ECF No. 124), although it also calls into question Defendants' November 29, 2021 representation that the first time they "learned of the discovery difficulties came from a review of the November 5, 2021, transcript." (ECF No. 140, PageID.1482-1483.) That the client did not know about discovery difficulties until its representatives reviewed

the November 5, 2021 transcript is also belied by Attorney O'Neill's earlier

(November 5, 2021) representation to the Court that he told the Wayne County

Sheriff's General Counsel, David Melton: (1) about the monetary sanction order

(ECF No. 96) back when it was issued on March 16, 2021 (ECF No. 131,

PageID.1278, 1329-1330); (2) in July, within "a matter of days" of Judge Drain's

affirmance of that order (ECF No. 113), that the County had to cut a check; and,

(3) "within a week" after the fourteen day deadline for seeking reconsideration had

passed, that the County needed to cut a check for costs. (ECF No. 131,

PageID.1279-1280.)[5] Notwithstanding this, as detailed throughout this report, the

Court has good reason to question Attorney O'Neill's credibility (or at least his

reliability), although it remains unclear why the County did not pay the sanctions

immediately upon the expiration of time within which to request reconsideration of

Judge Drain's July 13, 2021 affirmance (ECF No. 113), or at least in October 2021

in response to the first order requiring Defendants to show cause (ECF No. 124),

instead of waiting until the November 8, 2021 second show cause order (ECF No.

129) and paying the sanctions on November 19, 2021 (ECF No. 137).

Following the December 13, 2021 show cause hearing, the motion for

default judgment (ECF No. 123) and the show cause orders (ECF Nos. 124, 129)

---

[5] He also claimed to have told Mr. Melton about the need to pay the monetary
sanctions within the "[l]ast two months." (*Id*., PageID.1277.)

remained under advisement, as did the question of whether Defendant Wayne County should be held in contempt.  (*See* Dec. 13, 2021 & Dec. 15, 2021 Text-Only Orders.)  Based on the foregoing discussion, Defendant Wayne County should not be held in contempt, as there is no "clear and convincing evidence" that Defendant Wayne County "knowingly" violated this Court's show cause or monetary sanction orders (ECF Nos. 124, 129, 96), even if it exercised willful conduct, bad faith or fault with respect to the Court's aforementioned discovery orders.  *Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017).  The "usual sanction" for civil contempt "is to confine" or otherwise punish the contemnor "until he or she complies with the court order."  Contempt [Civil Contempt], BLACK'S LAW DICTIONARY (11th ed. 2019).  Here, the Court raised the issue of contempt in its show cause orders to assure that its monetary sanctions got paid.  That has now happened.  Had a contempt order been issued, it would by now have been purged.  Thus the matter of contempt for failure to pay the monetary sanctions is moot.

### 3.    Attorney Grievance Commission (AGC)

Finally, the Court must address the very unfortunate conduct of attorney Paul T. O'Neill (P57293), who is currently listed in the State Bar of Michigan's Member Directory as associated with Paul T. O'Neill PLC (PO Box 32505, Detroit, MI 48232-0505; poneill@ptoplc.com).  *See* www.michbar.org (date last

checked June 6, 2022). The Michigan Rules of Professional Conduct (MRPC) contain several rules dedicated to "candor toward the tribunal," the "client-lawyer relationship," "terminating representation" when "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client," and "maintaining the integrity of the profession." *See* MRPCs 3.3, 1.1-1.18, 1.16(a)(2), 8.1-8.5. They also contain a prohibition against providing financial assistance to a client. MRPC 1.8(e). Of particular import to the matter currently before the Court is the following directive: "A lawyer having knowledge that another lawyer has committed a significant violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer shall inform the Attorney Grievance Commission." MRPC 8.3(a). *See also* E.D. Mich. LR 83.20(j) ("Consent to Standards of Conduct and Disciplinary Authority."), E.D. Mich. LR 83.22(c) ("Disciplinary Proceedings.").

Based on the foregoing discussion, I believe the Court has little choice other than to report Attorney O'Neill to Michigan's AGC, and perhaps also to this Court's Chief Judge, Sean F. Cox. I extensively questioned Attorney O'Neill at the November 5, 2021 hearing, which lasted two hours, and the lengthy transcript has been filed in the docket of this case. (ECF No. 131.) In sum, it is enough to note here that Attorney O'Neill seems to have ignored:

44

- the Court's March 16, 2021 order – which required *Defendant Wayne County* to reimburse Plaintiff's law firm in the amount of $4,830 (ECF No. 96, PageID.948) – because O'Neill claimed to have put Melton on notice of the order (ECF No. 131, PageID.1330-1331) but also attempted to make payment on November 5, 2021 from a personal account (ECF No. 131, PageID.1271; ECF No. 130), all of which may implicate MRPC 1.4 ("Communication."), MRPC 1.8(e) (prohibition against providing financial assistance to a client) and MRPC 3.3 ("Candor Toward the Tribunal."); and,

- the effect of his own medical condition, which was shared with the Court *ex parte* (with the agreement of opposing counsel) (*see* ECF 131, PageID.1273-1274, 1287-1288, 1307) and which may implicate MRPC 1.16(a)(2) ("the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client"), and also MRPC 1.1 ("Competence.") (ECF No. 131, PageID.1297, 1337).

