UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNATHAN L. BURKS,

    Plaintiff,

       v.

RAPHAEL WASHINGTON, *et al.*,

    Defendants.

_____/

Case No. 19-cv-10027

U.S. District Court Judge
Gershwin A. Drain

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' OBJECTIONS (ECF No. 155), ACCEPTING AND ADOPTING IN PART REPORT AND RECOMMENDATION (ECF No. 154), GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (123), GRANTING PLAINTIFF'S *EX PARTE* MOTION TO ENLARGE PAGE LIMIT (ECF No. 158), AND SETTING NEW DATES**

1

**Table of Contents**

I.     Introduction ........................................................................................3

II.    Background ..........................................................................................4

III.   Law & Analysis ..................................................................................16

   A.   Legal Standard ..................................................................................16

   B.   Discussion ..........................................................................................17

      1.   Plaintiff's Motion to Enlarge Page Limit ........................................17

      2.   Defendant's request to submit December 15, 2021 hearing

transcript ..........................................................................................17

      3.   Objection 1: first *Harmon* factor ....................................................18

      4.   Objections 1G and 2: prejudice ........................................................41

      5.   Objections 2A and 2B: culpability of Defendants and other Wayne

County employees..................................................................................45

      6.   Objection 3: warnings about sanctions...........................................50

      7.   Objection 4: consideration of less drastic sanctions......................52

      8.   Objection 5: reliance on Grange .....................................................53

IV.    Conclusion...........................................................................................54

V.     Scheduling Order ...............................................................................55

## I.   INTRODUCTION

On September 27, 2021, Plaintiff Johnathan L. Burks filed the instant Renewed Motion for Default Judgment, ECF No. 123, which this Court assigned for resolution, along with all other pretrial matters, to Magistrate Judge Anthony P. Patti, ECF No. 51.  After several intervening hearings and rounds of supplemental briefing that are discussed in greater detail in Section II *infra*, Magistrate Judge Patti issued a Report and Recommendation on June 7, 2022, suggesting that this Court grant in part Plaintiff's Motion.  ECF No. 154.

Presently before the Court are Defendants' Objections to the Magistrate Judge's Report and Recommendation to Grant in Part Plaintiff's Motion for Default Judgment (hereinafter "Defendants' Objections").  ECF No. 155.  Plaintiff timely responded, ECF No. 159, and Defendants timely replied, ECF No. 160.  Also before the Court is "Plaintiff's *Ex Parte* Motion for Leave to Enlarge Page Limit in Plaintiff's Response to ECF No. 155, Defendants' Objections to the Magistrate Judge's Report and Recommendation (ECF No. 154) to Grant in Part Plaintiff's Motion for Default Judgment" (hereinafter "Plaintiff's Motion to Enlarge Page Limit").  ECF No. 158.  Upon review of the Parties' submissions, the Court finds that oral argument will not aid in the disposition of these matters.  Therefore, the Court will resolve them on the briefs.  *See* E.D. Mich. LR 7.1(f)(2).

For the following reasons, the Court **SUSTAINS IN PART AND OVERRULES IN PART** Defendants' Objections (ECF No. 155), **ACCEPTS** and **ADOPTS IN PART** the Report and Recommendation (ECF No. 19), subject to the qualifications discussed in this Opinion and Order, and **GRANTS IN PART** Plaintiff's Renewed Motion for Default Judgment (ECF No. 123). Specifically, the Court **GRANTS** default as to liability only, and trial will proceed on the issue of damages only. The Court also **GRANTS** Plaintiff's *Ex Parte* Motion to Enlarge Page Limit (ECF No. 158).

## II.   BACKGROUND

Magistrate Judge Patti summarized the relevant background in his Report and Recommendation, which the Court copies *infra*.

### A. Operative Pleading

Plaintiff initiated this lawsuit *in pro* per in January 2019. Several months later, counsel entered an appearance on Plaintiff's behalf and Plaintiff filed an amended complaint, in which he claims: "In 2016, Wayne County Jail officials incarcerated a known violent sexual predator in the protective custody unit in which Plaintiff had been held alone, because of his association with the high-profile death of a young child." (ECF No. 19; PageID.72 ¶ 4.) According to Plaintiff, "[w]ithin hours, the predator forcibly raped Plaintiff, saying it was 'punishment' for the child's death." (*Id.*, PageID.73 ¶ 6.)

Defendants are the County of Wayne, as well as Benny Napoleon,[1] Keith Williams, Judy Bell, Paul Seals and Damone Lee, who are sued in their official and individual capacities. (ECF No. 19, PageID.71.) Plaintiff's causes of action include:

> 1. failure to protect and render aid in violation of the Eighth Amendment's cruel and unusual punishment clause (*against all Defendants*);

> 2. failure to train and supervise in violation of the Eighth Amendment (*against Defendants County of Wayne and Napoleon*);

> 3. shocks the conscience deprivation of substantive rights in violation of the Fourteenth Amendment (*against all Defendants*); and,

> 4. gross negligence in violation of the Fourteenth Amendment (against all Defendants other than County of Wayne).

(*Id.*, PageID.83-89 ¶¶ 80-118.)

**B. Discovery and Motion Practice**

Judge Drain has referred this case for pretrial matters, first to Judge Hluchaniuk and then to me. Although the Court has entered

---

[1] Former Wayne County Sheriff Benny N. Napoleon passed away in December 2020. In January 2021, Raphael Washington became the Wayne County Sheriff. According to the Court's May 17, 2021 text-only order, the parties were to submit a stipulation to substitute current Sheriff Raphael Washington for Defendant Benny N. Napoleon. It seems this did not occur. [Magistrate Judge Patti thus directed the Clerk of Court to substitute Washington in place of Napoleon, pursuant to Fed. R. Civ. P 25(d), and the substitution occurred on June 7, 2022.]

numerous stipulated orders over the course of this lawsuit (*see, e.g.*, ECF Nos. 17, 18, 32, 48, 56, 66, 67, 70, 85, 86, 90, 92, 95, 97, 101, 106, 107, 109, 110, 112, 114, 115, 122, 126), and although at least one motion has been withdrawn (ECF Nos. 74, 108), the Court is far too familiar with the exchange of discovery in this case.

### 1. Plaintiff's January 2020 motion to compel discovery responses (ECF No. 33)

In the beginning of this case, Defendants were represented by Margaret M. Flanagan of Wayne County Corporation Counsel. (ECF No. 16, 27-28.) On October 29, 2019, Plaintiff served his first set of interrogatories (Nos. 1-8) and first set of requests for production of documents (Nos. 1-49) on Defendants. (ECF No. 33-2.) Notably, "document" was defined to include "any written, printed, graphic or recorded matter of any kind, wherever located . . . ." (ECF No. 33-2, PageID.171 ¶ 2.) On December 20, 2019, Judge Drain entered a stipulation and order for substitution of counsel, at which point Attorney Flanagan was terminated as counsel of record and Paul T. O'Neill became defense counsel. (ECF No. 32.)

In January 2020, Plaintiff filed a motion to compel, which, *inter alia*, claimed that Defendants had not yet responded to the discovery requests. (ECF No. 33, PageID.159 ¶ 4.) Judge Hluchaniuk entered an order, which provided a schedule for the disposition of Plaintiff's motion to compel and procedures to be followed and contained warnings about the possibility of sanctions for failure to comply. (ECF No. 36, PageID.208 ¶ A, 209-210 ¶ 8). (*See also* ECF No. 132.) On March 3, 2020, Judge Hluchaniuk granted the motion to compel and awarded sanctions in the amount of $250. (ECF No. 37.) On August 14, 2020, Judge Drain found Defendant County's objection to be moot. (ECF Nos. 40, 61.)

### 2. Plaintiff's March 2020 motion to compel discovery and for imposition of sanctions (ECF No. 38)

The first set of discovery requests was also at issue in Plaintiff's March 20, 2020 second motion to compel discovery and for imposition of sanctions, wherein Plaintiff stated he "ha[d] still not received the requested discovery . . . ."  (ECF No. 38, PageID.217.)   Judge Hluchaniuk entered an order that granted Plaintiff's motion to compel and Defendants' motion to stay the Court's prior order (ECF No. 41). (ECF No. 47.)   Judge Hluchaniuk explained that "[t]he request for sanctions [wa]s currently denied without prejudice subject to defendants' compliance with the terms of this order[,]" and that "[t]he prior award of sanctions remain[ed] in effect and defendants [we]re ordered to comply with the terms of that prior order."  (ECF No. 47, PageID.333.)

### 3. Plaintiff's June 2020 renewed motion to compel discovery and for sanctions (ECF No. 50)

The first set of discovery requests were also at issue in Plaintiff's June 26, 2020 renewed motion to compel discovery and motion for sanctions.  (ECF Nos. 50, 50-1).  My August 13, 2020 order required Defendant to pay the previously ordered $250 but denied additional requested sanctions based on "honest debate about Defendants' discovery due date."  (ECF No. 60, PageID.463-465.)  This ambiguity was due to the Covid-19 shutdown and its effect upon certain deadlines. Further, noting that defense "counsel has had access to his office for two months[,]" the order expressly required Defendants to serve answers to the interrogatories and responses to the requests for production – each without objection – no later than August 21, 2020. (ECF No. 60, PageID.463-464.)

### 4. Plaintiff's September 4, 2020 motion for further sanctions (ECF No. 62)

7

On August 21, 2020, Defendants served responses to the first set of interrogatories and first set of requests to produce.  (ECF No. 62-2.)  <u>To put this into perspective, this was 297 days (i.e., nearly 10 months) after the related requests were served</u>.  At some point, Plaintiff served his second set of discovery requests.

Plaintiff's September 4, 2020 motion for sanctions (ECF No. 62) concerned Defendants' response to Plaintiff's first set of interrogatories and first request for production (ECF No. 62-2).  On September 11, 2020, Defendant Wayne County served its response to Plaintiff's second set of requests for production of documents (Nos. 1-33).  (ECF No. 70, PageID.558 ¶ 2; ECF No. 123-3.)

The October 19, 2020 stipulated order required certain matters to be performed by October 23, 2020, including some related to the first set of requests for production of documents.  (ECF No. 67, PageID.541 ¶ 3.)  The October 30, 2020 stipulated order resolved the motion for sanctions (ECF No. 62), but the language of the stipulated order required production with respect to various of the second set of requests to produce by <u>November 13, 2020</u>.  (ECF No. 70, PageID.558.)  It seems that, on or about that date, Defendant Wayne County served a supplemental response.  (ECF No. 123-5.)

