# EXHIBIT A

**Johnathan Burks**
**06/03/2021**

```
1                UNITED STATES DISTRICT COURT
2                EASTERN DISTRICT OF MICHIGAN
3                      SOUTHERN DIVISION
4
5    JOHNATHAN L. BURKS,
6              Plaintiff,         No. 2:19-cv-10027
7         vs.                     HON. GERSHWIN A. DRAIN
8    BENNY NAPOLEON, ET AL.,      MAGISTRATE ANTHONY P. PATTI
9              Defendants,
10   _____/
11   PAGE 1 TO 92
12
13        The Deposition of JOHNATHAN BURKS,
14        Taken at 737 Woodlawn Ave,
15        Jackson, Michigan,
16        Commencing at 10:00 a.m.,
17        Thursday, June 3, 2021,
18        Before Melinda R. Womack, CSR3611.
19
20
21
22
23
24
25
```



Johnathan Burks
06/03/2021
Pages 2..5

## Page 2

```
 1   APPEARANCES:
 2
 3     MR. PAUL T. O'NEILL   P57293
 4     Assistant Corporation Counsel
 5     500 Griswold, 30th Floor
 6     Detroit, Michigan  48226
 7     (313)224-5402
 8     poneill@waynecounty.com
 9     Appearing on behalf of the Plaintiff.
10
11     MS. SARAH S. PRESCOTT  P70510
12     Salvatore Prescott & Porter
13     105 E Main Street
14     Northville, Michigan 48167-1619
15     (248)679-8711
16     prescott@spplawyers.com
17     Appearing on behalf of the Defendants.
```

## Page 3

```
 1              TABLE OF CONTENTS
 2   WITNESS                                    Page
 3
 4   JOHNATHAN BURKS
 5
 6   Examination by Mr. O'Neill                   4
 7   Examination by Ms. Prescott                 80
 8
 9
10
11             INDEX TO EXHIBITS
                 (None Marked)
12
13   EXHIBIT                                   Marked
```

## Page 4

1  Jackson, Michigan
2  Thursday, June 3, 2021
3  About 10:00 a.m.
4              JOHNATHAN BURKS,
5    having first been duly sworn, was examined and testified
6    on his oath as follows:
7  EXAMINATION BY MR. O'NEILL:
8  Q. Mr. Burks, my name is Paul O'Neill.  Today's the
9     date and time set for your deposition in the case
10    that you brought against Wayne County Sheriff
11    Benny Napoleon, Corporal Lee, Corporal Seals,
12    Officer Williams, and other Defendants in this
13    case.  Do you remember filing this case back in
14    January of 2019, correct?
15 A. Yes.
16 Q. All right.  Why don't you tell me first of all why
17    you're suing Wayne County and the individual
18    officers involved.
19 A. Because I was housed in protective custody unit
20    and I was sexually assaulted by another inmate.
21 Q. Okay.  What do you believe the Defendants did
22    wrong in this case?
23 A. Well, first off, I would say when I asked to speak
24    with a supervisor, I was ignored multiple times.
25    I feel like they didn't protect me.

## Page 5

1  Q. Okay.  Anything else?
2  A. No.
3  Q. Okay.  Why were you in protective custody in the
4     Wayne County Jail in August of 2016?
5         MS. PRESCOTT:  Give me a little bit of
6     time so I can object.  I just wanted to object on
7     the foundation.
8         MR. O'NEILL:  Okay.
9         MS. PRESCOTT:  Now you can answer.
10 Q. (By Mr. O'Neill, continuing)  Why were you in
11    protective custody?
12 A. Because my case, my profile, and they didn't want
13    me to be hurt.  The County didn't want me to be
14    hurt.
15 Q. Why were you or who told you that the County
16    didn't want you to be hurt?
17 A. I guess it was just the way that they came and
18    removed me from general population to segregation.
19 Q. When did that occur?
20 A. I don't remember the exact date.
21 Q. Okay.  Did anybody speak to you at that time when
22    they moved you from general population to
23    segregation?
24         MS. PRESCOTT:  That's a pretty vague
25    question.  Just give me a minute.  It's vague.



