# EXHIBIT B

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Johnathan Burks, through his attorneys, Salvatore Prescott & Porter, brings this First Amended Complaint for failure to protect and render aid in violation of the Eighth Amendment of the U.S. Constitution, and failure to train and supervise resulting in the deprivation of his constitutional rights.

## PRELIMINARY STATEMENT

1. The United States Constitution, through its Eighth and Fourteenth Amendments, requires prison officials to protect prisoners from violence at the hands of other prisoners.

2. Neither the violent nature of prison, nor the severity of the crime for which a prisoner is convicted, absolves officials of their constitutional obligation to protect prisoners within their charge.

3. As observed by the U.S. Supreme Court, "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial, criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course … [G]ratuitously allowing the beating or

EXHIBIT: PROPOSED JURY SUBMISSION

rape of one prisoner by another serves no 'legitimate penological objectiv[e].'"

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted).

4. In 2016, Wayne County Jail officials incarcerated a known violent sexual predator in the protective custody unit in which Plaintiff had been held alone~~, because of his association with the high-profile death of a young child~~.

5. Despite Plaintiff's pleas for protection and report of a direct threat, he was left in the unit with the predator.

6. Within hours, the predator forcibly raped Plaintiff~~, saying it was "punishment" for the child's death.~~

7. Plaintiff now brings this action for failure to protect and render aid in violation of the Eighth Amendment.

## PARTIES, JURISDICTION AND VENUE

8. Plaintiff restates and incorporates here all previously stated allegations.

9. At all relevant times, Plaintiff was incarcerated in the Wayne County Jail.

10. Defendant Benny ~~Napoleon~~Washington was, at all relevant times, employed by the County of Wayne as the Wayne County Sheriff and supervisory official in charge of the Wayne County Sheriff's Department and Jail.

11. At all relevant times Defendant ~~Napoleon~~Washington was charged with the supervision of the Jail detention staff and was a policymaker with regard to the policies, customs and practices governing the Wayne County Jail's operations.

2

EXHIBIT: PROPOSED JURY SUBMISSION

Defendant ~~Napoleon~~Washington had ultimate control over the placement/housing management decisions of individuals in the Wayne County Jail.

12. Defendant Paul Seals was, at all relevant times, employed by the Wayne County Sheriff's Department and/or Wayne County to work at the Wayne County Jail.

13. Defendant Judy Bell was, at all relevant times, employed by Wayne County and/or the Wayne County Sheriff's Department to work at the Wayne County Jail.

14. Defendant Keith Williams was, at all relevant times, employed by Wayne County and/or the Wayne County Sheriff's Department to work at the Wayne County Jail.

15. Defendant Damone Lee was, at all relevant times, employed by Wayne County and/or the Wayne County Sheriff's Department to work at the Wayne County Jail.

16. Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

17. At all relevant times each Defendant acted under color of law.

18. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction as this action arises under the United States Constitution and laws.

19. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this district as this is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

### GENERAL ALLEGATIONS

20. Plaintiff restates and incorporates here all previously stated allegations.

21. Defendant Wayne County has a policy, custom and/or practice of incarcerating Wayne County Jail inmates in inhumane conditions of confinement that heighten inmates' risk of harm and subjects inmates to unconstitutional conditions that violate federal regulations designed to eliminate the risk and occurrence of prison rape and sexual abuse.

22. Defendant Wayne County has a policy, custom and/or practice of operating the Wayne County Jail with insufficient, inexperienced, and upon information and belief, insufficiently trained and supervised staff members to ensure prisoners receive constitutionally-mandated protection from harm, including sexual abuse.

23. Wayne County's policies, customs and/or practices are evidenced, and reflect a lack of training and supervision, by a pattern of unconstitutional practices that amplify prisoners' exposure to sexual abuse and confinement in sexually hostile conditions, including incarcerating prisoners who are vulnerable to sexual or other assault with violent sexual predators; upon information and belief,

4

EXHIBIT: PROPOSED JURY SUBMISSION

conducting unconstitutional and degrading strip searches of female inmates in view of male corrections officers who make degrading, humiliating and sexually exploitive comments; upon information and belief, forcibly exposing females to male deputies; and, upon information and belief, requiring inmates to expose their genitals while using the bathroom or washing by failing to provide basic privacy protections.

24. On August 24, 2016, Plaintiff was incarcerated in the Wayne County Jail awaiting sentencing.

25. ~~-~~Plaintiff was housed in the Jail's protective custody unit.

