# EXHIBIT A

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3263 Filed 07/10/23 Page 2 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

2021 WL 4929781
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK
COURT RULES BEFORE CITING.

UNPUBLISHED
Court of Appeals of Michigan.

PEOPLE of the State of
Michigan, Plaintiff-Appellee,
v.
Martin SOLOMON, Defendant-Appellant.

No. 349015
|
October 21, 2021

Wayne Circuit Court, LC No. 17-004867-01-FC

Before: Murray, C.J., and Jansen and Riordan, JJ.

**Opinion**

Per Curiam.

 *1  Defendant appeals as of right his jury trial convictions of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c), two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(c), and one count of kidnapping, MCL 750.349. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 45 to 80 years for each CSC-I conviction, parolable life imprisonment for kidnapping, and 12 to 30 years for each CSC-II conviction, to be served concurrently. We affirm.

I. BACKGROUND

Defendant was convicted of sexually assaulting JB inside JB's jail cell at the Wayne County Jail on August 24, 2016. The two men were both inmates. According to witnesses, defendant is much larger in stature than JB. JB testified that he was inside his jail cell, discussing his criminal case with defendant, who was outside the cell. The unit had not been locked down for the night, so inmates were free to move about the common areas, and JB's cell door was unsecured. According to JB, he went to get something inside his cell and, when he turned around, defendant had entered the cell, blocked the doorway to prevent JB from leaving, forced JB onto the bed, threatened him, and then sexually assaulted him. JB admitted that he ejaculated during the sexual assault, and said that defendant ejaculated on JB's thigh.

JB reported the sexual assault to a jail deputy the next day. After JB reported the assault, defendant accused JB of having sexually assaulted him. Both men were interviewed, and both were examined the next day by a sexual assault nurse examiner (SANE). Samples were collected from both men and submitted for forensic testing and DNA analysis. DNA consistent with each man's DNA profile was found in samples collected from the other. At trial, the court permitted the prosecution to introduce evidence of defendant's prior sexual assaults against other persons under MCL 768.27b.

Defendant testified at trial and denied sexually assaulting JB. He claimed that he was smoking a cigarette with JB inside JB's cell when JB suddenly punched him in the head, knocking him unconscious. When he awoke, JB was sexually assaulting him while threatening him with sharp pencils. Defendant claimed that, during the assault, JB made defendant masturbate, which caused defendant to ejaculate, and semen ended up on JB's leg.

On appeal, defendant raises issues in both a brief filed by appointed appellate counsel and an additional pro se brief filed under Supreme Court Administrative Order No. 2004-6, Standard 4 ("Standard 4 brief").

II. RIGHT TO SELF-REPRESENTATION

Defendant first argues that the trial court erred by denying his requests to represent himself at trial. We disagree.

When reviewing a trial court's decision regarding a defendant's waiver of the Sixth Amendment right to counsel, this Court reviews the record de novo, but reviews the trial court's factual findings and any determinations of credibility for clear error. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). A trial court's findings of fact are clearly erroneous if this Court, after reviewing the entire record, is left with the definite and firm conviction that the trial court made a mistake. *People v Carlson*, 332 Mich App 663, 666; 958 NW2d 278 (2020).

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3264 Filed 07/10/23 Page 3 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

**\*2** In *People v Anderson*, 398 Mich 361, 366; 247 NW2d 857 (1976), our Supreme Court recognized that a defendant's right to represent himself at trial is protected by both the Michigan and United States Constitutions, but nonetheless held that a defendant does not have "an absolute right to proceed to trial without counsel." Several distinct requirements must be met before a trial court can grant a defendant's request to dismiss trial counsel and allow the defendant to proceed *in propria persona*. *Id.* at 367-368. Initially, a defendant's request for self-representation must be "unequivocal." *Id.* at 367. If a request is unequivocal, the trial court must then decide whether the defendant "is asserting his right knowingly, intelligently and voluntarily." *Id.* at 368. Finally, the trial court must decide whether allowing the defendant to represent himself "will ... disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id.* at 368. As observed in *Anderson*, it is "imperative that criminal adjudications must proceed in an orderly fashion and result in trustworthy guilt determinations." *Id.* For a defendant's waiver of the right to counsel to be valid, the trial court must "substantially comply" with the *Anderson* factors and MCR 6.005. *People v Willing*, 267 Mich App 208, 220; 704 NW2d 472 (2005).

Consistent with the requirements of *Anderson*, MCR 6.005(D)(1) outlines the procedure a trial court must follow to determine whether a defendant has made a valid waiver of the right to counsel. MCR 6.005(D)(1) provides:

> **Appointment or Waiver of a Lawyer**. If the court determines that the defendant is financially unable to retain a lawyer, it must promptly appoint a lawyer and promptly notify the lawyer of the appointment. The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Defendant's primary challenge to the trial court's decision is that the court failed to engage in a "methodical assessment" of determining whether allowing him to represent himself would be a wise decision upon consideration of the *Anderson* factors and MCR 6.005(D). While the trial court did not expressly state on the record whether it found defendant's request to be unequivocal, or whether any waiver of counsel was knowing, intelligent, and voluntary, it is apparent that the court found it unnecessary to decide these matters because, even if they were resolved in defendant's favor, self-representation would not be appropriate because it would unduly disrupt the court proceedings. The trial court's finding that allowing defendant to represent himself would be unduly disruptive to the court proceedings is not clearly erroneous.

The record discloses that defendant had a history of argumentative and disruptive conduct. Indeed, even after the trial court ruled on defendant's request for self-representation, defendant refused to accept the trial court's decision, questioned the trial court's jurisdiction over his criminal case, threatened to report the matter to news stations, and continued to argue with the trial court after the court repeatedly urged defendant to present his request for self-representation and other concerns in a written motion. Under these circumstances, the trial court did not clearly err by finding that allowing defendant to represent himself would be disruptive, unduly inconvenient, and highly burdensome to the court's ability to try the case and administer justice. *Anderson*, 398 Mich at 368. Although the trial court did not weigh or consider the other factors set forth in MCR 6.005(D), it was not necessary to do so given its conclusion that self-representation would be highly disruptive and undermine the efficiency of the lower court proceedings. Accordingly, the court did not err by denying defendant's request for self-representation.

### III. ADMISSION OF HEARSAY EVIDENCE

**\*3** Defendant next argues that reversal is required because of the introduction of JB's hearsay statements to two nurses who examined him after the sexual assault. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant concedes that there was no objection to the challenged statements at trial, leaving this issue unpreserved. This Court reviews a defendant's unpreserved claim of evidentiary error for plain error affecting the defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). In *People v Carines*, 460 Mich

Case 2:19-cv-10027-GAD-APP  ECF No. 170-2, PageID.3265  Filed 07/10/23  Page 4 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

750, 763-764; 597 NW2d 130 (1999), our Supreme Court explained the requirements of the plain-error rule:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. [*United States v Olano*, 507 US 725, 731-734; 113 S Ct 1770; 123 L Ed 2d 508 (1993)]. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id.*, p 734. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id.* Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error " 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id.*, pp 736-737. [(Footnote omitted).]