The November 10, 2021 hearing was an extraordinary and extremely disheartening event.  The March 16, 2021 order stated that, "no later than **Friday, April 2, 2021**, *Defendant Wayne County* **SHALL** reimburse Plaintiff's law firm in the amount of $4,830 and file proof of service of the payment upon Salvatore Prescott & Porter (105 E. Main Street, Northville, MI 48167)[,]" and further stated that "[i]f this is not accomplished, then the Undersigned will issue a show cause order for Wayne County's Chief Financial Officer to appear and explain why the County should not be held in contempt." (ECF No. 96, PageID.948 (italics added).) The October 1, 2021 show cause order reiterated the requirements of the prior order and stated,  "In accordance with the Court's prior order (ECF No. 96, PageID.948), unless the payment shall have by then been tendered to Plaintiff's

45

counsel, **Wayne County's Chief Financial Officer**, Hughey Newsome, **SHALL**

appear in person in my courtroom at the **Theodore Levin United States**

**Courthouse** (231 W. Lafayette, Courtroom 672, Detroit, MI 48226) on **Friday**

**November 5, 2021** at **10 a.m.** and explain why the County should not be held in

contempt." (ECF No. 124, PageID.1253-1254 (emphases in original).)  Attorney

O'Neill showed up with a postdated, personal check and without the County's

Chief Financial Officer.  (ECF No. 131, PageID.1271.)  He explained that, "the

funds will be available within, it should be next week, but I thought the 15th would

be better."  (*Id*.)  It went downhill from there.

When asked why the County should not be held in contempt for failure to

make the payment, O'Neill explained that "the main reason is, is me.  It's me."

(*Id*., PageID.1272.)  He explained that, "I've been suffering and currently in

treatment for a medical condition, and I haven't been able to do what I need to do

to make sure that the payment is tendered through the County.  And I view that,

that the Court's order is, is, regarding payment is, should be, in fairness, written by

me personally and not by the taxpayers of Wayne County."  (*Id*., PageID.1273; *see*

*also* PageID.1280.)  He admitted that there were insufficient funds in the related

account to cover the check on the day it was written.  (*Id*., PageID.1274-1275.)[6]

---

[6] Both the Court and Ms. Prescott questioned whether it is even legal (or "a crime")
to pass a post-dated check, let alone one without sufficient funds to back it at the

O'Neill admitted that he had not told the Chief Financial Officer that he was required to come to Court. (*Id*., PageID.1276-1277.) When asked why the money was not paid when no motion for reconsideration of the affirmance was ever filed (and despite the lack of a stay on my sanction order), O'Neill explained, "Because I failed to – it was – I don't know how to answer that exactly." (*Id*., PageID.1279-1280.) He stated that the County did not cut the check due to his own health problem and that he himself is responsible for the check not being paid. (*Id*., PageID.1281-1282.) He also revealed that the prior $250 sanction – which Judge Hluchaniuk ordered "defendants" to pay (ECF No. 37, PageID.215) – was actually paid with his personal funds. (ECF No. 131, PageID.1283.) He admitted that he violated the Court's more recent sanction order (ECF No. 96). (*Id*., PageID.1285.) When reminded that he did not respond to the instant motion, he did not believe it should be granted as unopposed. (*Id*., PageID.1287.) He did not ask for the

---

time of tender. (ECF No. 131, PageID.1271-1272, 1310-1311.) *See* Mich. Comp. Laws 750.131, *et seq*.; *People v. Niver*, 152 N.W.2d 714, 716 (1967) ("The fact that a post-dated check entered into the picture does not prevent the finding by the jury of a present fraud which would support the conviction."). *See also* Perovich, *Application of "Bad Check" Statute with Respect to Postdated Checks*, 52 A.L.R.3d 464 (Originally published in 1973). At one point Ms. Prescott even tried, compassionately, to throw O'Neill a lifeline, suggesting that he should get counsel to assist him in answering the Court's questions. (*Id*., PageID.1274) ("Paul, are you sure you should be answering these questions? I'm not your lawyer, but I think you should really think hard about whether you need some help in this hearing.").