### 5. Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83)

Plaintiff served a third set of discovery requests (Nos. 1-24) on September 1, 2020 (ECF No. 83-3), to which no response was served *until sometime in February 2021*, *i.e.*, Defendant(s) served a response after the "missing" answers were brought to this Court's attention in Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83, PageID.742), which concerned: (1) the first set of RFPs (ECF No. 83-1); (2) Defendant's September 11, 2020 and November 13, 2020

responses to Plaintiff's second set of RFPs (ECF No. 83-2, 83-5); and, (3) Plaintiff's September 1, 2020 third set of RFPs (ECF No. 83-3). Defendants did not file a response.  Thus, the motion was unopposed. E.D. Mich. LR 7.1(c)(1) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available.").

Following a March 12, 2021 hearing, at which Attorney Sarah Prescott appeared on Plaintiff's behalf and Attorney Paul T. O'Neill appeared on behalf of the Defendants, the Court entered an order granting in part and denying in part Plaintiff's renewed motion for sanctions.  (ECF No. 96.)  Importantly, pursuant to Fed. R. Civ. P. 37(b), the order listed several "<u>matters to be taken as established for purposes of the action, and prohibitions from introducing designated matters in evidence</u> . . . ." (ECF No. 96, PageID.946-947 (emphasis in original).)  Also, and again pursuant to provisions of Fed. R. Civ. P. 37, the Court directed:

> . . . no later than **Friday, April 2, 2021**, Defendant Wayne County **SHALL** reimburse Plaintiff's law firm in the amount of $4,830 and file proof of service of the payment upon Salvatore Prescott & Porter (105 E. Main Street, Northville, MI 48167.  If this is not accomplished, then the Undersigned will issue a show cause order for Wayne County's Chief Financial Officer to appear and explain why the County should not be held in contempt.

(*Id.*, PageID.947-948 (emphases in original).)[2]

Defendants filed an objection; but, it was comprised of a one-page motion (ECF No. 102), a one-page index of exhibits (ECF No.

---

[2] On March 22, 2021, Defendant Wayne County filed in this matter a copy of its *supplemental* response (ECF No. 100) to Plaintiff's third set of requests for production of documents.

102-1), and title pages for Exhibits A-E without any content whatsoever (ECF Nos. 102-2, 102-3, 102-4, 102- 5 & 102-6).  Plaintiff filed a response to Defendants' purported "objection."  (ECF No. 103.) On July 13, 2021, Judge Drain overruled Defendants' objection, noting that it "includes one conclusory sentence . . . [,]" but also explaining why, "even if Plaintiff presented a substantive argument . . . [,]" the Court "will still overrule the objection."  (ECF No. 113, PageID.1130-1131.) Then, the County did nothing with respect to paying the monetary sanctions.

## C. Plaintiff's September 27, 2021 Renewed Motion for Default Judgment (ECF No. 123)

Currently before the Court is Plaintiff's September 27, 2021 renewed motion for default judgment.  (ECF No. 123.)  Plaintiff alleges that Defendants have "flouted" six Court orders, namely:

- Judge Hluchaniuk's January 27, 2020 scheduling order and order requiring compliance with E.D. Mich. LRs 7.1 and 37.1 (ECF No. 36);

- Judge Hluchaniuk's March 3, 2020 order (ECF No. 37) granting motion to compel and awarding sanctions (ECF No. 33);

- My August 13, 2020 opinion and order (ECF No. 60) granting in part and denying in part Plaintiff's renewed motion to compel discovery and motion for sanctions (ECF No. 50);

- The October 19, 2020 stipulated order (ECF No. 67), which required certain matters to be performed by October 23, 2020;

- The October 30, 2020 stipulated order (ECF No. 70), which resolved the September 4, 2020 motion for sanctions (ECF No. 62);

10

- My March 16, 2021 opinion and order (ECF No. 96) granting in part and denying in part Plaintiff's January 27, 2021 renewed motion for sanctions (ECF No. 83).

(ECF No. 123, PageID.1163, 1168-1177.)  Plaintiff contended, *inter alia*, that Defendants had not paid the sanction award and, again, moves this Court to "report on and recommend default judgment in this case" and for "costs and fees."  (*Id.*, PageID.1162-1163.)  Any response by Defendants was due on either October 11 or October 18, 2021. E.D. Mich. LR 7.1(e).

**1. The November 5, 2021 show cause hearing**

On October 1, 2021, shortly after Plaintiff filed the instant motion, and consistent with its prior promise to do so if the sanctions were not promptly paid (ECF No. 96, PageID.948), the Court issued an order requiring Defendants to show cause, which provided:

> In accordance with the Court's prior order (ECF No. 96, PageID.948), unless the payment shall have by then been tendered to Plaintiff's counsel, **Wayne County's Chief Financial Officer**, Hughey Newsome, **SHALL** appear in person in my courtroom at the **Theodore Levin United States Courthouse** (231 W. Lafayette, Courtroom 672, Detroit, MI 48226) on **Friday November 5, 2021** at **10 a.m.** and explain why the County should not be held in contempt.  *Notwithstanding whether any payment has been made by November 5th*, the Court will also hold a hearing at that same time and date, <u>at which Attorney Paul T. O'Neill must appear</u>, to address the renewed motion for default and to consider whether sanctions should be awarded against Defendants or their counsel under Fed. R. Civ. P. 37(b) or pursuant to this Court's inherent authority.

11

(ECF No. 124, PageID.1254 (emphases in original).)  At the November 5, 2021 hearing, Attorney Sarah Prescott appeared for Plaintiff, and Attorney Paul T. O'Neill appeared for the defense; Mr. Newsome was not in attendance, although when the Court asked defense counsel if he "ma[d]e anyone aware at Wayne County that [the Court] had issued a show cause order to the Wayne County chief financial officer," defense counsel responded, "No."  (ECF No. 131, PageID.1291.)  When asked if monetary sanctions that the County had been ordered to pay had been tendered, O'Neill instead responded by presenting a *personal*, post-dated check, indicating that it did not yet have funds to back it.  (*Id.*, PageID.1271-1272.)

## 2. The December 13, 2021 show cause hearing

On November 8, 2021, I entered a second order requiring Wayne County to show cause and setting a show cause hearing for December 13, 2021.  (ECF No. 129.)  In mid-November 2021, Attorneys T. Joseph Seward, Kali M.L. Henderson, and Souriana T. Hammoud appeared for the defense.  (ECF No. 133, 134, 135.)  By its November 18, 2021 motion for reconsideration, Defendant Wayne County sought to excuse Mr. Newsome's attendance at the forthcoming show cause hearing. (ECF No. 135, PageID.1369.)  On November 19, 2021, the Court conditionally granted this motion and excused Mr. Newsome from appearing on December 13, 2021 and having to show cause, upon the condition that Defendant Wayne County reimburse Plaintiff's law firm in the amount of $4,830 prior to that date and so certify to the Court in writing; in all other respects, the show cause order of November 8, 2021 (ECF No. 129) remained fully in effect.  Wayne County certified that payment was mailed on November 19, 2021.  (ECF No. 137.)

In November 2021, based on an issue raised by Plaintiff's counsel at the November 5th hearing and consistent with my invitation to the parties (ECF No. 131, PageID.1332, 1334), Plaintiff and

12

Defendants filed their supplemental briefs and/or exhibits concerning "the late, July 2021 disclosure of the recordings associated with the internal affairs (IA) file on the events of this case[,]" (ECF No. 129, PageID.1265).  (ECF Nos. 136, 140; *see also* ECF No. 138 [Decl. Crystal Harrison], ECF No. 141 [IA File].)  Among the attachments to Defendants' supplemental brief is the November 29, 2021 declaration of Sue Hammoud, Wayne County Deputy Corporation Counsel, wherein she attests, *inter alia*:

- [She] was made aware of the Court's [March 16, 2021] Order for Sanctions (ECF No. 96) but Mr. O'Neill said that he had a basis to object to the order and was going to do so.

- That not until November 9, 2021, when [she] reviewed the Court's Second Show Cause Order (ECF No. 129), was [she] made aware of the sanctions having been imposed by the Court.

(ECF No. 140-4, PageID.1497 ¶¶ 5, 6.)  It is noteworthy that although Judge Drain overruled Defendants' objection and affirmed my order March 2021 order for sanctions on July 13, 2021 (ECF No. 113), and, although the County may have been considering a motion for reconsideration thereafter (ECF No. 123-2, PageID.1186), no such motion ever came to be, and at no time was my sanction order stayed; nor did anyone request a stay.

On December 13, 2021, attorneys Sarah Prescott, Kali M.L. Henderson, T. Joseph Seward, James W. Heath, Souriana T. Hammoud, and David Melton appeared in person for a show cause hearing and to further discuss Plaintiffs pending motion for default judgment, and Attorney Paul O'Neill appeared for part of the hearing by phone.  My corresponding text-only order stated:

13

Since the previous hearing, Plaintiff has filed supplemental materials (ECF No. 136, 138, 141) and Defendants have filed a supplemental brief (ECF No. 140), per the Court's prior direction. Upon further consideration, Plaintiff's renewed motion for default judgment (ECF No. 123) remains **UNDER ADVISEMENT**, as does the question of whether Defendant Wayne County should be held in contempt. Defendants' oral motion to finally file a response brief regarding Plaintiff's September 27, 2021 motion is **DENIED**. Consistent with representations made by the defense, Defendants shall file a substitution or withdrawal of counsel for attorney Paul O'Neill in the very near future. Further, Defendant Wayne County shall forthwith file the emails referred to by David Melton during the hearing as a supplemental exhibit. No later than January 15, 2022, Plaintiff and Defendants shall file additional supplemental briefs, not to exceed 6 pages in length, which are <u>limited to discussing if application of the sanction of default judgment under Fed. R. Civ. P. 37(b)(2)(A)(vi) depends on whether: (1) the client or the counsel is disobedient; and, (2) the counsel is in[-]house or outside</u>. Moreover, no later than **January 31, 2022**, Plaintiff shall submit a sworn bill of costs, expenses, and attorney fees associated with his attempts to achieve Defendants' compliance with Judge Drain's July 13, 2021 order (ECF No. 113) overruling Defendants' objection (ECF No. 102) to my March 16, 2021 opinion and order (ECF No. 96). Defendants shall have up to and including **February 15, 2022** by which to file any related objection. Finally, the parties are to undergo outside mediation no later than **February 15, 2022**. It is **SO ORDERED**.

(Text-Only Order [Dec. 15, 2021] (bold in original, underlining added).) On December 15, 2021, by way of a stipulated order substituting lead counsel, Attorney O'Neill was terminated as defense counsel of record. (ECF No. 143.)

Defendants promptly filed 215 pages of David Melton's emails. (ECF No. 144.) On January 14, 2022, Plaintiff and Defendants filed their second set of supplemental briefs. (ECF Nos. 146, 145.) On February 24, 2022, Plaintiff informed the Court that the case underwent outside mediation on February 17, 2022, but "settlement was not reached between the Parties." (ECF No. 151.) Thus, this matter is now ready for decision.

ECF No. 154, PageID.2162–74 (emphasis, alterations, and footnotes in original).

### D. The Report and Recommendation

In resolving Plaintiff's Renewed Motion for Default Judgment, Magistrate Judge Patti first noted that while Plaintiff's Motion "appears to seek a default judgment as to liability, causation and damages," Plaintiff's counsel clarified during the November 5, 2021 hearing that Plaintiff is only "'asking for default as to liability.'" ECF No. 154, PageID.2177 (emphasis omitted) (quoting ECF No. 123, PageID.1314–1315). As such, Magistrate Judge Patti focused his analysis on whether Plaintiff is entitled to default as to liability only.[3] *Id.* The portions of the

---

[3] Magistrate Judge Patti also noted that to the extent Plaintiff's Motion requested "costs and fees," ECF No. 123, PageID.1162–63, he had already resolved the issue in his April 14, 2022 Opinion and Order, ECF No. 152, and Defendant Wayne County had already tendered a check, ECF No. 153.

Report and Recommendation relevant to Defendants' Objections are discussed in greater detail *infra*.

### III.   LAW & ANALYSIS

#### A. Legal Standard

Title 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72 govern the standard of review a Court should employ when examining a report and recommendation from a magistrate judge. The Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* The Court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* However, a party's failure to object is accepted as agreement with the conclusions of the magistrate judge. *See Thomas v. Arn*, 474 U.S. 140 (1985). Thus, the Court is not required to review, under a *de novo* standard or any other standard, the factual findings and legal conclusions of the magistrate judge to which the parties have not objected. *See id.* at 149-50.

16

### B. Discussion

#### 1. Plaintiff's Motion to Enlarge Page Limit

As a preliminary matter, the Court addresses Plaintiff's *Ex Parte* Motion to Enlarge Page Limit (ECF No. 158). Plaintiff asserts that Defendants filed a 26-page brief, outlining nine objections to the Report and Recommendation, that contains "both factual and legal errors" and that additional pages are needed to address the issues and omissions. *Id.* at PageID.2515. Along with the Motion, Plaintiff submitted a 39-page proposed response brief. *See* ECF No. 159.

The Court notes that "Defendants' Objections to the Magistrate Judge's Report and Recommendation (ECF No. 154) to Grant in Part Plaintiff's Motion for Default Judgment," not including the title page, table of contents, and index of authorities, is only 25 pages and thus complies with E.D. Mich. LR 7.1(d)(3)(A). Nevertheless, having reviewed Plaintiff's Motion and proposed response to Defendants' Objections, in addition to Defendants' reply in support of their objections, the Court will grant Plaintiff's *Ex Parte* Motion to Enlarge Page Limit (ECF No. 158).

#### 2. Defendant's request to submit December 15, 2021 hearing transcript

Defendants request that the Court permit them to submit the transcript of the December 13, 2021 show cause hearing, during which Magistrate Judge Patti

allowed Defendants to present evidence but denied their oral motion to file an untimely response to Plaintiff's Renewed Motion for Default Judgment.[4]  ECF No. 155, PageID.2221.  The Court was able to review a copy of the transcript via this matter's electronic docket.  Accordingly, to the extent Defendant's request was that the Court consider the contents of the December 13, 2021 show cause hearing transcript in evaluating Defendants' Objections, Defendants' request is granted.

### 3.  Objection 1: first *Harmon* factor

Defendants first objection disputes the Magistrate Judge's analysis of the first *Harmon* factor: "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault."  *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-367 (6th Cir. 1997) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153–155 (6th Cir. 1988), *superseded by statute on other grounds*, *Vance, by and Through Hammons v. United States*, 182 F.3d 920 (6th Cir. 1999) (table opinion)).  They do so on several grounds, which are addressed *infra*.

In the Sixth Circuit "entry of default judgment" is a "sanction of last resort that may be imposed only if the court concludes that a party's failure to cooperate in discovery is due to willfulness, bad faith, or fault."  *Bank One of Cleveland, N.A. v.*

---

[4] Defendants refer to a "December 15th Show Cause Hearing;" however, a review of the docket reveals that the hearing occurred on December 13, 2021, while the related text-only order was issued on December 15, 2021.

*Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990) (cleaned up). However, the non-compliant party "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Therefore, a "district court does not abuse its discretion in entering a default judgment where a 'party has the ability to comply with a discovery order and does not.'" *Stooksbury v. Ross*, 528 F. App'x 547, 552 (6th Cir. 2013) (quoting *Abbe*, 916 F.2d at 1073); *see also Reyes*, 307 F.3d at 458.

The Sixth Circuit has noted that this factor "is [generally] the most important." *Ndabishuriye v. Albert Schweitzer Soc'y, USA, Inc.*, 136 F. App'x 795, 800 (6th Cir. 2005). Indeed, "[a]lthough no one factor is dispositive, [default judgment] is proper if the record demonstrates delay or contumacious conduct." *Reyes*, 307 F.3d at 458. "Contumacious conduct refers to behavior that is 'perverse in resisting authority and stubbornly disobedient.'" *Carpenter v. City of Flint*, 723 F.3d 700, 704–05 (6th Cir. 2013) (quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)). It "display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of [the party's] conduct on those proceedings." *Id.* at 705 (quoting *Tung–Hsiung Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)).

### i.   Objection 1A: reliance on *Hogan*

Defendants take issue with the Magistrate Judge's reliance on *Hogan v. Discover Bank*, No. 1:19-CV-298, 2020 WL 4208235 (E.D. Tenn. July 22, 2020).

19

ECF No. 155, PageID.2223.  First, they seem to contend the reliance was misplaced because *Hogan* ultimately reaches the opposite conclusion than the one the Magistrate Judge did.  *Id.* at PageID.2222.  The Court finds this argument disingenuous.  While it is true that the *Hogan* court ultimately determined that dismissal was not warranted, that court found the plaintiff's "seven months of failure to prosecute th[e] action," "violation of two of the [c]ourt's [o]rders," and failure to respond to the show cause order were evidence of "*willfulness, bad faith, or fault,*" the first *Harmon* factor.  *Hogan*, 2020 WL 4208235, at *2 (emphasis added).  Moreover, Magistrate Judge Patti acknowledged this limitation in his Report and Recommendation as he only relied on *Hogan* in his analysis of that factor.  ECF No. 154, PageID.2177–78.

Second, Defendants assert that *Hogan* is inapposite because it applied the "willfulness, bad faith, or fault" factor in the context of a failure-to-prosecute analysis under Federal Rule of Civil Procedure 41(b) ("Rule 41(b)") as opposed to a discovery sanction analysis under Federal Rule of Civil Procedure 37 ("Rule 37").  ECF No. 155, PageID.2223.  Defendants are correct that *Hogan* arises out of a distinct procedural posture from the case at bar.  Nevertheless, the Sixth Circuit applies the same factors to determine whether dismissal is the appropriate sanction in both situations.  *See Harmon*, 110 F.3d at 366–67 (applying factors from *Regional Refuse* to assess district court's decision to dismiss a complaint for discovery

violations under Rule 37(b)(2) and (d) as well as for failure to prosecute under Rule 41(b)); *see Abbe*, 916 F.2d at 1073 (applying *Regional Refuse* factors to district court's entry of default judgment as a sanction for discovery abuses).   Notably, *Carpenter v. City of Flint*, , on which *Hogan* and Defendants rely, cites *Harmon* in its own analysis of the "willfulness, bad faith, or fault" factor. *Carpenter*, 723 F.3d at 705 (citing *Harmon*, 110 F.3d at 368).   Regardless, it is indisputable that "[a] district court may sanction parties with entry of default judgment for failure to comply with discovery orders." *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 933 (6th Cir. 2020) (citing Fed. R. CIV. P. 37(b)(2)(A)(vi)).   As such, the Magistrate Judge did not err in relying on *Hogan* in his analysis.

Third, Defendants characterize their "discovery missteps" as "failing to produce recordings of interviews otherwise documented and for which Plaintiff has not identified any discrepancies between writing and recording, payment of monetary sanctions, and the unsupported assertion that '[d]ozens of paper criminal investigatory documents regarding real evidence, including DNA testing of the assailant' were produced late." ECF No. 155, PageID.2223 (quoting ECF No. 136, PageID.1382).   Defendants assert that the conduct at issue in *Hogan* was "more severe." *Id.* at PageID.2222.

The Court concludes that Defendants grossly minimize their misconduct in this case.  Defendants reference their "extensive discovery efforts:" the "over 1,200

pages of documents" they had produced by November 30, 2020, and the "18 depositions [that] have occurred[] and were all attended by counsel for Defendants." However, in so doing, Defendants ignore that all the discovery they have produced in this case—both prior to November 30, 2020 and afterwards—has been untimely and usually in response to court intervention.

Before discovery formally commenced, on July 25, 2019, the Parties stipulated that "on or before August 2, 2019," Defendants would serve Plaintiff with, *inter alia*, "[a] true and correct copy of the full internal affairs investigation relative to Plaintiff with all attachments."[5]   ECF No. 17, PageID.66.   However, the recordings associated with the IA file were not provided to Attorney O'Neil until June 19, 2020, almost a year after the agreed upon deadline.[6]   ECF No. 156,

---

[5] Defendants argue that Plaintiff waived the issue of the late July 2021 disclosure of the recordings associated with the IA file by not explicitly raising it in his Renewed Motion for Default Judgment (ECF No. 123).  The Court overrules this objection for the reasons discussed in Section III, Subsection B, Part 3, Subpart ii *infra*.

[6] To the extent Defendants contend it is unclear whether their failure to produce the IA file violated the July 25, 2019 stipulated order because the underlying discovery request seemed to be seeking documents, ECF No. 140, PageID.1484, the Court rejects this argument.  First, Plaintiff's May 6, 2019 "Motion for Discovery" was a *pro se* pleading and is therefore held to a less stringent standard than a document drafted by counsel.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) Second, Plaintiff requested "any and all investigations that were conducted.  Specifically[,] any and all reports of these investigations that also include: INTERNAL AFFAIRS investigation, CRIMINAL investigation[,] or any other documents that were generated during this incident."  ECF No. 8, PageID.28.  Plaintiff clearly requested discovery related to the criminal investigation into the rape.  Thus, Defendants' confusion over whether the recordings created as part of the criminal investigation

PageID.2295–96; *see also* ECF No. 144-1, PageID.1892. Moreover, Attorney O'Neil did not produce the recordings to Plaintiff until July 21, 2021,[7] another thirteen months after he received them,[8] ECF No. 131, PageID.1319–20, and days after discovery closed pursuant to a stipulated order, ECF No. 112. Defendants only explanation for this delay is internal confusion over whether the recordings were considered part of the IA file. ECF No. 140, PageID.1483–84. However, Defendants now concede that the recordings were responsive to Plaintiff's discovery requests, *id.*; ECF No. 156, PageID.2298, and thus covered by the Magistrate Judge's orders compelling discovery, ECF Nos. 37, 47, 60.

Meanwhile, Plaintiff served his first sets of interrogatories and requests for production on October 29, 2019. ECF No. 33-2, PageID.169. By agreement of the Parties, Defendants were to have produced "full and complete" responses by January 13, 2020. ECF No. 33, PageID.159. Defendants neither met that deadline nor responded to the motion to compel that Plaintiff filed thereafter nor produced the

---

needed to be produced is even less understandable in the context of Plaintiff's initial request.

[7] The Court acknowledges that the keeper of records at Plaintiff's counsel's firm attested that she received an unmarked flash drive, with no enclosure letter, containing the discovery "on or about July 20, 2021." ECF No. 138, PageID.1478. This one-day discrepancy is immaterial and does not alter the Court's analysis.

[8] The Court also acknowledges that Attorney O'Neil stated at the November 5, 2021 show cause hearing that he produced the recordings as soon as he was made aware of them in July 2021. ECF No. 131, PageID.1320, 1324.

discovery by the time Magistrate Judge Hluchaniuk granted the motion to compel and awarded sanctions on March 3, 2020.  ECF No. 37, PageID.214–15.  Moreover, Defendants had still "not [] fully complied with" Plaintiff's requests for discovery by the time Magistrate Judge Hluchaniuk granted Plaintiff's second motion to compel on May 20, 2020, despite the prior order and that there were "no substantive reasons for the non-compliance."  ECF No. 47, PageID.332.  Nor had Defendants paid the prior sanctions award by that point.  *Id.* at PageID.333.

Furthermore, on August 13, 2020, when Magistrate Judge Patti granted in part and denied in part Plaintiff's June 26, 2020 renewed motion to compel discovery and for sanctions (ECF No. 50), "nearly all of the eight interrogatories and forty-nine requests to produce [were] still at issue."  ECF No. 60, PageID.462.  Magistrate Judge Patti noted that there was "no real reason why Defendants" could not "fulfill their discovery obligations at [that] point" given that other matters in this Courthouse were progressing without issue.  *Id.* at PageID.463.  Defendants finally served their responses to the first sets of interrogatories and requests to produce on August 21, 2020.  ECF No. 62-2.  However, on September 4, 2020, Plaintiff filed a motion for sanctions because the "answers [were] incomplete."  ECF No. 62, PageID.469.  Defendants did not timely respond to this motion, but the Parties purported to resolve their issues with the first and second sets of discovery requests by stipulation in

24

October 2020.[9]   ECF Nos. 67, 70.   When Plaintiff's counsel sought to extend discovery via stipulation and joint order, as the Parties had previously agreed to do during a hearing with Magistrate Judge Patti, Defense counsel did not respond to her overtures, prompting Plaintiff to file a motion instead.[10]   ECF No. 71, PageID.564.

Given this history, Defendants' production of 1,200 documents prior to November 30, 2020 is not impressive because Plaintiff was forced to jump through numerous hoops—aided by the Court—to obtain it.[11]   *See Norris v. MK Holdings, Inc.*, 734 F. App'x 950, 956 (6th Cir. 2018) (rejecting the plaintiff's argument that she did not violate the court's discovery order "because she did provide some responsive documents" and affirming district court's dismissal of action under Rule 37(b)); *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 582 (6th Cir.

---

[9] The Court notes that Plaintiff filed a Renewed Motion for Sanctions on January 27, 2021 concerning "numerous items in three sets of written discovery . . . ha[d] not been produced in accordance with the Federal Rules of Civil Procedure, several of which were already the subject of multiple motions, hearings by this Court, *and* orders compelling production long ago."   ECF No. 83, PageID.727.

[10] The Court stops its summary here because Defendants chose to focus on their conduct prior to November 30, 2020.   However, the Court notes that Defendants continued to exhibit dilatory conduct over the course of the next year.   *See* ECF Nos. 96, 124, 129.

[11] The Court is equally unpersuaded by Defendants' contention that Defense counsel attended the 18 depositions that have occurred in this matter as counsel's failure to attend would have been another ground for sanctions.   *See NPF Franchising, LLC v. SY Dawgs, LLC*, 37 F.4th 369, 375, 382 (6th Cir. 2022) (upholding district court's imposition of discovery sanctions against attorneys where plaintiff's counsel failed to appear at three depositions).

2018) (rejecting the plaintiff's argument that its conduct was "not willful or contumacious" because it had "produc[ed] 18,000 documents" and affirming district court's dismissal of action under Rule 37(b)); *Barron v. Univ. of Michigan*, 613 F. App'x 480, 485 (6th Cir. 2015) (affirming dismissal under Rule 37(b) despite the plaintiff's "voluminous discovery" because the Sixth Circuit "ha[s] never suggested that complying with part of a discovery request excuses the plaintiff from complying with the entire request").

To the extent Defendants attempt to blame their discovery delays on the COVID-19 Pandemic, that is belied by the facts that (1) per the Parties' stipulation, Defendants should have produced the recordings associated with the IA file in August 2019, and (2) Plaintiff filed his first motion to compel—because Defendants had not yet responded to his first discovery requests—on January 17, 2020; both of these dates were well before any "shutdowns" began or "emergency orders" were issued. ECF No. 155, PageID.2224; *see also* ECF No. 41, PageID.304 ("On March 10, 2020, the Governor of the State of Michigan declared a state of emergency due to the threat to public health caused by COVID19."). Notably, the deadline Magistrate Judge Hluchaniuk gave Defendants to respond to the first motion to compel was also before the Pandemic struck Michigan in earnest, ECF No. 36, PageID.207, but Defendants never responded to the motion, ECF No. 37, PageID.214.

The Court also reminds Defendants that the COVID-19 Pandemic was a *global* experience that affected everyone, not just them. As Magistrate Judge Patti noted in his August 13, 2020 Order, "other litigation in this Court [was] moving forward smoothly at [that] time, and there [was] no real reason why Defendants [could ]not fulfill their discovery obligations at [that] point, particularly when their counsel [had] had access to his office for two months." ECF No. 60, PageID.643. Moreover, the one time that Defendants requested a stay of compliance with an order to compel due to the Pandemic, Magistrate Judge Hluchaniuk granted the stay "until 10 business days after the Governor lifts the State of Emergency Order regarding the COVID-19 [P]andemic." ECF No. 47, PageID.333. This Court is unaware of any other instance in which Defendants requested some sort of Pandemic-related accommodation, let alone an instance where such a request was not granted. As such, Defendants cannot rely on the Pandemic to excuse their dilatory conduct.

The Court concludes there is a "clear record of delay or contumacious conduct." *Hogan*, 2020 WL 4208235, at *1 (quoting *Carpenter*, 723 F.3d at 704); *see also Youn v. Track, Inc.*, 324 F.3d 409, 421 (6th Cir. 2003) ("Repeatedly violating discovery orders is certainly contumacious and justifies sanctions."). Accordingly, Objection 1A is overruled.

27

### ii.    Objection 1B: issues before the Court

Next, Defendants argue that the Magistrate Judge considered issues not properly before him in addressing the first *Harmon* factor.

First, Defendants assert that Plaintiff waived the issue of the late July 2021 disclosure of the recordings associated with the IA file because Plaintiff did not explicitly raise the issue in his Renewed Motion for Default Judgment.  ECF No. 155, PageID.2225.  Again, the Court finds this argument disingenuous given how the issue was first introduced.  During the November 5, 2021 hearing, Attorney O'Neil argued that Defendants had "substantial[ly] compli[ed] with the many document requests and discovery requests" given the "well over 10,000 pages of documents produced" by that time.  ECF No. 131, PageID.1291–92.  Plaintiff's counsel responded that "[n]ot everything that ha[d] happened in discovery ha[d] been brought" to the Court's attention and only then discussed the late disclosure of the discovery associated with the IA file.  *Id.* at PageID.1304–05.  She explained the late disclosure as a "pretty poignant" example "of [her] complete disagreement that there ha[d] been substantial compliance, certainly timely compliance."  *Id.* at PageID.1306.  Magistrate Judge Patti then questioned Defense counsel extensively about whether the recordings were responsive to Plaintiff's earlier discovery requests and Defendants' decision to later produce them.  *Id.* at PageID.1319–29.  After equivocating for a while, *Defense counsel suggested* the issue should be

28

"properly briefed," and the Magistrate Judge agreed, *id.* at PageID.1329, and ordered the Parties to file supplemental briefs addressing the issue, ECF No. 129, PageID.1265.

As such, to the extent Plaintiff did not sufficiently preserve the issue by addressing the Defendants non- and late-responses to the first sets of interrogatories and requests for productions, Defendants opened the door to the late disclosure issue when they argued they had substantially complied with discovery. *See, e.g.*, *Helfrich v. Lakeside Park Police Dep't*, 497 F. App'x 500, 509 (6th Cir. 2012) ("When a party offers evidence of his good character, he opens the door for the opponent to admit rebuttal evidence of his prior bad acts.").  The Sixth Circuit has recognized that a "party can also open the door to rebuttal evidence through 'statements made during his or her oral argument.'"  *Id.* (quoting *Reed v. PST Vans, Inc.*, 156 F.3d 1231, at *3 n. 3 (6th Cir. 1998) (table opinion)).  Defendants put their compliance with Plaintiff's discovery requests at issue during the November 5, 2021 show cause hearing and cannot complain now that Plaintiff has offered evidence to counter their narrative.

Regardless, waiver would be inappropriate here, where Defendants have had multiple opportunities to address the late disclosure issue after it was initially raised at the show cause hearing—specifically, through supplemental briefing, ECF No. 140, during oral argument during the December 13, 2021 show cause hearing, ECF

29

No. 156, and in the instant objections to the Magistrate Judge's Report and Recommendation, ECF No. 155.  *See Rogers v. I.R.S.*, 822 F.3d 854, 865 (6th Cir. 2016) ("[W]here there is no unfair prejudice, surprise, or delay, the general waiver rule is left to the district court's discretion[.]"); *Wallace v. Coffee Cnty., Tennessee*, 852 F. App'x 871, 875 (6th Cir. 2021) (noting courts "sometimes bend [the waiver] rule . . . where raising the [argument] for the first time . . . does 'not result in surprise or unfair prejudice' to the [opposing party]" (quoting *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003))).[12]

Defendants also contend that "the sanctions at the heart of Plaintiff's motion" have "been fully addressed" because they "have been paid in full," and the delay in payment is attributable to Attorney O'Neil.  ECF No. 155, PageID.222526.  With respect to the first assertion, Plaintiff's counsel asserts that "[o]nly a very small part of her time expended in this unspooling disaster was allowed to be itemized as sanctions" by the Magistrate Judge.  ECF No. 159, PageID.2552.  Moreover, Defendants offer no legal support for the proposition that their eventual compliance should absolve them from the fact that it took them eight months to pay the sanction

---

[12] The Court acknowledges that the Sixth Circuit developed this rule in the context of waiver of affirmative defenses; although distinct from the situation at bar, the Court finds same logic applies.

award underlying this Motion.[13]   Indeed, in *Harmon* the plaintiff served his late

supplemental discovery after the district court had granted the defendant's motion

for dismissal under Rules 37 and 41(b) "in the hopes that the court [would]

reconsider its order." 110 F.3d at 366.   The Sixth Circuit nevertheless upheld the

dismissal.   *Id.* at 368.   In so doing, the Sixth Circuit noted that the plaintiff's

"explanation, even were it to be fully credited, is not capable of establishing that the

conduct which prompted the district court to dismiss his complaint was excusable."

*Id.* at 369.   Likewise, the Sixth Circuit has regularly upheld dismissals under Rule

37(b) in the face of a plaintiff's partial compliance with discovery requests.   *See*

*Norris*, 734 F. App'x at 956; *ECIMOS*, 736 F. App'x at 582; *Barron*, 613 F. App'x

at 485.   As such, the weight of authority indicates that Defendants' late payment of

the sanction award is insufficient to insulate them from further sanctions.

Defendants' attempts to blame their delayed payment on Attorney O'Neil are

similarly unavailing.   As discussed in greater detail in Section III, Subsection B, Part

---

[13] In his March 16, 2021 Opinion and Order, Magistrate Judge Patti ordered
Defendant Wayne County to reimburse Plaintiff's law firm $4,830 and file proof of
service of the payment by April 2, 2021.   ECF No. 96, PageID.948.   Nevertheless,
Defendants did not pay the award until November 19, 2021.   ECF No. 137,
PageID.1473.   Even assuming Defendant Wayne County first learned of the sanction
from Attorney O'Neil on October 1, 2021, when he discussed it with Melton,
General Counsel for the Wayne County Sheriff's Office, ECF No. 144-1,
PageID.2029, Defendants do not explain the additional delay in compliance after the
expense was seemingly approved by Soumaya Harb, the Director of Administration
for the Wayne County Sheriff's Office, on October 4, 2021, *id.* at PageID.2031–32.

3, Subpart iii, as well as Part 5 *infra*, Attorney O'Neil is far from the only person on the Defense team to have erred during the course of this litigation, or with respect to this particular delayed sanction payment.  Indeed, the record contains evidence that at least two Wayne County Sheriff's Office executives (David Melton and Soumaya Harb, the General Counsel and Director of Administration, respectively) were aware of the sanction award at least as early as  early October 2021.  ECF No. 144-1, PageID.2029, 2031–32.  These individuals are thus also at fault, and Defendants cannot dispute that they are part of the "client."

Accordingly, Objection 1B is overruled.

### iii.    Objection 1C: Melton's emails

Next, Defendants contend that the Report and Recommendation misrepresents the email correspondence between Attorney O'Neil and Melton.  ECF No. 155, PageID.2227.  Although Defendants raise several arguments with respect to each citation, their objections generally amount to an assertion that the cited emails do not demonstrate that Defendant Wayne County was on notice that Attorney O'Neil was mismanaging discovery.  *See id.* at 2229–32.

As a preliminary matter, the Court addresses the context in which the Magistrate Judge cited the emails.  In their supplemental brief in response to the December 13, 2021 show cause hearing, Defendants cited *Stone v. City of Detroit*, No. 05-74236, 2009 WL 10715838 (E.D. Mich. Feb. 6, 2009) for the proposition

32

that Attorney O'Neil was like the municipal defendant in that case because he "was the individual with the information . . . [and] was the individual that kept everyone in the dark."  ECF No. 145, PageID.2043.

Magistrate Judge Patti rejected this argument, noting that in *Stone*, the delinquent counsel represented both the municipal defendant and several individual defendants employed by the municipality.  No. 05-74236, 2009 WL 10715838, at *13 (E.D. Mich. Feb. 6, 2009).  While the *Stone* Court found that sanctioning the municipal defendant for its discovery violations with default as to liability was proper, *id.* at *14, it found that sanctions were not warranted against the individual defendants because they had "substantially complied with their discovery obligations" and "the lion share of the discovery sought by [the] [p]laintiff [was] in the possession and control of the" municipal defendant, *id.* at *13.  Relying on the emails at issue, Magistrate Judge Patti contrasted *Stone* with the case at bar.  ECF No. 154, PageID.2184–86.

The Court agrees that the cited emails demonstrate that Attorney O'Neil's situation was distinct from that of the municipal defendant in *Stone*.  Indeed, as Defendants point out, the June 3, 2020, June 12, 2020, October 9, 2020, January 28, 2021 emails demonstrate that the "lion share of the discovery" was in the possession and control of the Wayne County Sheriff's Office, hence why the emails show

33

Attorney O'Neil seeking information and documents from Melton, who coordinated their procurement.  ECF No. 155, PageID.2227–32; ECF No. 144-1.

To the extent that Magistrate Judge Patti also found the emails "refut[e] the notion that [Attorney] O'Neil acted negligently while everyone else was in the blind," ECF No. 154, PageID.2186 (quoting ECF No. 146, PageID.2070), the Court also agrees.[14]  On January 21, 2021, Attorney O'Neil emailed Melton with the subject line "Burks – lingering discovery issues," discussing a "long email from Plaintiff's counsel listing a number of items that she [wa]s still looking for."  ECF No. 144-1, PageID.1982.  Attorney O'Neil then responded to this email on January 28, 2021 stating that Plaintiff had "filed a motion for sanctions against [him] on these issues."  *Id*.  Defendants attempt to recast the January 28, 2021 email as not clearly demonstrating Melton's knowledge that Attorney O'Neil was not producing responsive documents.  ECF No. 155, PageID.2230.  However, this both ignores the

---

[14] The Court acknowledges that Melton stated during the December 13, 2021 show cause hearing that "there was never any cause for concern" due to his relationship with Attorney O'Neil and his respect for him.  ECF No. 156, PageID.2339.  However, the Court finds this statement unpersuasive given that it is preceded by Melton stating that "the conversation [Melton and Attorney O'Neil] had indicated that he had been having some ongoing concerns with the Court . . . [and] apparently it got to the point where the Court issued sanctions."  *Id*.  Likewise, Melton went on to say, "It was concerning that $4,000 or $4,800 was being requested, but it was something that, at that point I left it as that."  *Id*.  These statements indicate Melton was aware of a problem, but chose to disregard it, thinking it was either not that serious or would be worked out on its own.

34

context in which that email was sent and the circumstances in which a motion for sanctions can be filed, with which this Court knows Defense counsel and Melton, as attorneys themselves, are familiar.   The same is true regarding Defendants' assertions about Attorney O'Neil's October 1, 2021 email about "Burks expenses," including "$4830 for discovery sanctions." *See id.* at PageID.2232.

It is particularly noteworthy that of all the people employed by Defendant Wayne County to whom Attorney O'Neil could have communicated the motion for sanctions and sanctions award, he told another attorney.   Regardless, of whether Melton was aware of "the extent of the misconduct," ECF No. 155, PageID.2232, he was aware there was an issue as early as January 2021.   Moreover, as an attorney, Melton should be aware that the Sixth Circuit has maintained that sufficiently egregious discovery misconduct can justify dismissal or default judgement as the *first and only* sanction. *Harmon*, 110 F.3d at 368.   He, and Defendants, assumed a level of risk by not following up with O'Neil when he first learned of the discovery issues. *See Stooksbury*, 528 F. App'x at 554 (rejecting the defendants' argument that "they were unaware of the[ir] [attorney's] discovery failures and [the] [p]laintiff's renewed motion for default judgment" because "clients are generally liable for the acts and omissions of their counsel" and the defendants did not "display[] reasonable diligence in attempting to discover the status of [their] case" (citations and quotation marks omitted)).

35

Accordingly, Objection 1C is overruled.

### iv.   Objection 1D: analogizing to *Stanley*

Next, Defendants object to the Magistrate Judge analogizing to *Stanley v. Wayne Cnty.*, No. 4:18-CV-12185, 2021 WL 2660103 (E.D. Mich. May 6, 2021), *report and recommendation adopted*, No. CV 18-12185, 2021 WL 2646199 (E.D. Mich. June 28, 2021).   ECF No. 155, PageID.2233.   They argue that *Stanley* is inapposite because "*Stanley* involved a complete abandonment of the case by Attorney O'Neil" as compared to the instant case where he "extensive[ly] participat[ed] . . . during discovery," there were "substantial discovery productions," and Wayne County Jail has also participated.  *Id.*

Magistrate Judge Patti cited *Stanley* in support of his finding that Attorney O'Neil's status as in-house counsel "has little effect upon the Court's Rule 37(b)(2)(A)(vi) analysis."  ECF No. 154, PageID.2182.  Specifically, the Report and Recommendation states that the Magistrate Judge "recently reached the same conclusion as to sanctions in another case involving Wayne County and Attorney Paul O'Neil," which was ultimately adopted by Judge Parker, "despite clear indication of attorney fault."  *Id.* at PageID.2183.

Defendants' characterization of *Stanley* as "complete abandonment" is correct.  In that case, "[o]ther than . . . providing some basic cursory documents[,] . . . no discovery ha[d] ever been produced."  *Stanley*, 2021 WL 2660103, at *3

36

(cleaned up).  The *Stanley* defendants likewise failed to answer the amended complaint, resulting in a Clerk's entry of default; failed to defend the case for over two and a half years; disregarded multiple court orders compelling production and compliance with discovery; and ignored fourteen letters from the plaintiff's counsel requesting compliance with discovery.  *Id.* at \*2, \*4.   However, just because misconduct in that case was more egregious than the misconduct in this matter does not mean that *Stanley* cannot still be instructive.  Nor does it mean that Defendants' actions in this case are without fault.  As the Court found in Section III, Subsection B, Part 3, Subpart i, there is a "clear record of delay or contumacious conduct." *Hogan*, 2020 WL 4208235, at \*1 (quoting *Carpenter*, 723 F.3d at 704).  Thus, even if the Magistrate Judge erred by analogizing the instant case to *Stanley*—and the Court does not necessarily find that the Magistrate Judge so erred—the Court still finds that the first *Harmon* factor weighs in favor of default.

Accordingly, Objection 1D is overruled.

### v.    Objections 1E: liability of individual defendants

Defendants' also object to Defendants Washington,[15] Williams, Bell, Seals, and Lee (hereinafter the "Individual Defendants") being held liable for Attorney

---

[15] Defendants listed Defendant Napoleon in their Objections, ECF No. 155, PageID.2234; however, as stated in footnote 1 *supra*, former Wayne County Sheriff Benny Napoleon passed away and was succeeded, and substituted in this case for, Raphael Washington.

O'Neil's or Defendant Wayne County's discovery misconduct and contend that imputing liability to them contravenes *Stone*, 2009 WL 10715838.  ECF No. 155, PageID.2234.

As discussed in Section III, Subsection B, Part 3, Subpart iii *supra*, the *Stone* Court sanctioned the municipal defendant with default as to liability but did not sanction the individual defendants, despite them being represented by the same attorney.  Specifically, the magistrate judge determined that even though they had previously been subject to an order compelling discovery, the individual defendants had "substantially complied with their discovery obligations" by the time the motion at issue was filed.  *Stone*, 2009 WL 10715838, at *1 n.1, *13.  More importantly, the magistrate judge found "there [was no] showing that any of the[] individual [d]efendants were directly or indirectly responsible for the major discovery failings of the" municipal defendant.  *Id.* at *13.  Therefore, the magistrate judge concluded "it would not be fair to hold the individual [d]efendants liable for material they [were] unable to produce and questions they [were] unable to fully answer."  *Id*.

To the extent Defendants assert that Magistrate Judge Patti erred in applying *Stone*, it is not clear that the Report and Recommendation addresses *Stone*'s implicit holding that defendants should only be sanctioned where they had custody or control over the delinquent discovery.  *See* ECF No. 154, PageID.2184–87.  However, *Stone* is an unpublished report and recommendation that, while objected to, was never

accepted and adopted, or rejected, by the district court judge.  *See Jackson v. City of Detroit*, No. 05-cv-74236-DPH-SDP (E.D. Mich.).  As such, in addition to not being binding precedent, its persuasive value is relatively weak, and Magistrate Judge Patti did not need to conform to it.

Nevertheless, it is not clear the instant Report and Recommendation, in fact, contradicts *Stone*. Here, the Individual Defendants were more involved in the discovery process than the individual defendants in *Stone*.  Several of Plaintiff's interrogatories and requests to produce targeted information about the Individual Defendants, which was presumably in their custody and control.  *See, e.g.*, ECF No. 33-2, PageID.175, 176–77, 179, 182–83, 188.   Additionally, the duces tecum subpoena notices for Defendants Williams and Bell requested that they "bring any item responsive to written discovery in their custody or control not previously produced in this matter."  ECF No. 136-9, PageID.1454, 1456.  These depositions occurred in March and April 2021, respectively, *id.*, during the midst of Plaintiff's difficulties in obtaining discovery.

Moreover, there is evidence that Defendant Washington was involved in the discovery process.  Indeed, when Melton asked several people within the Wayne County Sheriff's Office to help him retrieve the information responsive to Plaintiff's discovery requests, he assigned several requests for production to Defendant

Washington.   ECF No. 144-1, PageID.1888–89.   Washington, in turn, delegated

retrieval of some of these items to a subordinate.  *Id*.

Regardless, the Court need not determine the extent to which each of the

Individual Defendants participated in the discovery misconduct.  As discussed in

Section III, Subsection B, Part 5 *infra*, the Sixth Circuit

> has never held that a district court is without power to dismiss a
> complaint, as the first and only sanction, solely on the basis of the
> plaintiff's counsel's neglect.  Indeed, any such rule would conflict with
> the plain language of Fed. R. Civ. P. 37(b)(2) and the Supreme Court's
> decision in *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962).

*Bradbury v. Twp. of Plymouth*, 107 F.3d 870, *4 (6th Cir. 1997) (table opinion).

Accordingly, Objection 1E is overruled.

### vi.   Objection 1F: submitting transcript

Next, Defendants object to the Magistrate Judge's criticism that they did not

file transcripts or provide citations to relevant emails in support of their argument

that Attorney O'Neil is to blame for their discovery misconduct.  ECF No. 155,

PageID.2235.   The Court acknowledges that Defendants were in a strange

procedural posture, albeit one of their own making, that did not permit them to

provide the Magistrate Judge with transcripts or record citations in support of their

argument.  Regardless, as stated in Section III, Subsection B, Part 2, the Court has

considered the transcript from the December 13, 2021 show cause hearing as well

as Melton's emails and all other evidence in the record.  Accordingly, Objection 1F is sustained.

### 4.  Objections 1G and 2: prejudice

Defendants also contend that the Magistrate Judge erred by finding Plaintiff was prejudiced because he has already been compensated for the additional time Plaintiff's counsel spent addressing the delayed discovery.  ECF No. 155, PageID.2236.  Defendants argue that *Carpenter*, 723 F.3d "suggests that the harsh sanction of default is not justified where there were not repeated failures of counsel to attend hearings."  *Id.* at PageID.2237.  They further assert that the Report and Recommendation does not identify any prejudice Plaintiff incurred.[16]  *Id.* at PageID.2238–39.

First, the Court concludes that Defendants' citation to *Carpenter* is misplaced. Indeed, *Carpenter* suggests the opposite result:

> The conduct at issue here includes (i) repeated failures to abide by local rules requiring filings to be double-spaced and submitted electronically; (ii) delays in responding to Defendants' motion to strike; (iii) failure, within a five-and-a-half-month period, either to file a motion for default judgment after Defendants did not timely file a responsive pleading or otherwise to move the litigation forward through stipulating to a second

---

[16] Defendants also assert that the Magistrate Judge "improperly" (1) relied on the late disclosed discovery and (2) failed to credit Defendants' efforts at compliance in appearing for depositions, producing over 1,200 pages of discovery, and attending hearings.  ECF No. 155, PageID.2238.  The Court disagrees for the reasons discussed in Section III, Subsection B, Part 3, Subparts ii and i, respectively.

amended complaint. These first two oversights—repeated noncompliance with local filing rules and a delayed response to Defendants' motion to strike—are less egregious than the types of conduct that we have held reflect a clear record of contumacious conduct warranting dismissal. Unlike other cases where we have affirmed sua sponte dismissals, Carpenter and his counsel have not failed to appear at scheduled pretrial conferences, *see Rogers v. City of Warren*, 302 Fed. Appx. 371, 377 (6th Cir.2008); *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir.1986), *nor have they failed to respond to discovery requests*, *see Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir.1997), *nor have they "acted in contempt of a court order compelling cooperation with such requests*." *Mulbah*, 261 F.3d at 592.

*Carpenter*, 723 F.3d at 705 (emphasis added). The *Carpenter* Court went on to distinguish between failing to timely file a specific document and repeated failures to appear and note that the former was insufficiently egregious to warrant dismissal. *Id.* Here, Defendants have both "failed to respond to discovery requests" and "acted in contempt of a court order compelling cooperation with such requests," several times throughout the course of this litigation. *Id.* Notably, Defendants have also failed to timely file several documents, including responses to various motions.

Second, there is ample evidence of prejudice. A party is prejudiced by the opposing party's discovery misconduct where it is "unable to secure the information requested" and "required to waste time, money, and effort in pursuit of cooperation which [the delinquent party] was legally obligated to provide." *Harmon*, 110 F.3d at 368 (6th Cir. 1997). The record is replete with examples of the additional time

42

and resources Plaintiff has been forced to expend to obtain any discovery, or payment of monetary sanctions, in this matter. Moreover, with respect to the IA file in particular, Plaintiff's supplemental brief regarding the November 5, 2021 show cause hearing states, "The [IA] file was provided as part of a stipulated agreement with [Plaintiff's counsel] to resolve a motion then pending for expedited discovery. Plaintiff agreed to change his legal position in reliance on this production." ECF No. 136, PageID.1380. In other words, Plaintiff agreed to withdraw his pending motion for discovery based on Defendants' representations that they would provide him with the complete IA file, including any criminal investigations. Plaintiff's change in legal position in reliance on Defendants' representations, which have been shown false, is a quintessential example of prejudice.

In addition, Plaintiff's counsel was unable to prepare Plaintiff or his parents, all of whom were featured in the recordings associated with the IA file, for the questions they might be asked about their conversations around the time of the rape. *See* ECF No. 159-18, PageID.2816 (asking Plaintiff's mother if Plaintiff discussed the rape during their phone calls); ECF No. 159-19, PageID.2819 (asking Plaintiff's father what Plaintiff told him about the rape over the phone); ECF No. 159-20, PageID.2824–25 (asking Plaintiff if he remembers telling his mother and girlfriend about the rape over the phone). Without a remedy, these statements could serve as impeachment material during trial. *See* Fed. R. Evid. 612(a) (adverse party's use of

43

a writing to refresh recollection).  The Court also notes that the late disclosure included a recording of a third-party witness who has since passed away and thus serves as the only evidence of that witness' statement.  ECF No. 136, PageID.1382.

Lastly, Plaintiff did not receive the recordings at issue until five or six days *after discovery finally closed*—after it was too late for him to re-subpoena any deponents he had previously called, issue subpoenas to new witnesses, or serve additional discovery requests without Defendants' agreement.  During those depositions that did occur, several deponents testified to the thoroughness of the IA investigation, and Plaintiff's counsel, who did not yet have access to all aspects of the file, was unable impeach their characterization, which she disputes.  ECF No. 159, PageID.2556.  Compounding this issue, Defendants' experts are expected to testify regarding IA investigations and criminal investigations of sexual assault in the Wayne County Jail.  ECF No. 159-17, PageID.2808–09, 2811.  Notably, the *Stone* Court found that the plaintiff there "was specifically prejudiced" by, *inter alia*, the defendants' failure to produce "complete and reliable information" concerning the "thoroughness and conclusions" of their investigations into prior in-custody death cases.  2009 WL 10715838, at *12.  How much more prejudiced was Plaintiff here where Defendants failed to produce discovery related to the investigation into *his* rape?

Accordingly, Objections 1G and 2 are overruled.

44

### 5. Objections 2A and 2B: culpability of Defendants and other Wayne County employees

Next, Defendants' object to the Magistrate Judge's findings that Defendants, Corporation Counsel James Heath, the paralegal assigned to this matter, and subpoenaed Wayne County witnesses are culpable of discovery misconduct, which they attribute entirely to Attorney O'Neil.  ECF No. 155, PageID.2240–41.

The Court explained the Individual Defendants' participation in the discovery process in Section III, Subsection B, Part 3, Subsection v *supra*.  Likewise, the Court explained Defendant Wayne County's culpability, through Melton and Harb, in Section III, Subsection B, Part 3, Subsections ii and iii *supra*.  The Court does note, however, that Heath does not seem to have been involved in the discovery process beyond his name appearing in his capacity as Wayne County Corporation Counsel in Attorney O'Neil's signature block in Defendants' responses to Plaintiff's discovery requests.  ECF No. 136-4, PageID.1428; ECF No. 136-5, PageID.1441.  This is not sufficient to infer Heath's participation, and the Magistrate Judge erred to the extent he implied that it did.  *See United States v. Fox*, 520 F. Supp. 3d 904, 909 (W.D. Mich. 2021) ("The name of the United States Attorney of the Western District of Michigan is found on the signature block of the motion to be sure, but it is signed by an AUSA, and there is no indication in the motion that the United States Attorney has personally provided the required authorization.").

Nevertheless, in addition to Melton and Harb, the Court concludes that several other Wayne County employees are culpable of discovery misconduct. Most notably, Attorney Flanagan, Attorney O'Neil's predecessor also expressly violated her discovery obligations. It was Attorney Flanagan who signed the July 25, 2019 stipulated order agreeing to produce "[a] true and correct copy of the full internal affairs investigation relative to Plaintiff with all attachments." ECF No. 17, PageID.66. On August 2, 2019, Attorney Flanagan produced what Defendants purported to be the entire "internal affairs file . . . with only [the] medical [information] of a different inmate redacted" and a missing Lieutenant's report from the afternoon shift on August 23, 2016 that Defendants were "searching diligently for." ECF No. 136-2, PageID.1388. In doing so, Attorney Flanagan is the one who first violated the July 25, 2019 stipulated order, well before Attorney O'Neil joined the matter.[17]

Moreover, Attorney Flanagan copied her paralegal, Joseph Mondelli, on the letter enclosing the production and represented that he would remain on the matter "for the duration." ECF No. 136-2, PageID.1388. In their Objections, Defendants

---

[17] Notably, Defendants make no mention of Attorney Flanagan in their Objections. Instead, they contend that they should be credited for stipulating to productions before discovery formally commenced. *See, e.g.*, ECF No. 155, PageID.2238. However, this argument is unpersuasive given that (1) Plaintiff agreed to withdraw his motion in return for the production and (2) parties are still expected to abide by orders to which they stipulate.

46

do not assert that Mondelli is not presently assigned to the matter, let alone that he was not still assigned to the matter while the recordings associated with the IA file were not produced between August 2019 and July 2021.  Attorney Flanagan's letter designates Mondelli as someone who was involved in the discovery process, generally, and discovery as it related to IA file, in particular.  Without any evidence in the record to the contrary, the Court must deduce that Mondelli is also culpable in the nonproduction of the recordings.

Additionally, Director James Davis, the head of the Prison Rape Elimination unit testified that he was involved in searching for documents responsive to at least one of Plaintiff's discovery requests.  ECF No. 136-7, PageID.1447–48.  Melton also assigned Davis to search for documents responsive several requests during the June 2020 search for discovery.  ECF No. 144-1, PageID.1882–83.  Moreover, Plaintiff's counsel deposed Deputy Chief Dennis Ramel, the custodian of records, in both June and July 2021.  ECF No. 136-9, PageID.1463, 1469.  As the record custodian, Ramel arguably had custody and/or control over all the discovery relating to the Wayne County Sherriff's Office and Jail and their employees.  Like the other deponents, Both Davis' and Ramel's duces tecum subpoenas requested that they "bring any item responsive to written discovery in [their] custody or control not previously produced in this matter."  *Id.* at PageID.1462–63, 1468–69.    However, neither individual brought additional discovery to his deposition.

47

Even if these other Wayne County employees were not also at fault, it would not be sufficient to save Defendants in these circumstances.  As the Sixth Circuit has explained:

> With respect to the claimed error in the district court's denial of the Rule 60(b) motion, the Ross Defendants place blame on their attorneys, alleging that they were unaware of the discovery failures and Plaintiff's renewed motion for default judgment.  Even assuming this to be true, which is belied by the record, the Ross Defendants' claim does not justify setting aside the default judgment.  Although this Court is reluctant to uphold a default judgment on account of an errant attorney, *Buck v. United States Dep't of Agric.,* 960 F.2d 603, 608–09 (6th Cir.1992), clients are generally liable for the acts and omissions of their counsel, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.,* 507 U.S. 380, 396–97, 113 S. Ct. 1489, 123 L.Ed.2d 74 (1993).  The discovery abuses here did not amount to "mistake, inadvertence, surprise, or excusable neglect" so as to justify relief under Rule 60(b)(1).  *See Capitol Indem. Corp. v. Jellinick,* 75 Fed. Appx. 999, 1001–03 (6th Cir.2003).  And while the district court may exercise its discretion to grant relief under Rule 60(b)(6) where, despite the counsel's inexcusable conduct, the moving party "displayed reasonable diligence in attempting to discover the status of his case," *Fuller v. Quire,* 916 F.2d 358, 361 (6th Cir. 1990), there is no evidence that such was the case here.  What we have here is a "clear record of delay," nearly one and a half years to be precise, and findings of "contumacious conduct" such that the entry of default judgment was warranted in this case. *Buck,* 960 F.2d at 608.

*Stooksbury*, 528 F. App'x at 554.

Here, as in *Stooksbury*, there is not evidence that Defendants "displayed reasonable diligence in attempting to discover the status of [the] case." *Id.* (quoting

*Fuller*, 916 F.2d at 361).  Indeed, as discussed in Section III, Subsection B, Part 3, Subpart iii *supra*, Melton, General Counsel for the Wayne County Sheriff, received notice that things were going awry with the discovery in this matter at least as early as January 2021.  Nevertheless, Defendants did not subject Attorney O'Neil to greater scrutiny or otherwise intervene until ordered to do so by the Magistrate Judge ten months later.

Contrary to Defendants assertions, the Sixth Circuit "has never held that a district court is without power to" impose default judgment on a party as a discovery sanction "solely on the basis of the plaintiff's counsel's neglect." *Bradbury*, 107 F.3d at *4.  "Indeed, any such rule would conflict with the plain language of Fed. R. Civ. P. 37(b)(2) and the Supreme Court's decision in *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962)."  *Id.*  Courts in this Circuit regularly hold litigants liable for their attorney's misconduct in various situations.  *See, e.g.*, *Stooksbury*, 528 F. App'x at 554; *Barron*, 613 F. App'x at 487 ("But we have held that 'a determination of excusable neglect does not turn solely on whether the *client* has done all that he reasonably could do to ensure compliance with a deadline; the performance of the client's *attorney* must also be taken into account.'" (emphasis in original) (quoting *Reyes*, 307 F.3d at 456)); *Yeschick v. Mineta*, 675 F.3d 622, 631 (6th Cir. 2012) (affirming that plaintiff's failure to respond to summary judgment motion because

49

his counsel did not receive notifications of filings and failed to monitor the electronic docket did not constitute excusable neglect warranting relief from judgment).

Accordingly, Objections 2A and 2B are overruled.

### 6.  Objection 3: warnings about sanctions

Next, Defendants object to the Magistrate Judge's finding that they were sufficiently warned of the potential for default.    ECF No. 155, PageID.2241. Specifically, they "do not object to the finding that warnings were issued," but they instead dispute that the "warnings were properly conveyed to the Defendants" since "Attorney O'Neil kept the County out of the loop.  *Id*.

As a preliminary manner, a court is not, in fact, required to warn a party before imposing the most severe discovery sanctions where there is a record of bad faith or contumacious conduct.  *See Harmon*, 110 F.3d at 367 (6th Cir. 1997) (noting that a district court may impose dismissal as a discovery sanction or a sanction for failure to prosecute "where a plaintiff has not been given notice that dismissal is contemplated" if "the derelict party has engaged in bad faith or contumacious conduct" (citation and quotation marks omitted)); *see also Reyes*, 307 F.3d at 457 ("[The Sixth Circuit] has never held that the district court is without power to dismiss a complaint as the first and only sanction solely on the basis of counsel's conduct." (citing *Harmon*, 110 F.3d at 368)).

As the Court found in Section III, Subsection B, Part 3, Subpart i, there is a "clear record of delay or contumacious conduct" in this matter. *Hogan*, 2020 WL 4208235, at *1 (quoting *Carpenter*, 723 F.3d at 704). Nevertheless, Defendants had actual notice of ongoing discovery violations. As discussed in Section III, Subsection B, Part 3, Subpart iii *supra*, the Court concludes that Melton, General Counsel for the Wayne County Sheriff's Office, was sufficiently notified. The Court particularly notes that Plaintiff's first moved for default judgment on January 27, 2021. ECF No. 83, PageID.743. The very next day, Attorney O'Neil replied to an email he had previously sent to Melton with the subject line "Burks – lingering discovery issues," saying that Plaintiff had "filed a motion for sanctions against [him] on these issues." ECF No. 144-1, PageID.1982. Then, on May 25, 2021, O'Neil informed Melton that "[t]he Magistrate Judge has ruled against [Defendants] upon every turn," and "Judge Drain has not yet reversed any of Judge Patti's decisions." *Id.* at PageID.2010.

The Sixth Circuit has upheld a magistrate judge's finding that an order denying a motion to dismiss for discovery violations and imposing intermediate sanctions short of dismissal put the plaintiff "on clear notice that continued abuses could cause that result." *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013). The same must be true where the defendant is the delinquent

party, and the court has denied earlier motions for default judgment and imposed lesser sanctions instead.

Accordingly, Objection 3 is overruled.

### 7. Objection 4: consideration of less drastic sanctions

Next, Defendants object to the Magistrate Judge's imposition of default without considering lesser sanctions because "all corrective issues have been addressed and new counsel obtained." ECF No. 155, PageID.2242.

The Court concludes that lesser sanctions have been considered. In fact, lesser sanctions have already been attempted: both Magistrate Judges awarded monetary sanctions, ECF Nos. 37, 96, and Magistrate Judge Patti already deemed certain facts established, ECF No. 96. However, these sanctions seemed to have had little, if any, effect. It took Defendants five months to pay the initial sanction award, prompting two additional court orders requiring them to do so. *See* ECF No. 47, PageID.333; ECF No. 60, PageID.463. Moreover, Defendants fail to acknowledge that they only paid the most recent monetary sanction *during the pendency of the instant Renewed Motion for Default Judgment*, about eight months after the sanction was initially ordered. *See* ECF No. 96, PageID.948; ECF No. 127.

Notably, all of Defendants' remedial efforts—paying costs and fees to Plaintiff's counsel, producing the late discovery, and obtaining new counsel—were Court-ordered. This is not a case where Defendants "displayed reasonable diligence

52

in attempting to discover the status of [their] case." *Stooksbury*, 528 F. App'x at 554 (quoting *Fuller*, 916 F.2d at 361).  Indeed, based on the record before the Court, it does not appear there would have been any improvement if Magistrate Judge Patti had not mailed and emailed his November 8, 2021 Order to Show Cause directly to several Wayne County executives and ordered them to review the November 5, 2021 hearing transcript.  ECF No. 129, PageID.1265–66.  Furthermore, the only reason Defendants had time to pay the sanctions before the Report and Recommendation issued is because Magistrate Judge Patti graciously afforded them several rounds of hearings and supplemental briefing.  For the reasons discussed in Section III, Subsection B, Part 3, Subpart ii *supra*, Defendants' court-ordered, late attempts at compliance do not excuse their prior conduct in this matter.

Accordingly, Objection 4 is overruled.

### 8.  Objection 5: reliance on Grange

Finally, Defendants assert that *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372 (6th Cir. 2008) does not support imposing the sanction of default because the conduct in *Grange* was more egregious.  ECF No. 155, PageID.2242–43.  The Court rejects this argument for several reasons already articulated in this Opinion and Order.  First, for the reasons discussed in Section III, Subsection B, Part 3, Subpart i *supra*, the Court concludes the record contains sufficient evidence of delay and contumacious conduct to justify imposition of default, even if the conduct in *Grange*

53

is more egregious than the conduct present here.  Second, for the reasons discussed in Section III, Subsection B, Part 3, Subpart ii, as well as Part 7, *supra*, the Court finds that Defendants late attempts at compliance are insufficient to avoid penalty. Lastly, for the reasons discussed in Section III, Subsection B, Part 3, Subparts iii and v, as well as Part 5, *supra*, the Court rejects Defendants' assertions that they were completely unaware of the discovery misconduct occurring in this matter, even if they did not know the full extent.

Accordingly, Objection 5 is overruled.

## IV.    CONCLUSION

Thus, the Court concludes that "lesser sanctions would [] be[] inadequate to prevent further prejudice to [Plaintiff] and further insult to the integrity of pretrial procedures." *Bradbury*, 107 F.3d at *6.  Accordingly, for the reasons articulated *supra*, **IT IS HEREBY ORDERED** that Defendant's Objections to the Magistrate Judge's Report and Recommendation to Grant in Part Plaintiff's Motion for Default Judgment (ECF No. 155) are **SUSTAINED IN PART AND OVERRULED IN PART**.  Specifically, Objection 1F is **SUSTAINED**; all other objections are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Court **ACCEPTS** and **ADOPTS IN PART** Magistrate Judge Patti's June 7, 2022 Report and Recommendation (ECF

No. 154) as this Court's findings of fact and conclusions of law, subject to the qualifications contained in this Opinion and Order.

**IT IS FURTHER ORDERED** that Plaintiff's *Ex Parte* Motion to Enlarge Page Limit (ECF No. 158) is **GRANTED**. Plaintiff's Response to Defendants' Objections (ECF No. 159) is accepted as filed.

**IT IS FURTHER ORDERED** that Plaintiff's Renewed Motion for Default Judgment (ECF No. 123) is **GRANTED IN PART**. Specifically, the Court will enter default as to liability against all Defendants pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi). This matter will proceed to trial on the issue of damages only.[18]

## V.   SCHEDULING ORDER

**IT IS FURTHER ORDERED** that the following dates shall govern this matter:

Facilitation/Mediation:[19]        June 2023

---

[18] The Report and Recommendation recommends sanctioning Defendants with default as to liability and only holding a trial on "causation and damages." ECF No. 154, PageID.2211. However, causation is necessarily part of liability in the context of a lawsuit under 42 U.S.C. § 1983. *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 692 (1978) ("Congress did not intend section 1983 liability to attach where such causation [by each party] was absent."). Thus, because the Court is sanctioning Defendants with default as to liability, the trial will proceed on the issue of damages only.

[19] The parties shall submit the case to facilitation/mediation. A proposed stipulated order referring the case to facilitation/mediation shall be submitted to the Court via the utilities function on CM/ECF no later than April 5, 2023. The proposed order

Motions *in Limine* cutoff:          July 10, 2023

Joint Final Pretrial Order:          July 10, 2023

Final Pretrial Conference:          July 31, 2023 at 2:30 p.m.

Trial date:                         August 22, 2023 at 9:00 a.m.

I.    **TIME**.  Computation of time under this order and under any notice of any scheduling order or notice in this case shall be in conformity and accordance with Federal Rule of Civil Procedure 6(a).

II.   **MOTIONS**.  The Court requires strict compliance with Local Rule 7.1(a), which requires moving parties to seek concurrence before filing a motion.  All briefs must comply with Local Rules 5.1 and 7.1, and must contain citation to appropriate authorities within the text of the brief, and citations must conform to the latest edition of The Bluebook: A Uniform System of Citation published by the Harvard Law Review.  Courtesy copies of motions and briefs must be provided to chambers and in accordance with Local Rule 5.1.1(c).  Courtesy copies must be properly bound.  The Court will not accept documents loosely secured with a rubber band or binder clip.

III.  **FINAL PRETRIAL CONFERENCE AND FINAL PRETRIAL ORDER**. The Final Pretrial Order must be submitted through the document utilities function of the CM/ECF on or before the date set by this order.  All witnesses must be listed in the Final Pretrial Order.  Witnesses may only be added to the Final Pretrial Order by stipulation of the parties and leave of court.   Counsel shall follow the procedure outlined below to prepare for the final pretrial conference and the Final Pretrial Order:

---

must identify the facilitator/mediator and the date set for facilitation/mediation. Facilitation/mediation must occur no later than June 30, 2023.

A. Counsel for all parties are directed to confer in person (face to face) at their earliest convenience in order to (1) reach any possible stipulations narrowing the issues of law and fact, (2) deal with non-stipulated issues in the manner stated in this paragraph, and (3) exchange documents that will be offered in evidence at trial. It shall be the duty of counsel for plaintiff to initiate that meeting and the duty of opposing counsel to respond to plaintiff's counsel and to offer full cooperation and assistance. If, after reasonable effort, any party cannot obtain the cooperation of opposing counsel, it shall be his or her duty to communicate with the court. The Final Pretrial Order shall fulfill the parties' disclosure obligations under Federal Rule of Civil Procedure 26(a)(3), unless the Judge orders otherwise. All objections specified in Rule 26(a)(3) shall be made in this order. <u>Counsel for plaintiff</u> shall prepare a draft Final Pretrial Order and submit it to opposing counsel, after which all counsel will jointly submit the proposed order. The Final Pretrial Order should provide for the signature of the court, which, when signed, will become an Order of the court. The proposed Final Pretrial Order <u>shall strictly comply with the requirements of Local Rule 16.2</u>.

   **\* Pursuant to Local Rule 16.2(b)(9), any objection based on foundation or authenticity will be deemed waived if not raised before trial.**

B. The following persons shall personally attend the final pretrial conference:

   1) Trial counsel for each party;
   2) All parties who are natural persons;
   3) A representative on behalf of any other party;
   4) A representative of any insurance carrier that has undertaken the prosecution or defense of the case and has contractually reserved to itself the ability to settle the action.

Representatives must possess full authority to engage in settlement discussions and to agree upon a full and final settlement. "Personal attendance" by each party is not satisfied by (1) trial counsel professing to have full authority on behalf of the client or (2) a party being available by telephone.

VII. <u>At least ONE WEEK</u> prior to the beginning of trial, counsel shall furnish to the court the following:

    A. In jury cases, any requests for <u>VOIR DIRE</u>, proposed <u>JOINT JURY INSTRUCTIONS</u> and the <u>VERDICT FORM</u>. The parties shall file with the court a single set of proposed, stipulated jury instructions and a single, proposed verdict form. The instructions are to be typewritten and double spaced and shall contain references to authority (e.g., "Devitt and Blackmar, Section 11.08"). Additionally, each party shall separately file any additional proposed instructions to which any other party objects. The parties must make a concerted, good faith effort to narrow the areas of dispute and to discuss each instruction with a view to reaching an agreement as to an acceptable form.

    B. In a non-jury case, proposed <u>FINDINGS OF FACT</u> and <u>CONCLUSIONS OF LAW.</u>

    C. A statement of claims or defenses, no longer than two pages, suitable to be read to the jury during opening instructions.

IV. **EXHIBITS**. Counsel are required to mark all proposed exhibits in advance of trial. Plaintiff's exhibits shall use numbers and Defendant's exhibits shall use letters. A consecutive number and lettering system should be used by each party. The parties are required to exchange marked exhibits three days prior to the start of trial. Counsel are also required to maintain a record of all admitted exhibits during trial. See attached exhibit form. Counsel for each party must keep custody of that party's admitted exhibits during trial. A party

who objects to this provision must file a written objection prior to jury selection.

V.   **JUDGE'S COPIES.**   A paper copy of electronically filed motions, briefs, attachments, responses, replies, proposed Final Pretrial Order, and proposed Joint Jury Instructions (with disc) MUST be delivered directly to the Judge's chambers and labeled Judge's copy.

VI.   The Court will not allow counsel not admitted in the Eastern District to practice upon a special motion.   All inquiries regarding admission to this district must be directed to the Clerk's office at (313) 234-5005.

VII.   **LOCAL COUNSEL**.  An attorney admitted to practice in the Eastern District of Michigan who appears as attorney of record and is not an active member of the State Bar of Michigan must specify local counsel with an office in this district.  Local counsel must enter an appearance and otherwise comply with Local Rule 83.20(f).

**IT IS SO ORDERED**.

/s/ Gershwin Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  March 23, 2023

59

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 23, 2023, by electronic and/or ordinary mail.
<u>/s/ Teresa McGovern</u>
Case Manager