**Page 6**

1  There's no timeline of did anyone talk to you
2  when, but go ahead.
3  Q. (By Mr. O'Neill, continuing) Can you answer that?
4  A. No. No one talked to me.
5  Q. Okay. So how did you come to an understanding
6     that Wayne County wanted to protect you and move
7     you into protective custody?
8  A. Because my case was high profile and it was all
9     over the news.
10 Q. Is that just your understanding? I'm just trying
11    to -- I'm not trying to trick you Mr. Burks. I'm
12    trying to figure out is that just your
13    understanding that when a case is high profile,
14    you could be moved into protective custody, or is
15    there anything any other reason for your
16    understanding?
17 A. I just -- that's my understanding that because of
18    my case was on the news, they put me there.
19 Q. Okay. So what was your case about?
20 A. It was about a three-year-old being murdered.
21 Q. All right. What were you charged with?
22 A. I was charged with first degree premeditated
23    murder, first degree felony murder, two assault
24    with intent to murders, discharging a firearm into
25    a building causing death, and home invasion one,

**Page 7**

1  and felony firearm.
2  Q. All right. Did all those charges go to a jury?
3  A. Yes, sir.
4  Q. And what did the jury find?
5  A. They found me not guilty of everything except for
6     the felony firearm and the home invasion one.
7  Q. All right. You believe you were guilty of the
8     home invasion one and felony firearm?
9  A. No, sir, I do not.
10 Q. Why is that?
11 A. Because I didn't have a gun and I did not enter
12    the home.
13 Q. All right. But you were in a car by the home?
14 A. Yes, sir, I was.
15 Q. When the crime occurred, correct?
16 A. Yes.
17 Q. Did you know before that -- strike that. Did you
18    do any driving of that vehicle any time during
19    that night?
20 A. Yes. I was actually forced to drive away from the
21    scene.
22 Q. Who forced you?
23 A. My Co-Defendant. He's deceased now.
24 Q. What's his name?
25 A. Paul Kendall.

**Page 8**

1  Q. Is he any relation to you?
2  A. He's my cousin.
3  Q. All right. And there is another Defendant,
4     Reginald Street?
5  A. Yes, sir.
6  Q. Is he a relation to you?
7  A. No, sir, he's not.
8  Q. All right. Does he serve in the same jail or
9     prison as you right now?
10 A. No, sir.
11 Q. Have you had any conversation with Mr. Street
12    between, between now and about when the jury found
13    you guilty?
14 A. No, sir, I haven't.
15 Q. Okay. So you believe that sometimes juries can
16    get things wrong in criminal cases, correct?
17 A. Yes, sir, I do.
18 Q. In the incident that you complain of against Wayne
19    County and the individual officers, they -- you
20    alleged -- you make various allegations, correct?
21 A. I did.
22 Q. Okay. And you hand typed the original Complaint
23    that was filed in this case, correct?
24 A. Yes, sir.
25         MS. PRESCOTT: Johnathan, you got to

**Page 9**

1  slow down.
2         THE WITNESS: Yes, ma'am.
3         MS. PRESCOTT: You got to listen so
4     that I can interrupt. So I think the question was
5     vague. I think you said hand typed, Paul. I'm
6     not sure if that's what you meant. But maybe I
7     heard it wrong.
8  Q. (By Mr. O'Neill, continuing) Yeah, I said hand
9     typed. Is that correct, Mr. Burks?
10 A. Yes.
11        MS. PRESCOTT: Then I object to the, to
12    the -- go ahead.
13 Q. (By Mr. O'Neill, continuing) All right. So you
14    sat at a typewriter and typed out the Complaint.
15 A. I couldn't hear you.
16 Q. You sat at a typewriter and typed out the
17    Complaint that you filed against the Defendants in
18    this case.
19        MS. PRESCOTT: You're asking if he sat
20    at the typewriter to type this lawsuit or the
21    original allegations? That's the vague.
22 Q. (By Mr. O'Neill, continuing) Do you understand
23    the question, Mr. Burks?
24 A. You're going in and out, so I didn't hear you.
25 Q. I'll be happy to repeat. Technology causes a