26. Upon information and belief, due to ~~the high-profile nature of Plaintiff's case,~~ known threats to Plaintiff, and/or information provided to Jail officers regarding prisoners incarcerated in the protective housing unit, Defendants were all aware that ~~Plaintiff's conviction was associated with the death of a child that had outraged the public and inflamed~~ other prisoners' desired to harm Plaintiff.

27. Upon information and belief, ~~due to the high profile of Plaintiff's case,~~ it is believed that Defendant ~~Napoleon~~Washington, directly and/or by and through his reporting deputies, was informed or aware of Plaintiff's conditions, location and terms of confinement.

28. For a while, Plaintiff was housed in the protective custody unit by himself.

5

29. Then, on August 24, 2016, during the afternoon, a Jail officer, identified upon information and belief based on records obtained from Wayne County as Defendant Judy Bell, informed Plaintiff that he would be "receiving company" (or words to that effect).

30. In so doing, Defendant Bell was indicating that they were going to house another prisoner with Plaintiff.

31. Plaintiff expressed his fear of being around other inmates given known or suspected threats of harm that existed.

32. Standard care in the correctional setting requires separating potential targets or victims from potential aggressors in housing.

33. Plaintiff asked Bell if he could speak to her supervisor about his fears of "locking with," or being housed with, another inmate, due to the heightened risk of assault such would create.

34. Bell refused Plaintiff's request and left.

35. In doing so, Bell consciously disregarded a known risk of harm to Plaintiff that is routinely recognized and managed in correctional settings.

36. Bell also consciously failed to take any reasonable measures to protect Plaintiff from assault, despite her knowledge.

37. Later that day, an inmate named Martin Solomon was moved into the protective custody unit with Plaintiff.

EXHIBIT: PROPOSED JURY SUBMISSION

38. Upon information and belief, based on records obtained from Wayne County, Defendant Keith Williams escorted Solomon into the unit with Plaintiff on or around 4:30 p.m.

39. Solomon, who stands 6 feet 2 inches tall and weighed, on information and belief, approximately 185 pounds (nearly a half foot taller and 40 pounds heavier than Plaintiff), was a known violent sexual predator.

40. Solomon was precisely the type of aggressive, violent prisoner that Plaintiff was supposed to be in protective custody to protect against.

41. Because of Solomon's criminal history, which includes violent crime and sexual assault, Jail officers, including Defendants, would have been aware of Solomon's predatory nature.

42. ~~Solomon also entered the unit with knowledge about Plaintiff's conviction.~~

43. Given Defendants' knowledge of Plaintiff's particular vulnerability and Solomon's violent and predatory nature, Defendants were aware that incarcerating Solomon with Plaintiff heightened Plaintiff's ~~already substantial~~ risk of being assaulted and created a specific threat of harm to Plaintiff, for which no Defendant took reasonable precaution to prevent.

EXHIBIT: PROPOSED JURY SUBMISSION

44. No safety, security or other legitimate justification existed to justify the incarceration of Solomon with Plaintiff. a violent sexual offender with a prisoner at a heightened risk for serious assault.

45. Solomon's history and Plaintiff's particular vulnerability also created a known substantial risk of imminent harm of sexual abuse.

46. Per 28 C.F.R § 115.62, a regulation of the Prison Rape Elimination Act (PREA), Defendants were required to take immediate action to protect Plaintiff upon knowledge that he faced a substantial risk of imminent harm of sex abuse, yet they did not.

47. Instead, Solomon was intentionally put into Plaintiff's unit., apparently to punish Plaintiff because of his wrongful association with a child's death.

48. Solomon's assignment to Plaintiff's protective custody unit also reflects Defendant NapoleonWashington's failure to train and supervise staff to ensure the proper protection of prisoners identified to be at a high risk of assault.

49. Upon seeing Plaintiff, Solomon threatened Plaintiff, stating, "You that baby killer.I got something for you," or words to that effect.

50. Later, the same day, when a Jail officer, identified as Defendant Keith Williams upon information and belief based on records obtained from Wayne County, made rounds, Plaintiff reported Solomon's threat to Defendant Williams and requested to be moved.

51.  Defendant Williams told Plaintiff to, "Be a man," and walked on.

52. In responding to Plaintiff in this manner, Defendant Williams consciously disregarded a known and specific threat of serious harm to Plaintiff.

53.  Defendant Williams also consciously failed to take any reasonable measures to prevent Solomon from assaulting Plaintiff.

54. Shortly thereafter, Solomon entered Plaintiff's cell, threatened his life, put a blanket over the bars, and raped Plaintiff.

55.  ~~Solomon told Plaintiff that the assault was "punishment" for killing the little girl.~~

56. Solomon was later convicted criminally for attacking Plaintiff in this way.

57. At the time of the assault, Defendants Bell and Williams were assigned to, and were immediately responsible for, Floor Security in the unit in which Plaintiff was assaulted.

58. Upon information and belief, Officers Bell and Williams made rounds of the unit in which Plaintiff was assaulted, around the time Plaintiff was assaulted.

59. There is also a camera outside of Plaintiff's cell that, upon information and belief, had a view of Plaintiff's cell.

60. The entry of Solomon into Plaintiff's cell, struggle and/or blanket covering Plaintiff's cell bars during the assault would have been visible, upon

information and belief, to persons monitoring the location visually or through the camera footage.

61. The entry of Solomon into Plaintiff's cell, struggle and/or blanket covering Plaintiff's cell during the assault would alert Jail staff, including officers viewing the camera footage and conducting rounds, that misconduct was occurring.

62. Inmates, including Plaintiff, in the protective custody unit have a known heightened risk of being assaulted by other prisoners.

63. Due to that heightened risk, officers responsible for the supervision, safety and security of inmates in the protective custody unit have, or should have, a heightened awareness of and response to any activity that would indicate, cause, facilitate or conceal an assault against a protective custody inmate.

64. This is all the more so after a specific instance of reported threat.

65. Draping on bars plainly intended to conceal conduct within a cell is activity that would indicate, facilitate and conceal an actual or potential assault against a protective custody inmate.

66. Upon information and belief, Officers Bell and Williams would have seen such indicia of the ongoing assault in the course of them performing their duties as officers to secure the unit's floor, supervise the unit's inmates, and protect the inmates from assault.

67. After the assault, Plaintiff attempted to tell an officer, identified upon information and belief after diligent effort to obtain identifying information and review of records provided by Wayne County, Paul Seals or Damone Lee, to report the assault, obtain protection and get medical assistance.

68. The officer saw and acknowledged Plaintiff's effort to report, but kept walking, and he rendered no assistance.

69. Per PREA Regulation 28 C.F.R. § 115.61, the officer had a duty to immediately report any suspicion, knowledge or information of a sexual assault.

70. Per PREA Regulation 28 C.F.R. § 115.82, Plaintiff, as a sexual abuse victim, was entitled to receive unimpeded access to emergency medical treatment and crisis intervention services.

71. Plaintiff was denied aid, assistance and treatment because the officer ignored Plaintiff's attempted report.

72. Plaintiff again reported the rape at the first opportunity on the following day.

73. Plaintiff followed the directions provide to him by Jail officers regarding reporting the sexual assault.

74. As a result of Defendants' conduct, Plaintiff suffered serious physical injury (i.e., violent sexual battery), as well as severe emotional and psychological trauma.

75. It was also determined during the subsequent investigation that, while there was a functioning digital video recorder (DVR) that would have recorded the assault, the DVR had been partially unplugged, preventing any recording of the assault and making camera footage unavailable for review.

76. The individual Defendants' wrongful acts and omissions reflect Defendants Wayne County's and ~~Napoleon~~Washington's failure to equip the Jail's officers with the specific tools and training to handle the incarceration and protection of a prisoner with a high risk of assault.

77. The individual Defendants' wrongful acts and omissions reflect Defendant Wayne County's and ~~Napoleon~~Washington's failure to equip the Jail's officers with the specific tools and training to handle the incarceration and protection of a prisoner with a high risk of assault in the same unit with a prisoner with violent and sexually abusive proclivities.

78. The incarceration of prisoners with a high risk of assault, both alone and with predatory offenders, is a recurring circumstance within a correctional setting.

79. Rape and assault of a vulnerable, at-risk prisoner is a highly predictable consequence of Defendants' failures to properly train and equip their officers to deal with those circumstances.

**COUNT I**
**EIGHTH AMENDMENT**
**Cruel and Unusual Punishment: Failure to Protect and Render Aid**

## 42 U.S.C. § 1983
### (*against all Defendants*)
_____

80. Plaintiff restates and incorporates here all previously stated allegations.

81. Plaintiff had a clearly established constitutional right to be protected from the violence of other prisoners.

82. There was a strong likelihood that Plaintiff would be seriously harmed as a result of an assault due to ~~the high-profile nature of his conviction and, his association with the death of a child,~~ his incarceration in a unit with a known violent, sexual predator who was much larger than he was.

83. Defendants were aware of the strong likelihood that Plaintiff would be seriously harmed as the result of an assault.

84. The risk of harm to Plaintiff was obvious, including especially after he reported a threat and his fear of imminent attack.

85. Defendants were aware of the strong likelihood that Solomon would seriously harm another prisoner, including Plaintiff.

86. Defendants had facts showing a strong likelihood that Plaintiff would be seriously harmed but refused to confirm whether those facts were true.

87. Defendants consciously failed to take reasonable measures to prevent the assault despite the seriousness of the potential harm to Plaintiff.

88. It would have been easy for Defendants to take corrective action including, supervising the individuals involved directly, confining Solomon to his cell or transferring Plaintiff or Solomon to a separate location.

89. Defendants had no legitimate reason related to safety or security for failing to take corrective actions.

90. Plaintiff would not have been harmed if Defendants had taken reasonable measures.

91. Upon being violently and forcibly sexually assaulted, Plaintiff had a constitutional right to immediate aid, assistance and care, including medical treatment.

92. The need for someone, including Plaintiff, to obtain assistance, aid and medical treatment after suffering a violent, forcible rape is so obvious that even a person who is not a doctor would recognize that it requires treatment.

93. Due to Plaintiff's effort to report the assault, Defendant Seals, or in the alternative Lee, knew Plaintiff had a serious medical need or strongly suspected facts showing a strong likelihood that Plaintiff had a serious medical need but refused to confirm whether those facts were true.

94. Defendant Seals, or in the alternative Defendant Lee, failed to render such aid, assistance and care despite acknowledging Plaintiff's effort to report the sexual assault to him.

14

95. Defendants acted at all times under color of law and with deliberate indifference and willful disregard for Plaintiff's rights and safety.

96.    As a direct and proximate cause of the Defendants' constitutional violations, Plaintiff suffered, among other things, sexual battery, as well as ongoing emotional and psychological trauma, mental anguish, pain and suffering, humiliation, degradation and emotional injury.

**COUNT II**
**DEPRIVATION OF RIGHT UNDER THE EIGHTH AMENDMENT**
**Failure to Train and Supervise**
**42 U.S.C. § 1983**
(*against Defendants County of Wayne and* ~~Napoleon~~Washington)
_____

97. Plaintiff restates and incorporates here all previously stated allegations.

98.    At    all    relevant    times,    Defendants    Wayne    County    and ~~Napoleon~~Washington, acting through their supervisory officers and officials, by Wayne County's policies, customs and/or practices of failing to properly train and supervise its deputies and other staff allowed, facilitated, and/or encouraged the individual Defendants to violate Plaintiff's constitutional right to protection and right to aid, assistance and treatment, in violation of the Eighth Amendment of the U.S. Constitution.

99.    Defendants    Wayne    County    and    ~~Napoleon~~Washington    adopted, implemented, reinforced and/or promulgated the aforementioned policies, customs

and/or practices, all of which were a proximate cause and/or moving force in the violations of Plaintiff's constitutional rights.

100.     Defendants Wayne County and ~~Napoleon~~Washington implemented and encouraged the aforementioned polices, customs and/or practices with deliberate indifference to the rights of inmates incarcerated in the Wayne County Jail, including with regard to Plaintiff's right to be protected from harm and to be rendered aid, assistance and treatment in accordance with the Eighth Amendment to the United States Constitution.

101.     At all relevant times, Defendants Wayne County and ~~Napoleon~~Washington, acting through the supervisory officials and/or officers, by their own policies, customs and/or practices of systematically failing to enforce rules and regulations pertaining to the custody and detention of inmates, including Plaintiff, in violation of all standards of decency and minimum requirements under the law and the Constitution, deprived Plaintiff of his rights to be protected from harm and to be rendered aid, assistance and treatment in accordance with the Eighth Amendment of the United States Constitution.

102.     Defendants Wayne County and ~~Napoleon~~Washington are liable for their intentional, deliberate, willful, wanton, reckless and/or grossly negligent acts and omissions, pursuant to the aforementioned customs, policies and/or practices, which resulted in an unlawful deprivation of Plaintiff's constitutional rights.

103.     As a direct and proximate cause of the Defendants' constitutional violations, Plaintiff suffered, among other things, sexual battery, as well as ongoing emotional and psychological trauma, mental anguish, pain and suffering, humiliation, degradation and other emotional injury.

**COUNT III**
**FOURTEENTH AMENDMENT**
**Shocks the Conscience Deprivation of Substantive Rights**
**42 U.S.C. § 1983**
**(***against all Defendants***)**

104. Plaintiff restates and incorporates here all previously stated allegations.

105. Plaintiff had the right under the Fourteenth Amendment to be free from conduct that shocks the conscience, offending the canons of decency and fairness that express time-tested notions of justice.

106. In violation of this right, Defendants engaged in grossly indecent abuse of Plaintiff, by intentionally placing him in a position where it was foreseeable that he would be raped, and he was in fact raped.

107. In violation of this right, Defendants engaged in grossly indecent abuse of Plaintiff, by intentionally delaying and failing to provide requested aid and medical care following a forcible rape.

108. Defendants promulgated and/or carried out the acts and omissions, official policies, orders and directives described above intentionally and

17

deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges and sensibilities of Plaintiffs.

109. As a direct and foreseeable consequence of these policy decisions, failure to train and failure to intervene when a custom of constitutional violations was occurring, Plaintiff was deprived of his rights under the Fourteenth Amendment to the United States Constitution, and thereby suffered losses identified above.

**COUNT IV**
**FOURTEENTH AMENDMENT**
**GROSS NEGLIGENCE**
*(Against all Defendants other than County of Wayne)*

110.    Plaintiff restates and incorporates here all previously stated allegations.

111.    Defendants had a duty to screen, monitor/supervise and house Plaintiff and all others in his vicinity at all times in a manner that would not ureasonably expose Plaintiff to sexual assault.

112.    Instead, Defendants failed to carry out reasonably necessary and obvious procedures common in correctional practice to keep potential sexual aggressors apart from potentially vulnerable inmates, to supervise and monitor them, to respond immediately to threats, and to maintain in visual contact with prisoners directly or through video monitoring on routine rounds.

EXHIBIT: PROPOSED JURY SUBMISSION

113.    Defendants failed in these regards and these failures were grossly negligent.

114.    Defendants further failed to render immediate aid and medical attention following a rape.

115.    This failure likewise was grossly negligent, as it would be reasonable in a correctional setting and especially in a protective unit to detect a sexual assault had occurred with even minimal care exhibited.

116.    Defendants failed to exercise ordinary care in meeting their duties to Plaintiff.

117.    The above conduct was so reckless that it demonstrated a substantial lack of concern for Plaintiffs' physical and emotional wellbeing.

118.    As a direct and proximate result of Defendants' actions, Plaintiff suffered humiliation, mortification, overwhelming stress, imprisonment, sexual assault and attendant pain and physical harm, sleeplessness, anxiety, and other damages.

## RELIEF REQUESTED

Plaintiff requests all relief that is available to him in law and in equity, including:

a.  compensatory damages;

EXHIBIT: PROPOSED JURY SUBMISSION

b. non-compensatory damages;

c. punitive damages;

d. attorney fees, costs and interest;

e. an order setting conditions to ensure Defendants' future compliance with the U.S. Constitution's requirements regarding the protection of inmates from harm within the Wayne County Jail;

f. All other equitable relief that may be available.

Respectfully submitted,
SALVATORE PRESCOTT & PORTER, PLLC

/s/Sarah Prescott

Sarah S. Prescott (P70510)
Nakisha N. Chaney (P65066)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplawyers.com
chaney@spplawyers.com

~~Dated: August 16, 2019~~

**~~JURY DEMAND~~**

~~Plaintiff demands a trial by jury in this matter.~~

~~/s/Sarah Prescott~~

EXHIBIT: PROPOSED JURY SUBMISSION

~~Sarah S. Prescott (P70510)~~
~~Nakisha N. Chaney (P65066)~~
~~Attorneys for Plaintiff~~
~~105 East Main Street~~
~~Northville, MI 48167~~
~~(248) 679-8711~~
~~prescott@spplawyers.com~~
~~chaney@spplawyers.com~~

~~Dated: August 16, 2019~~