At trial, testimony was presented regarding JB's statements to two nurses who examined him the day after the alleged sexual assault. Defendant argues that these statements were inadmissible hearsay. We disagree.

MRE 801(c) defines "[h]earsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible except as provided by the Michigan Rules of Evidence. MRE 802. Although JB's statements to the two nurses are out-of-court statements that meet the definition of hearsay, MRE 803(4) provides an exception to the general exclusion of hearsay testimony for

> [s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

"The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *People v Garland*, 286 Mich App 1, 8-9; 777 NW2d 732 (2009).

**\*4** In this case, defendant argues that JB's statements to the nurses were not admissible under MRE 803(4) because his examinations were primarily for investigative purposes, not for purposes of medical diagnosis or treatment. In *Garland*, 286 Mich App at 9, this Court rejected the defendant's claim that the victim's statements to a SANE nurse were inadmissible hearsay where the statements were necessary to the victim's medical treatment and diagnosis. In that case, after the victim visited the hospital, she was directed to a nonprofit organization that provided medical care for sexual assault survivors, and the nurse at the hospital was the first person to take a medical history from the victim and perform an examination on her. *Id.* at 9. The police investigation in the sexual assault took place after the nurse's examination, and was independent of that examination. *Id.*

In *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), this Court also rejected the defendant's argument that the victim's statements to a nurse conducting a rape-kit examination were not admissible under MRE 803(4).

> Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care. This is true irrespective of whether the declarant sustained any immediately apparent physical injury. [*Garland*, 286 Mich App at 8-10]. Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment. *Id.* at 9-10; *People v McElhaney*, 215 Mich App 269, 282-283; 545 NW2d 18 (1996). [*Mahone*, 294 Mich App at 214-215.]

Although defendant argues that the examinations by the two nurses in question, Nurse Raymond Carnill and Nurse Jessica Ojala, were investigatory in nature, his argument is principally predicated on his contention that "[b]y the time [JB] was seen by Nurses Carnill and Ojala, he had already been to Detroit Receiving Hospital for initial treatment and a rape kit." The record does not factually support this contention. Nurse Carnill testified that he examined JB at the Wayne County Jail, and then referred JB to Detroit Receiving Hospital after the examination. Nurse Ojala performed the sexual assault examination of JB in the emergency room at Detroit Receiving Hospital. She took swabs from JB and

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3266 Filed 07/10/23 Page 5 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

performed a forensic examination, commonly known as a rape kit, during her examination. Thus, the record does not factually support defendant's claim that the examinations by Nurses Carnill and Ojala were performed *after* JB had already been separately treated and undergone a rape-kit examination at Detroit Receiving Hospital.

Moreover, the testimony of Nurses Ojala and Carnill establish that the examinations were conducted for purposes of medical diagnosis and treatment. Nurse Ojala described her sexual assault forensic examination as a head-to-toe physical examination during which she determines if the victim has suffered an injury. Both Nurse Ojala and Nurse Carnill testified that they obtain a medical history from the patient during the examination, which guides their diagnosis and treatment of the patient and helps them ascertain whether the patient suffered trauma. On cross-examination, Nurse Ojala further explained that a medical history is taken from the patient during a sexual assault examination so the nurse can determine whether the individual requires additional testing, imaging, or medication. Because the testimony of Nurses Ojala and Carnill indicate that JB's statements during his examinations were reasonably necessary to assist the nurses in diagnosing and determining JB's need for medical treatment, the statements do not qualify as plain error. Moreover, because the record supports that the statements were admissible under MRE 803(4), defense counsel was not ineffective for failing to object to the statements. Counsel is not ineffective for failing to raise a meritless objection. *People v Hernandez-Zitka*, ––– Mich App ––––, ––––; ––– NW2d –––– (2021) (Docket No. 349494); slip op. at 9.

IV. PROSECUTORIAL MISCONDUCT

**\*5** Defendant next argues that the prosecutor exceeded permissible limits when cross-examining him at trial, thereby denying him a fair trial. We disagree.

To preserve an allegation of prosecutorial misconduct, a defendant must raise a contemporaneous objection and request a curative instruction. *People v Evans*, ––– Mich App ––––, ––––; ––– NW2d –––– (2020) (Docket No. 343544); slip op. at 6. Although trial counsel objected to the relevancy of some of the prosecutor's questions, he did not do so on the ground that the prosecutor's questioning of defendant constituted misconduct. Therefore, defendant's appellate claim of prosecutorial misconduct is unpreserved. This Court reviews preserved claims of prosecutorial misconduct de novo by evaluating the challenged conduct in context to determine whether the defendant was deprived of his right to a fair and impartial trial. *People v Caddell*, 332 Mich App 27, 71; 955 NW2d 488 (2020). However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a defendant's substantial rights. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). This Court will not "find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010).

Defendant argues that the prosecutor's cross-examination of him exceeded permissible limits by injecting inappropriate and prejudicial topics. Recently, in *Evans*, ––– Mich App at ––––; slip op. at 7 (quotation marks and citation omitted), this Court observed that "[v]igorous and searching cross-examination is a powerful instrument for the ascertainment of truth," particularly in undermining the credibility of a witness or exposing frailties in a witness's recitation of the pertinent events. Therefore, "it is appropriate that cross-examiners be afforded wide latitude to do their job." *Id*. This Court further explained:

> "One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury anything tending or which may tend to contradict, weaken, modify, or explain the testimony of the witness on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." [*Id*., quoting *People v Dellabonda*, 265 Mich 486, 499-500; 251 NW 594 (1933).]

However, "[a] defendant's opportunity for a fair trial can be jeopardized when the prosecutor injects issues broader than the defendant's guilt or innocence." *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007).

Defendant complains that it was improper for the prosecutor to question him about alleged sexual misconduct against other persons. As discussed later in this opinion, the trial court had previously ruled that the prosecutor could introduce evidence regarding defendant's prior sexual assaults under MCL 768.27b. Prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). "The prosecutor is entitled to attempt to introduce evidence that he legitimately believes will be accepted by the court, as long as that attempt does not prejudice the defendant." *Id.* at 660-661. In light of the trial court's prior ruling, the prosecutor had a good-

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3267 Filed 07/10/23 Page 6 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

faith basis for believing that cross-examination of defendant regarding his prior sexual misconduct was permissible. Therefore, the prosecutor's cross-examination on this subject was not improper.

**\*6** Defendant also complains that the prosecutor inappropriately questioned him about the size of his penis, and whether he and JB touched each other during their mutual masturbation, as alleged by defendant. This examination occurred in the context of questioning defendant about his version of the events. Defendant's position at trial was that it was JB, not defendant, who committed the sexual assault. Just as defense counsel was permitted to vigorously and extensively cross-examine JB about his version of the events, the prosecutor had wide latitude to cross-examine defendant regarding his version of the events through vigorous and searching cross-examination. Although the questioning involved a sensitive subject matter, and the questioning became lurid and graphic at times, it was no more so than the nature of the allegations made by both JB and defendant against each other. The prosecutor's questions regarding the sizes of defendant's and JB's penises, and whether there was any contact between the two of them when they allegedly were involved in mutual masturbation, was probative of the distance of the two men from each other during this activity, which was relevant to the veracity of defendant's explanation for how his semen landed on JB's thigh. Accordingly, we reject defendant's contention that the prosecutor engaged in misconduct by pursuing this line of questioning.

V. DEFENDANT'S STANDARD 4 BRIEF

A. ADDITIONAL CLAIMS OF PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor improperly allowed JB to present false testimony at trial. Defendant's Standard 4 brief refers to 28 "counts" of allegedly perjurious testimony by JB that defendant maintains violated his right to due process and denied him a fair trial. The record does not support this claim.

Because defendant did not object to the alleged improper testimony or otherwise raise this claim in the trial court, this issue is unpreserved. Whether a defendant's right to due process was violated by a prosecutor's presentation of false testimony is reviewed de novo. *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020). However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a defendant's substantial rights. *Brown*, 294 Mich App at 382.

It is well-established that the prosecution is not permitted to knowingly present false evidence or testimony to obtain a conviction. *Brown*, 506 Mich at 446. Thus, a prosecutor has an affirmative duty to correct false testimony when it arises. *Id.* A prosecutor's introduction of testimony known to be false, or failure to correct false testimony when it arises, violates a defendant's right to due process. *Id.* at 446-447. A prosecutor's duty to correct false testimony applies equally to testimony that goes only to the credibility of a witness. *People v Smith*, 498 Mich 466, 470, 476; 870 NW2d 299 (2015). It is the impact of the prosecution's failure to correct false testimony that is the dispositive question for a due-process analysis. *Id.* at 476. If there is a reasonable likelihood that uncorrected false testimony affected the jury's verdict, reversal is required. *Brown*, 506 Mich at 447.

In this case, defendant relies on alleged inconsistencies between JB's prior statements and prior testimony and his testimony at trial to support his claim that JB's trial testimony was false. We conclude that the record does not support defendant's myriad claims that the prosecutor introduced, or allowed to stand uncorrected, testimony by JB that was known to be false. For many of the asserted claims, JB was merely describing an event that he discussed in earlier testimony or in a prior statement, but in different terms or by adding details that were not mentioned earlier. Such testimony did not necessarily establish an actual inconsistency between JB's trial testimony and his prior testimony or statements, let alone show that JB's trial testimony was false. Moreover, to the extent that there were inconsistencies between JB's trial testimony and his prior testimony or statements, inconsistent testimony alone does not establish that trial testimony was false, or that the prosecutor knew that the testimony was false. See *People v Bass*, 317 Mich App 241, 275; 893 NW2d 140 (2016). Rather, any inconsistencies create a credibility issue for the jury to resolve. Moreover, as defendant points out, many of the alleged inconsistencies were highlighted and explored by defense counsel on cross-examination. Indeed, in many of the alleged instances, JB conceded on cross-examination at trial that some of the details mentioned in his trial testimony were not mentioned in a prior statement or in prior testimony. The mere fact that details mentioned in trial testimony were omitted in a prior statement does not establish that the trial testimony was false.

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3268 Filed 07/10/23 Page 7 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

**\*7** In any event, because the omissions were disclosed at trial, this is not an instance where allegedly false testimony stood uncorrected. Defense counsel's cross-examination made the jury aware of the alleged inconsistencies and omissions, and the jury was free to consider them when evaluating JB's credibility. We also note that many of defendant's claims involve allegedly false testimony at defendant's preliminary examination, not at trial, which clearly could not have affected the jury's verdict at trial. Having reviewed defendant's myriad claims, there is no basis for concluding that the prosecutor knowingly introduced or allowed false testimony to stand uncorrected.

Defendant also devotes a significant portion of his Standard 4 brief to arguing that transcripts of hearings on March 9, 2018, and February 1, 2019, were altered, allegedly in an effort to conceal that the prosecutor was aware that JB provided different accounts of the sexual assault during his different interviews. When a party claims that a transcript is inaccurate, the party must identify the alleged inaccuracy with specificity and provide some independent corroboration of the asserted inaccuracy, such as affidavits of witnesses, court spectators, court personnel, or attorneys, or other circumstances that support the position of the party asserting the inaccuracy. See *People v Abdella*, 200 Mich App 473, 476 & n 2; 505 NW2d 18 (1993). In this case, defendant does not specify which portions of the challenged transcripts are allegedly inaccurate, let alone provide any independent corroboration for his claim that the transcripts were altered. In sum, defendant has not provided any factual support for his claim that the prosecutor engaged in misconduct by altering transcripts.

Defendant further argues that the prosecutor suppressed material, exculpatory evidence in violation of *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). See also *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014). In support of this claim, defendant relies on Corporal Christopher Lawson's testimony that when he first interviewed defendant on August 26, 2016, it came to his attention that the interview was not recorded, so he attempted to interview defendant again on September 22, 2016. This testimony explained why a recording of defendant's first interview did not exist. Defendant has not provided any basis for concluding that Corporal Lawson's explanation was not true, or any evidence that a recording did exist and was not provided to the defense. Accordingly, there is no factual support for defendant's claim that the prosecution suppressed material evidence from defendant.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel. We disagree. Although defendant raised some of his claims in a pro se motion for a new trial, the trial court did not conduct a *Ginther*[1] hearing on the claims. Therefore, our review is limited to errors apparent from the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

In *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), our Supreme Court explained the applicable framework for reviewing a claim of ineffective assistance of counsel:

> Under *Strickland v Washington*, [466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984),] establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [(Footnotes omitted).]

**\*8** Defendant first argues that trial counsel was ineffective for not objecting to multiple instances of perjury committed by JB, Corporal Lawson, and Nurse Marie Shoulders. As discussed earlier, defendant has not demonstrated that the testimony by JB or Corporal Lawson was false. Moreover, the record discloses that defense counsel acted appropriately by questioning JB regarding inconsistencies between his trial testimony and his prior statements or testimony, thereby making the jury aware of the alleged inconsistencies so it could consider them when evaluating JB's credibility. Defendant does not explain the factual basis for his belief that Nurse Shoulders's testimony at trial was false, and therefore, he has not met his burden of establishing the factual predicate for this claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant next argues that trial counsel was ineffective by failing to make himself available for trial before MCL 768.27b was amended by 2018 PA 372, effective March 17, 2019, which enabled the prosecution to introduce evidence of defendant's prior sexual assaults under the amended statute.[2] The record reflects that trial counsel informed the trial court at a November 2, 2018 competency hearing that the earliest

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3269 Filed 07/10/23 Page 8 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

date he was available for trial was March 18, 2019, which also was a convenient date for the prosecution and the trial court. To the extent that defendant suggests that defense counsel deliberately delayed making himself available for trial before March 17, 2019, in order to allow the prosecution to introduce evidence of defendant's other sexual assaults under MCL 768.27b, as amended, he has not offered any factual support for this claim. That is, there is no evidence that defense counsel was indeed available for trial on an earlier date that was also mutually convenient for the prosecution and the trial court, or that defense counsel somehow colluded with the prosecution or the court to delay defendant's trial until after March 17, 2019. Thus, the record does not support this ineffective-assistance claim.

Defendant also contends that trial counsel was ineffective by declining to give an opening statement at trial. The record discloses that defense counsel stated on the first day of trial that he was reserving his opening statement and, after the prosecution rested, counsel announced that he was waiving an opening statement. Trial counsel's decision whether to give an opening statement was a matter of trial strategy, over which counsel had broad discretion. *People v Odom*, 276 Mich App 407, 416; 740 NW2d 557 (2007). The purpose of an opening statement is to state the facts an advocate intends to prove at trial. *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991). This case was essentially a credibility contest between defendant and JB. The defense theory at trial—that JB was not credible and it was JB who sexually assaulted defendant—was apparent from counsel's cross-examination of the prosecution's witnesses. After the prosecution rested, defense counsel called defendant, who testified in support of his claim that JB sexually assaulted him. There is no reason to believe that an opening statement would have enhanced the jury's understanding of what the defense intended to prove, namely, that JB's claim and his testimony were not credible. Defendant has neither overcome the presumption that defense counsel's decision to waive an opening statement was reasonable strategy, nor established that he was prejudiced by counsel's waiver of an opening statement.

Defendant next argues that trial counsel was ineffective for not objecting to what defendant characterizes as an "inconsistent verdict" and a "double jeopardy violation." Defendant elaborates that the verdict was "inconsistent" because JB did not testify that *defendant* penetrated JB in any manner, only that defendant rubbed his penis on JB's thigh and placed his mouth on JB's penis. Therefore, defendant argues, he should have only been charged with, at most, fourth-degree criminal sexual conduct, MCL 750.520e. In a related argument, defendant faults trial counsel for not moving to quash the information with respect to the two counts of CSC-I and CSC-II, and for failing to move for a directed verdict at trial on the dual counts of CSC-I and CSC-II. Defendant further argues that his multiple convictions of CSC-I and CSC-II violate double-jeopardy principles.

*9 With regard to defendant's claim that trial counsel was remiss for not moving to quash the information with respect to the CSC-I and CSC-II charges, JB testified at the preliminary examination, as he did at trial, that defendant forcibly performed oral sex on him, whereby JB's penis went inside defendant's mouth, that defendant made JB masturbate both himself and defendant, and that after JB ejaculated, defendant made JB insert the ejaculate "inside [defendant's] rectum." MCL 750.520b(1)(c) provides that a person is guilty of CSC-I if the person "engages in sexual penetration with another person" and the sexual penetration occurs under circumstances involving the commission of any other felony. Defendant argues that the evidence did not support the CSC-I charges because it did not show that he penetrated JB. However, MCL 750.520a(r) defines "sexual penetration" in the following manner:

> [S]exual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required.

As defendant observes, the CSC-I statute uses, in some places, the terms "actor" and "victim." MCL 750.520a(a) defines an "actor" as "a person accused of criminal sexual conduct," and MCL 750.520a(s) defines a "[v]ictim" as "the person alleging to have been subjected to criminal sexual conduct." Contrary to defendant's argument, however, sexual penetration is not limited to only acts in which an *actor* penetrates a *victim*. The definition of "sexual penetration" does not use the terms "actor" or "victim," but instead uses the broader term "person," without differentiating between penetration by an actor or a victim. In contrast, for example, MCL 750.520b(1)(b)(*i*) and (*iii*) require that the *actor* be a member of the same household as the victim, or that the actor be in a position of authority over the victim and used this authority to coerce the victim into submission. However, the Legislature did not to use the terms "actor" or "victim" in the definition of sexual penetration, which is presumed intentional. See *People v Jack*, —— Mich App ——, ——;

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3270 Filed 07/10/23 Page 9 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

—— NW2d —— (2021) (Docket No. 354524); slip op. at 4. Accordingly, there is no basis for concluding that sexual penetration for purposes of CSC-I is limited only to acts of penetration in which an actor penetrates a victim. JB's testimony that defendant performed fellatio on him, and that defendant made JB insert JB's ejaculate inside defendant's rectum was sufficient to establish two separate acts of sexual penetration.

With respect to the two counts of CSC-II, a person is guilty of CSC-II if the person "engages in sexual contact with another person," and the sexual contact occurs under circumstances involving the commission of any other felony. MCL 750.520c(1)(c). "Sexual contact" is defined in MCL 750.520a(q) as follow:

> [T]he intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> > (*i*) Revenge.
> >
> > (*ii*) To inflict humiliation.
> >
> > (*iii*) Out of anger.

As previously noted, JB testified at the preliminary examination that defendant made him masturbate himself, and also made him masturbate defendant. According to JB, defendant instructed him to masturbate until he ejaculated, which JB did, and defendant also ejaculated during the offense. JB gave similar testimony at trial. This testimony supported two acts of sexual contact and allowed a fact-finder to find that the touching was for the purpose of sexual arousal or gratification. MCL 750.520a(q). JB further testified that defendant told him that the assault was JB's punishment for killing a little girl, which also supported an inference that defendant committed the sexual acts out of anger, which also satisfies the definition of sexual contact.

 **\*10** For these reasons, there is no merit to defendant's claims that it was objectively unreasonable for trial counsel to fail to move to quash the information or to move for a directed verdict on these grounds at trial with respect to the CSC-I and CSC-II counts.

Defendant does not fully explain the basis for his argument that his multiple convictions of CSC-I and CSC-II violate the prohibition against double jeopardy. Accordingly, this argument is abandoned. See *In re Spears*, 309 Mich App 658, 674-675; 872 NW2d 852 (2015). In any event, the argument is without merit. This Court has held that the Legislature intended to punish separately each criminal sexual penetration. *People v Dowdy*, 148 Mich App 517, 521; 384 NW2d 820 (1986). Thus, multiple convictions arising from separate acts of sexual penetration or sexual contact during a single assault do not violate double-jeopardy protections. *Id*. Because the record shows that defendant's convictions of CSC-I and CSC-II were based on separate acts of sexual penetration and sexual contact, defense counsel was not ineffective for failing to challenge defendant's convictions on double-jeopardy grounds.

Defendant also criticizes trial counsel for not calling defendant's mother, Pearline Solomon, as a witness at trial. It is well-settled that trial counsel's decisions regarding what evidence to present and what witnesses to call are matters of trial strategy. *People v Posey*, —— Mich App ——, ——; —— NW2d —— (2020) (Docket Nos. 345491; 351834; 346039); slip op. at 6. However, this Court will not insulate trial counsel's decisions from review by characterizing them as trial strategy if the strategic choices were made after less than a complete investigation. *Id.* at ——; slip op. at 6-7. Defendant has submitted an affidavit from Solomon in which she avers that she served copies of a lawsuit brought by defendant against the Detroit Police Department and other parties, accusing them of framing defendant. Solomon also avers that she provided defense counsel with documentation pertaining to Nurse Shoulders, such as grievances and complaints filed with the state's licensing authority. However, defendant does not explain how Solomon's testimony regarding these matters would have been relevant at trial. Defendant has not provided any basis for concluding that Solomon had personal knowledge of any facts that were material to a determination of defendant's guilt or innocence, or any basis for concluding that there is a reasonable probability that the outcome of his trial would have been different if Solomon had been called as a witness.

In sum, after reviewing defendant's several ineffective-assistance claims, we conclude that defendant has failed to establish either that defense counsel's performance was objectively unreasonable or that defendant was prejudiced by any alleged deficiency.

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3271 Filed 07/10/23 Page 10 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

C. SUFFICIENCY OF THE EVIDENCE—KIDNAPPING

Defendant argues that the prosecution failed to present sufficient evidence to support his conviction of kidnapping. We disagree.

This Court reviews de novo a defendant's challenge to the sufficiency of the evidence. *People v Anderson*, 331 Mich App 552, 557; 953 NW2d 451 (2020). As explained in *Anderson*:

> On appeal, [this Court] must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese,* 491 Mich 127, 139; 815 NW2d 85 (2012). A trier of fact may consider circumstantial evidence and all reasonable inferences the evidence creates. [*People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016).] "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick,* 487 Mich 1, 24-25; 790 NW2d 295 (2010) (quotation marks and citation omitted). [*Anderson*, 331 Mich App at 557-558.]

**\*11** The statute proscribing kidnapping, MCL 750.349, provides, in pertinent part:

> (1) A person commits the crime of kidnapping if he or she *knowingly restrains another person* with the intent to do 1 or more of the following:
>
> * * *
>
> (c) Engage in criminal sexual penetration or criminal sexual contact prohibited under [MCL 750.520a *et seq.*] with that person.
>
> * * *
>
> (2) As used in this section, "restrain" means to restrict a person's movements or to confine the person so as to interfere with that person's liberty without that person's consent or without legal authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts. [(Emphasis added).]

The thrust of defendant's argument on appeal is that the evidence was insufficient to establish that JB was restrained within the meaning of the kidnapping statute. We disagree.

In *People v Bosca*, 310 Mich App 1, 18-19; 871 NW2d 307 (2015), the defendant was convicted of unlawful imprisonment under MCL 750.349b, which contains a similar definition of "restrain" under MCL 750.349b(3)(a). This Court held that the prosecution presented sufficient evidence that the defendant "knowingly restrain[ed]" another person as contemplated by MCL 750.349b(3)(a) where the evidence showed that the four victims were forced into the basement of a home and their escape prevented, they were threatened with injury or harm if they did not comply with the defendant's directives, and the victims were fearful. *Bosca,* 310 Mich App at 19. Similarly, in *People v Kosik*, 303 Mich App 146, 152; 841 NW2d 906 (2013), this Court determined that the evidence supported a finding that the defendant knowingly restrained the victim by taking her into a conference room against her will and preventing her from exiting by physically blocking the door. Additionally, in *People v Railer*, 288 Mich App 213, 218; 792 NW2d 776 (2010), this Court held that ample evidence was presented that the victim was knowingly restrained when she was afraid to leave a parked car in the presence of the defendant after the defendant had previously choked her and struck her in the face.

In the present case, JB testified that defendant entered JB's jail cell, threatened JB, and prevented JB from leaving. JB said that he was not able to exit his cell because defendant, who was much larger, was blocking the door, and defendant threatened to snap JB's neck if he said anything or screamed. JB said that defendant pushed him down on his "butt," blocked the door to JB's cell with his body, and then sexually assaulted him. This testimony was sufficient to enable the jury to find beyond a reasonable doubt that defendant knowingly restrained JB inside his cell with the intent to engage in criminal sexual penetration or contact.

Defendant suggests that because JB was already incarcerated in jail, he could not have interfered with JB's liberty within the meaning of MCL 750.349(2). Defendant does not cite any caselaw in support of his position that JB's incarceration precluded defendant from interfering with JB's liberty. In any event, although JB was incarcerated, he testified at trial that, before 10:00 p.m., inmates were allowed to move about in the common area of the ward, outside their jail cells. The assault occurred before lockdown, when inmates were allowed to move throughout the common area. The jury could find from

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3272 Filed 07/10/23 Page 11 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

this testimony that defendant interfered with JB's liberty by blocking the entrance to JB's cell, and thereby preventing him from exiting the cell and entering the common areas.

**\*12** For these reasons, we reject defendant's argument that the evidence was insufficient to support his kidnapping conviction. We also reject defendant's related argument that trial counsel was ineffective for not filing a motion to quash the kidnapping charge. Any motion would have been unsuccessful, and counsel is not required to bring a meritless motion. *Hernandez-Zitka*, ––– Mich App at ––––; slip op. at 9. Defendant also makes a nonsensical argument that trial counsel did not request "a lesser offense instruction of kidnapping." Because defendant does not specify what lesser offense instruction counsel should have requested, this ineffective-assistance claim also cannot succeed.

D. EVIDENCE OF DEFENDANT'S PRIOR SEXUAL ASSAULTS UNDER MCL 768.27B

Defendant next argues that the trial court erred by allowing the prosecutor to introduce evidence of defendant's prior sexual assaults under MCL 768.27b. We disagree. We review the trial court's decision to allow this evidence for an abuse of discretion. *People v Daniels*, 311 Mich App 257, 271; 874 NW2d 732 (2015).

MCL 768.27b provides, in pertinent part:

> (1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.
>
> (2) If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered, to the defendant not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown.
>
> (3) This section does not limit or preclude the admission or consideration of evidence under any other statute, including, but not limited to, under section 27a, rule of evidence, or case law.

Evidence admissible under MCL 768.27b is still subject to exclusion under MRE 403 if the probative value of the evidence is substantially outweighed by its prejudicial effect. *People v Propp*, 330 Mich App 151, 173; 946 NW2d 786 (2019), lv gtd 506 Mich 939 (2020). This Court has explained that when analyzing the admissibility of evidence under MCL 768.27b under the MRE 403 balancing test,

> this Court must make two distinct inquires .... First, this Court must decide whether introduction of [the defendant's] prior-bad-acts evidence at trial was unfairly prejudicial. Then, this Court must apply the balancing test and weigh the probativeness or relevance of the evidence against the unfair prejudice. Upon completion of this second inquiry, this Court can determine whether the trial court abused its discretion in allowing [the defendant's] prior bad acts into evidence. [*Id.* at 181-182 (quotation marks and citation omitted).]

Evidence is unfairly prejudicial if it will inject considerations that are extraneous to the merits of the case, such as invoking the anger, shock, sympathy, or bias of the jury. *Id.* at 182.

Before trial, the prosecution filed notice of its intent to introduce evidence of defendant's prior sexual assaults against several other persons under MCL 768.27b. The notice explained that defendant had a 19-year history of sexually assaulting other men, women, and children, and asserted that defendant had "developed a series of methods and techniques" to commit sexual assaults and avoid prosecution, including "the manufacture of evidence and [the] false reporting of crimes to avoid responsibility." The prosecutor argued that this evidence was "highly probative" under MCL 768.27b because of how defendant approached each victim, his efforts to isolate each victim, and his scheme of manufacturing exculpatory evidence to exonerate him from the crimes. The trial court found that the evidence was admissible under MCL 768.27b, and that it was not unduly prejudicial under MRE 403.

**\*13** At trial, at the outset of the prosecutor's cross-examination of defendant, the prosecutor questioned defendant about a prior sexual assault of TM, and defendant's telephone communications with TM, which he recorded. The prosecutor also questioned defendant about allegations that he sexually assaulted RS, CB, KE, and DP. Defendant conceded engaging in sexual activity with all four women, but claimed that they falsely accused him of raping them. Defendant also acknowledged that he recorded his telephone conversations with all of the women, as well as with JK and TM. Defendant testified that, in 2015, he was acquitted of criminal charges

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3273 Filed 07/10/23 Page 12 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

arising from RS's allegations. Defendant admitted that he was arrested after his alleged sexual assault of TM, but denied that he was arrested for that activity. Defendant also explained that TM was a prostitute, and admitted that he did not pay her because she wanted too much money. The prosecutor also questioned defendant about whether he took DP, JS, EH, and KE to intimate locations in an effort to have sex with them, and defendant denied doing so. Defendant was also questioned whether he sexually assaulted SG and VS. Defendant stated that he fondled VS's breasts after she asked him to do so. Defendant denied that he was ever charged with sexual assault with regard to SG, and then refused to answer questions regarding SG and invoked his privilege against self-incrimination. Defendant also denied that he took EH to a remote location to sexually assault her, or that he took JS to a home to sexually assault her. The prosecutor also asked defendant about the sexual assault of another prison inmate, TC. In that matter, defendant initially denied engaging in mutual masturbation with TC, but after DNA evidence in that case matched defendant's DNA profile, defendant claimed that the activity was consensual. Defendant stated that he was found not guilty in that matter. Defendant denied that he ever created false evidence, but acknowledged that he recorded telephone conversations with women to protect himself from false allegations of sexual assault.

On appeal, defendant argues that the evidence regarding his prior assault of RS was not admissible because he was found not guilty in that case. In a related argument, defendant asserts that TC confessed to an administrative law judge that he lied about defendant's alleged sexual assault, but this claim is not supported by the documentation submitted by defendant in support of this claim. Defendant also asserts that the prosecutor admitted at a prior hearing that DNA evidence exonerated him in the case involving TM, but the transcript of that hearing merely indicates that the prosecutor acknowledged that DNA testing established that defendant was excluded as a contributor to male DNA, but did not concede that DNA evidence confirmed that defendant did not sexually assault TM. Regardless of the outcomes of these other matters, contrary to defendant's suggestion, MCL 768.27b is not limited to evidence of a prior sexual assault for which a defendant was convicted. Thus, the fact that defendant was not convicted of sexual assault in these other matters was not alone a basis for excluding the evidence.

Evidence that defendant had a history of sexually assaulting others and that defendant often created and preserved exculpatory evidence of those encounters was particularly probative in this case given defendant's counterallegations against JB, and JB's testimony that defendant manipulated the sexual activity to create evidence tending to depict JB as the guilty party. While this evidence was prejudicial to defendant, it was not unfairly prejudicial considering that defendant was afforded an opportunity to address each of the alleged prior assaults, and he was permitted to inform the jury that he was found not guilty of the alleged assaults involving JS and TC. The trial court did not abuse its discretion by allowing the prosecution to introduce this evidence under MCL 768.27b.

In a related argument, defendant argues that trial counsel was ineffective for not conducting redirect examination of defendant to question him regarding his exoneration in the sexual assaults of TM, JS, and TC. However, defendant had an opportunity to address each of these matters during the prosecutor's cross-examination. He informed the jury that he was found not guilty for the alleged sexual assault of JS, that he was found not guilty at an administrative hearing for the alleged sexual assault of TC, and he denied sexually assaulting TM or being arrested for any assault against her, whom he explained was a prostitute. Because defendant already had an opportunity to address these matters during the prosecutor's cross-examination, defendant has not demonstrated that it was objectively unreasonable for trial counsel not to further question him about these matters on direct examination.

E. HABITUAL-OFFENDER STATUS

Defendant argues that the trial court erred by sentencing him as a fourth-offense habitual offender. He argues that because two of his three prior felony convictions arose from the same criminal transaction, they could not both be considered to determine his habitual-offender status, and therefore, he should have been sentenced only as a third-offense habitual offender. We disagree.

*14 Whether defendant was properly sentenced as a fourth-offense habitual offender is reviewed de novo as a question of law. See *Anderson*, 331 Mich App at 566.

Defendant challenges his status as a fourth-offense habitual offender under MCL 769.12, which provides, in pertinent part:

(1) If a person has been convicted of any combination of 3 or more felonies or attempts to commit felonies, whether

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3274 Filed 07/10/23 Page 13 of 17

**People v. Solomon, Not Reported in N.W. Rptr. (2021)**
2021 WL 4929781

the convictions occurred in this state or would have been for felonies or attempts to commit felonies in this state if obtained in this state, and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows:

(a) If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. *Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only.*

(b) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term of 5 years or more or for life, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for life or for a lesser term.

(c) If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for a maximum term of not more than 15 years. [(Emphasis added; footnotes omitted).]

The felony information reflects that defendant was charged with being a fourth-offense habitual offender. It indicated that defendant had prior convictions of (1) third-degree criminal sexual conduct, MCL 750.520d, on October 27, 1999; (2) unlawful driving away of an automobile (UDAA), MCL 750.413, on January 31, 2000; and (3) larceny in a building, MCL 750.360, on January 31, 2000. At sentencing, the trial court sentenced defendant as a fourth-offense habitual offender on all five counts of which he was convicted. Defendant now argues that because his prior convictions of UDAA and larceny in a building arose from the same criminal transaction, they could only be counted as one prior conviction for purposes of determining his habitual-offender status, and therefore, he could only have been sentenced as a third-offense habitual offender. We disagree.

In *People v Gardner*, 482 Mich 41, 50-51; 753 NW2d 78 (2008), our Supreme Court held that multiple convictions arising from the same criminal transaction may be counted as separate convictions for purposes of habitual-offender enhancement. The Court explained:

[T]he relevant language states that "[i]f a person has been convicted of any combination of 2 or more felonies or attempts to commit felonies ... and that person commits a subsequent felony within this state," [3] the person shall be sentenced under the habitual offender laws. MCL 769.11(1). The text clearly contemplates the *number* of times a person has been "convicted" of "felonies or attempts to commit felonies." Nothing in the statutory text suggests that the felony convictions must have arisen from separate incidents. To the contrary, the statutory language defies the importation of a same-incident test because it states that *any combination* of convictions must be counted. [*Gardner*, 482 Mich at 50-51.]

 *15 However, MCL 769.12(1)(a) provides an exception for defendants who are sentenced as habitual offenders subject to a "super habitual" enhanced mandatory minimum sentence of 25 years. In determining whether a defendant is a fourth-offense habitual offender for purposes of "th[at] subsection only," MCL 769.12(1)(a), a court cannot consider more than one prior conviction arising out of the same transaction. MCL 769.12(1)(a) clearly states that the restriction prohibiting a court from considering more than one prior conviction arising out of the same criminal transaction applies only to a determination whether a defendant is eligible to be sentenced as a super habitual offender under that subsection.

In this case, there is no basis in the record for concluding that defendant was sentenced as a "super habitual offender" under MCL 769.12(1)(a). First, the habitual-offender notice itself described the penalty to which defendant was subject as a fourth-offense habitual offender as "Life if primary offense has penalty of 5 Years or more; 15 Years or less if primary offense has penalty under 5." These are the penalties prescribed in MCL 769.12(1)(b) and (c). The notice did not indicate that defendant would be subject to a mandatory 25-year minimum sentence under MCL 769.12(1)(a). Second, there was no suggestion at sentencing, by any of the parties or the trial court, that defendant was subject to a mandatory 25-year minimum sentence under MCL 769.12(1)(a). Indeed, the trial court determined at sentencing that the appropriate guidelines range for defendant's CSC-I convictions was 270 to 900 months or life, and defense counsel requested a sentence at "the low end of the guidelines." A sentence at the low end of the guidelines would have been below the 25-year mandatory minimum under MCL 769.12(1)(a) if defendant had been subject to that statute, but no one suggested that defendant was not eligible to receive such a sentence. Third, defendant was also convicted of CSC-II, which qualifies as

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3275 Filed 07/10/23 Page 14 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

a "serious crime" under MCL 769.12(6)(c), and defendant's listed prior convictions of CSC-III and larceny in a building both qualify as "listed prior felonies" under MCL 769.12(6)(a)(*iii*). Therefore, if defendant had been sentenced as a "super habitual offender" under MCL 769(1)(a), the trial court would have been required to impose a mandatory minimum sentence of 25 years for defendant's CSC-II convictions. Instead, it sentenced defendant to prison terms of 12 to 30 years for the CSC-II convictions.

In sum, the record indicates that defendant had three prior felony convictions and, although two of the prior convictions arose from a single criminal transaction, both could still be considered for purposes of establishing defendant's status as a fourth-offense habitual offender. *Gardner*, 482 Mich at 50-51. And although defendant correctly recognizes that MCL 769.12(1)(a) prohibits a court from considering more than one prior conviction arising out of the same transaction for purposes of sentencing a defendant as a super habitual offender, defendant was not sentenced under that subsection. Accordingly, defendant has not established that the trial court erred by sentencing him as a fourth-offense habitual offender.

Additionally, to the extent that defendant criticizes trial counsel for not objecting to his fourth-offense habitual offender status before or at sentencing, because the record indicates that defendant was properly sentenced as a fourth-offense habitual offender, any objection would have been meritless. Therefore, this ineffective-assistance claim cannot succeed. *Hernandez-Zitka*, ––– Mich App at –––; slip op. at 9.

F. SPEEDY TRIAL

 *16  Defendant next argues that the trial court erred by denying his motion to dismiss for violation of his right to a speedy trial. We disagree.

Whether a defendant's right to a speedy trial was violated is a constitutional question, which this Court reviews de novo. *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). However, any factual findings by the trial court are reviewed for clear error. *People v Williams*, 475 Mich 245, 260; 716 NW2d 208 (2006).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Id.* at 261, citing U.S. Const., Am VI; Const. 1963, art. 1, § 20. This right is enforced by both statute and court rule. *Williams*, 475 Mich at 261, citing MCL 768.1; MCR 6.004(A). In determining whether pretrial delay violated a defendant's right to a speedy trial, Michigan applies the four-part test articulated in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). See *Cain*, 238 Mich App at 112. As explained in *Williams*:

> In determining whether a defendant has been denied the right to a speedy trial, we balance the following four factors: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury. Under the *Barker* test, a presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial. [*Williams*, 475 Mich at 261-262 (quotation marks and citations omitted).]

The applicable timeline for determining whether the right to a speedy trial has been violated runs from the date of the defendant's arrest. *Id.* at 261.

Defendant was charged in this case on May 12, 2017, and his trial began on March 20, 2019. As the trial court recognized, because the delay in bringing defendant to trial exceeded 18 months, the prosecution was required to rebut the presumption that defendant incurred prejudice. The trial court examined the procedural history of the case and found that defendant was responsible for most of the delay, primarily because of his repeated requests for new counsel and his several requests for an adjournment of trial. In addition, the prosecution had filed an interlocutory appeal in another case against defendant, challenging the trial court's decision regarding the admissibility of other-acts evidence that was also at issue in this case, and defendant had requested that his trial be adjourned pending resolution of the appeal in defendant's other case.[4] In all, the trial court determined that of the 675 days of delay in this case, 510 days were attributable to the defense, another 58 were attributable to defendant's referral for a competency evaluation, 103 days were attributable to the trial court's congested docket, and only four days were directly attributable to prosecution. The trial court recognized that defendant had asserted his right to a speedy trial in a motion, but reasoned that because he had previously requested adjournments of trial dates and other court dates, requested that the case be stayed pending

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3276 Filed 07/10/23 Page 15 of 17

People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

the outcome of the appeal in defendant's other case, and repeatedly sought new counsel, "[t]hese occurrences act as a waiver of the defendant's speedy-trial rights and also weigh heavily against the defendant." Finally, the trial court found that defendant was not prejudiced by the delay, most of which was the result of accommodating defendant's requests for adjournments or new counsel. We find no error in the trial court's ruling.

*17 On appeal, defendant focuses his arguments on the prejudice prong, and he further argues that the prosecution deliberately delayed bringing him to trial to take advantage of MCL 768.27b as amended, which took effect shortly before his trial began and made it easier for the prosecution to introduce evidence of his prior sexual assaults. As the trial court recognized, because the delay in bringing defendant to trial exceeded 18 months, the prosecution was required to rebut the presumption that defendant was prejudiced by the delay. In *Barker*, 407 US at 532, the United States Supreme Court explained the concept of prejudice in the context of a speedy-trial claim as follows:

> Prejudice ... should be assessed in the light of the interests of [the] defendant[ ] which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown. [(Footnote omitted).]

Initially, to the extent that defendant asserts that the prosecution delayed bringing him to trial until after the March 17, 2019 effective date of MCL 768.27b, as amended, the record does not support his argument. On the contrary, the record indicates that it was defendant who requested in 2017 that his trial date be adjourned until after a decision in the appeal in his other case. Thereafter, trial dates of May 15, 2018, and August 7, 2018, were also adjourned at the request of the defense. A jury trial began on August 20, 2018, but, during jury selection, defendant challenged his competency to stand trial and, at the request of the defense, defendant was referred for a competency evaluation. After defendant was found competent to stand trial, a new trial date was set for March 18, 2019, which was the next available trial date for defense counsel. While defendant attributes the delay to dilatory motives by the prosecution, he has not identified any support in the record for his assertion that the prosecution was responsible for the various delays. The trial court recited the procedural history of this case in detail and found that the reasons for the many delays leading up to trial were mostly attributable to the defense. The record supports this finding, which is not clearly erroneous.

With respect to the prejudice factor, defendant asserts that during the period of delay, deputies at the Wayne County Jail entered his cell and confiscated affidavits and declarations from other jail inmates stating that JB had confessed to them that he had framed defendant for these crimes and was induced to do so by a sheriff's deputy. Defendant asserts that he was prejudiced by the loss of this evidence. Defendant did not make these allegations of prejudice below, nor has he provided any factual support for them on appeal. Regardless, even if we were to credit defendant's claim that affidavits and declarations from other inmates were confiscated from his cell, defendant has not established that these documents, which would appear to be inadmissible hearsay, MRE 801(c) and MRE 802, would have been admissible at trial, and he does not otherwise explain why he was unable to call the alleged declarants as witnesses at trial. Accordingly, the record does not support defendant's claim that the delay hampered his ability to present material and exculpatory evidence. And because the record indicates that most of the delays were intended to benefit the defense, either to accommodate defendant's requests for new counsel and provide them with an opportunity to become familiar with his case or to accommodate defense requests for adjournments, the trial court did not err by finding that the prosecution successfully rebutted any presumption of prejudice.

*18 After balancing the relevant factors on de novo review, and finding no clear error in the trial court's findings of fact, we hold that the trial court did not err by denying defendant's motion to dismiss on speedy-trial grounds.

### G. CONSTITUTIONALITY OF THE CSC-I STATUTE

Defendant suggests that the CSC-I statute, MCL 750.520b, is unconstitutionally vague because it does not provide fair notice that sexual penetration of an actor by an alleged victim is prohibited conduct. This Court generally reviews de

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3277 Filed 07/10/23 Page 16 of 17
People v. Solomon, Not Reported in N.W. Rptr. (2021)
2021 WL 4929781

novo a defendant's claim that a statute is unconstitutionally vague. *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). However, because defendant did not challenge the constitutionality of the CSC-I statute in the trial court, this issue is unpreserved. *Id.* Unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich 763-764.

A statute is presumed constitutional, and the party challenging the constitutionality of the statute bears the burden of proving otherwise. *People v Grant*, 329 Mich App 626, 636-637; 944 NW2d 172 (2019). In *People v Miller*, 326 Mich App 719, 738; 929 NW2d 821 (2019), this Court explained:

> The void-for-vagueness doctrine is derived from the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article 1, § 17, of the Michigan Constitution, which guarantee that the state may not deprive a person of life, liberty, or property without due process of law. *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *People v Boomer*, 250 Mich App 534, 539; 655 NW2d 255 (2002), quoting *Grayned v City of Rockford*, 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972) (quotation marks omitted). A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms.

See also *Lawhorn*, 320 Mich App at 199 (holding that a statute may be challenged for vagueness if "it is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed.") (citation and quotation marks omitted). A statute provides fair notice of the conduct it prohibits if it affords a person of ordinary intelligence a reasonable opportunity to discern what is prohibited. *Miller*, 326 Mich App at 738. Fair notice will be found to exist if, by reference to judicial interpretations, common law, dictionaries, relevant treatises, or the common meaning of the words employed, the meaning of the statute may be discerned. *Id.*

Defendant asserts that MCL 750.520b does not provide fair notice that it prohibits an alleged victim of sexual abuse from performing an act of sexual penetration against an alleged actor, which is what occurred here. As discussed earlier, this argument attempts to ascribe the definitions of "actor" and "victim" in MCL 750.520a(a) and (s) to the definition of "sexual penetration" in MCL 750.520a(r). However, the definition of "sexual penetration" does not use the terms "actor" or "victim," but instead uses the broader and generic term "person." MCL 750.520a(r). The statute defines "sexual penetration" as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of *a person's body* or of any object into the genital or anal openings *of another person's body*, but emission of semen is not required." MCL 750.520a(r) (emphasis added). This definition does not differentiate between a *person* who is an "actor" or a *person* who is a "victim." Viewing the definition of "sexual penetration" in conjunction with the language in MCL 750.520b(1) that a person is guilty of first-degree criminal sexual conduct if the person "engages in sexual penetration with another person," the statute provides fair notice that it applies to any acts that fall within the definition of "sexual penetration," and it is immaterial whether those acts involve an insertion into the genital or anal opening of a person who would otherwise qualify as an "actor" or a "victim" of the sexual activity. Thus, the statute is not unconstitutionally vague.

*19 Because the CSC-I statute is not unconstitutionally infirm, we also reject defendant's related argument that trial counsel was ineffective for not challenging the constitutionality of the statute on the ground that it was unconstitutionally vague as applied to defendant. Counsel was not required to bring a meritless motion. *Hernandez-Zitka*, ––– Mich App at –––; slip op. at 9.

## VI. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of many errors deprived him of a fair trial. We disagree.

"This Court review[s] a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003).

In *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001), this Court observed:

> The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal. In order to reverse on the grounds of cumulative error, the errors at issue must be of consequence. In other words, the effect of the errors must

Case 2:19-cv-10027-GAD-APP ECF No. 170-2, PageID.3278 Filed 07/10/23 Page 17 of 17

**People v. Solomon, Not Reported in N.W. Rptr. (2021)**
2021 WL 4929781

have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial. [(Citations omitted.)]

In this case, defendant has not successfully established any of his claims of error on appeal. Accordingly, his claim that he was deprived of a fair trial because of the cumulative effect of many errors cannot succeed.

Affirmed.

**All Citations**

Not Reported in N.W. Rptr., 2021 WL 4929781

Footnotes

1   *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

2   Before 2019, the statute was limited to cases and other acts of domestic violence, but 2018 PA 372 amended the statute by expanding its scope to also apply to cases and other acts of sexual assault.

3   The Court was construing identical language in MCL 769.11, which applies to third-offense habitual offenders.

4   See *People v Solomon*, unpublished per curiam opinion of the Michigan Court of Appeals, issued December 19, 2017 (Docket No. 339178). In that case, the prosecution sought to admit other-acts testimony from 12 other individuals under MRE 404(b)(1). *Solomon*, unpub. op. at 2. The trial court ruled that testimony from four of the victims was admissible, but testimony from the remaining eight victims was not. *Id.* at 3. The prosecutor appealed the trial court's decision to exclude the testimony of the remaining eight victims. *Id.* This Court reversed the trial court's decision with respect to four of these victims, but affirmed the court's decision as to the other four. *Id.* at 4-6.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.