sanction check to be cut, did not show the show cause order to anyone at Wayne County (other than himself), and he did not make anyone at Wayne County aware that the Court issued a show cause order to Wayne County CFO Newsome.  (ECF No. 131, PageID.1290-1291.)  He cited his "medical condition" as "entwined with" the reason his client did not pay, and he also offered "good cause for [his] medical condition" as an excuse for why he should not have to pay the costs of the instant motion.  (*Id.*, PageID.1288, 1294.)  With reference to MRPC 1.16(a)(2), the Court asked him point-blank whether "your physical or mental condition materially impairs your ability to represent Wayne County in this case."  (*Id.*, PageID.1296.)  He initially answered, "I don't believe so . . . that's my initial thought[,]" but, later, when the Court pointed out that his health condition was his repeated excuse for not complying with the court order, O'Neill stated, "I can't answer that at this time, [Y]our Honor."  (*Id.*, PageID.1296-1297.)  Although the Court concluded the November 5, 2021 hearing by warning Mr. O'Neill to carefully review his obligations under MRPC 1.16(a)(2) (*id.*, PageID.1337-1338), he continued as counsel of record until December 15, 2021 (ECF No. 143), two days after the second show cause hearing, at which he appeared by phone at the Court's own initiative so that he could be asked additional questions.

From all this, it appears to the Court that Attorney Paul O'Neill ignored several court orders, attempted on November 5, 2021 to personally pay a sanction

that had been ordered against the County with a postdated check that did not have sufficient funds to back it (the check was refused by both the Court and opposing counsel (ECF No. 131, PageID.1271-1272, 1310-1311)), failed to adequately communicate with his client about important matters, including orders requiring payment of sanctions and his client's appearance in Court, was not forthcoming with the tribunal, and failed to withdraw when his physical or mental condition materially impaired his ability to represent his client.  The Court seriously wonders whether O'Neill would have continued to sweep the monetary sanctions under the rug but for the fact that the Court served its November 8, 2021 second show cause order directly upon David Melton, James W. Heath and Hughey Newsome by both mail and email, directing them "to read the November 5, 2021 hearing transcript, when it appears on the docket, word-for-word."  (ECF No. 129, PageID.1265-1266; *see also*, ECF No. 131, PageID.1337.)

Accordingly, while saddening to do so, filing a Request for Investigation is appropriate, and a copy of this report will be forwarded to the AGC to take suitable action.  *See* https://www.agcmi.org/for-the-public/the-investigative-process.  I leave it to Judge Drain's discretion as to whether this matter should additionally be referred to the Chief Judge of this Court.

**F.      Conclusion**

With regard to the first sanction factor, the Sixth Circuit has stated that

"dismissal of an action for an attorney's failure to comply" should only be ordered

where there is "'a clear record of delay or contumacious conduct . . .'" and "the

attorney's dilatory actions amounted to failure to prosecute and no alternative

sanction would protect the integrity of pre-trial procedures." *Carter*, 636 F.2d at

161 (citations omitted); *see also Bradbury v. Twp. of Plymouth*, No. 94-2232, 1997

WL 76187 (6th Cir. Feb. 20, 1997) (quoting *Carter*).  In this matter, for the reasons

stated above, there is "a clear record of delay or contumacious conduct . . . [,]"

which relates to the "attorney's failure to comply . . . ." *Carter*, 636 F.2d at 161.

And, as made clear throughout this report, the blame for the failure to comply with

court orders and discovery or disclosure obligations does not rest solely with

Attorney O'Neill; rather, the blame must be shared between various Wayne

County players.  Accordingly, the Court should **GRANT IN PART** Plaintiff's

September 27, 2021 renewed motion for default judgment (ECF No. 123), namely,

it should enter a default judgment as to liability only, as a sanction under Fed. R.

Civ. P. 37(b)(2)(A)(vi) (or, alternatively, prohibit Defendants from opposing

Plaintiff's liability claims under Fed. R. Civ. P. 37(b)(2)(A)(ii)), and reserve the

issues of causation and damages for trial.  Additionally, while the Court should not

hold Defendant Wayne County in contempt with respect to the show cause and

Case 2:19-cv-10027-GAD-APP   ECF No. 154, PageID.2212   Filed 06/07/22   Page 51 of 52

monetary sanction orders (ECF Nos. 124, 129, 96), its former counsel, Attorney Paul T. O'Neill, will be reported to the Michigan AGC. Costs in connection with this motion have already been awarded to Plaintiff and paid by the defense. (ECF Nos. 152, 153.)

## III.   PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

51

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.* If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated: June 7, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE